UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MORGAN STANLEY ERISA LITIGATION | |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MASTER FILE NO.:<br><br>07 Civ. 11285 (RWS) |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 450-3800

*Attorneys for Defendants*

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ..................................................................................................... i

PRELIMINARY STATEMENT ...............................................................................................1

THE COMPLAINT ALLEGATIONS......................................................................................2

    MORGAN STANLEY'S EMPLOYEE BENEFIT PLANS...............................................3

        A.    The 401(k) Plan.......................................................................................3

        B.    The ESOP................................................................................................4

    THE ALLEGED ERISA VIOLATIONS............................................................................5

        A.    Defendants' Allegedly Imprudent Management of the Plans....................5

        B.    The Allegedly Inadequate Disclosure ......................................................6

ARGUMENT ..........................................................................................................................8

    I.    PLAINTIFFS HAVE NOT STATED A MISMANAGEMENT CLAIM..............8

        A.    Compliance with Plan Requirements Is Not Actionable ...........................9

        B.    Plaintiffs Have Not Overcome the Presumption that Investment In Company Stock Was Prudent ..................................................................10

        C.    Section 404 of ERISA Also Bars Plaintiffs' Prudence Claim .................13

    II.    PLAINTIFFS HAVE NOT STATED A CLAIM FOR INADEQUATE DISCLOSURE..................................................................................................14

        A.    ERISA Imposes No Obligation To Provide the Information that Plaintiffs Claim Should Have Been Disclosed .........................................15

        B.    The Allegedly Misleading Disclosures by Morgan Stanley Were Not ERISA Communications and Are Not Actionable ....................................17

        C.    The Complaint Does Not Allege that Any Fiduciary Breached Any Duty to Inform Plan Participants ............................................................21

    III.    PLAINTIFFS HAVE NOT STATED CLAIMS FOR CONFLICT OF INTEREST, FAILURE TO MONITOR OR CO-FIDUCIARY LIABILITY.......25

IV.    PLAINTIFFS HAVE FAILED TO ALLEGE THE FIDUCIARY STATUS
       OF CERTAIN DEFENDANTS .................................................................................27

       A.    The Corporate Defendants Are Not Fiduciaries with Respect to Any
             Claim...........................................................................................................27

       B.    The Morgan Stanley Board Defendants Are Not Fiduciaries with
             Respect to Any Claim ..................................................................................29

       C.    The MS & Co. Board Members Are Not Fiduciaries with Respect to
             Any Claim....................................................................................................29

       D.    The Investment Committee Defendants Are Not Fiduciaries with
             Respect to Any Claim ..................................................................................31

TABLE OF AUTHORITIES

P<small>AGE</small>

**Cases**

Akers v. Palmer, 71 F.3d 226 (6th Cir. 1995)...............................................................27

Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein,
    107 F.3d 139, 147 (2d Cir. 1997)..............................................................................15

Beddall v. State St. Bank & Trust Co., 137 F.3d 12 (1st Cir. 1998) .......................21, 30

Coleman v. Nationwide Life Ins. Co., 969 F.2d 54 (4th Cir. 1992) ..............................31

Crowley v. Corning, Inc., No. 02 Civ. 6172, 2004 WL 763873
    (W.D.N.Y. Jan. 14, 2004) .............................................................................9, 10, 28

Crowley v. Corning, Inc., 234 F. Supp. 2d 222 (W.D.N.Y. 2002)...........18, 19, 22, 23, 25, 28, 30

Donovan v. Cunningham, 716 F.2d 1455 (5th Cir. 1983) .............................................27

Edgar v. Avaya, Inc., 503 F.3d 340 (3d Cir. 2007) .....................................10, 11, 16, 17

Flanigan v. Gen. Elec. Co., 242 F.3d 78 (2d Cir. 2001) ......................................... 30-31

Harzewski v. Guidant Corp., 489 F.3d 799 (7th Cir. 2007) .........................................17

Howell v. Motorola, Inc., 337 F. Supp. 2d 1079 (N.D. Ill. 2004) ................................24

Hughes Aircraft Co. v. Jacobson, 525 U.S. 432 (1999)................................................27

Hunter v. Caliber Sys., Inc., 220 F.3d 702 (6th Cir. 2000)...........................................27

In re Calpine Corp. ERISA Litig., No. C 03-1685 (SBA), 2005 WL 3288469
    (N.D. Cal. Dec. 5, 2005) ..........................................................................................18

In re Calpine Corp. ERISA Litig., No. C 03-1685 (SBA), 2005 WL 1431506
    (N.D. Cal. Mar. 31, 2005) ............................................................................12, 15, 26

In re Coca-Cola Enters. Inc., ERISA Litig., Master File No. 1:06-CV-0953 (TWT),
    2007 WL 1810211 (N.D. Ga. June 20, 2007)...........................11, 21, 23, 26, 28, 31

In re Duke Energy ERISA Litig., 281 F. Supp. 2d 786 (W.D.N.C. 2003) ....................12

In re Dynegy, Inc. ERISA Litig., 309 F. Supp. 2d 861 (S.D. Tex. 2004)................16, 26

In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F. Supp. 2d 511
    (S.D. Tex. 2003)..................................................................................................16

In re McKesson HBOC, Inc. ERISA Litig., 391 F. Supp. 2d 812
    (N.D. Cal. 2005)...................................................................................11, 12, 26

In re McKesson HBOC, Inc. ERISA Litig., No. C00-20030 (RMW),
    2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) ................................................17

In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,
    Nos. 02 MDL 1484 (JFK), 02 Civ. 8472 (JFK), 2008 WL 2594819
    (S.D.N.Y. June 26, 2008)...................................................................................23

In re Polaroid ERISA Litig., 362 F. Supp. 2d 461 (S.D.N.Y. 2005) ...................10, 16, 23, 26, 30

In re Reliant Energy ERISA Litigation, 336 F. Supp. 2d 646 (S.D. Tex. 2004) ...........................31

In re WorldCom, Inc. ERISA Litig., 263 F. Supp. 2d 745
    (S.D.N.Y. 2003) .............................................................................11, 21, 26, 29

Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69
    (2d Cir. 1995).......................................................................................................4

Izzarelli v. Rexene Prods. Co., 24 F.3d 1506 (5th Cir. 1994).........................................................26

Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243
    (5th Cir. 2008)........................................................................9, 10, 11, 12, 17, 18, 19

Kuper v. Iovenko, 66 F.3d 1447 (6th Cir. 1995) ....................................................................10, 13

Lee v. Burkhart, 991 F.2d 1004 (2d Cir. 1993) ........................................................................ 26-27

Lockheed Corp. v. Spink, 517 U.S. 882 (1996)..............................................................................27

Marks v. Newcourt Credit Group Inc., 342 F.3d 444 (6th Cir. 2003) ...........................................18

Mellot v. ChoicePoint, Inc., No. 05 Civ. 1340, 2007 WL 5254887
    (N.D. Ga. Mar. 6, 2007)...............................................................................11, 15

Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995) ...........................................................10, 11, 13

Pedraza v. Coca-Cola Co., 456 F. Supp. 2d 1262 (N.D. Ga. 2006)..........................................9-10

Pegram v. Herdrich, 530 U.S. 211 (2000) ..............................................................................21, 27

Plumb v. Fluid Pump Serv., Inc., 124 F.3d 849 (7th Cir. 1997)....................................................31

Pugh v. Tribune Co., 521 F.3d 686 (7th Cir. 2008)...............................................................10, 31

Rankin v. Rots, 278 F. Supp. 2d 853 (E.D. Mich. 2003)..............................................................30

Rombach v. Chang, 355 F.3d 164 (2d Cir. 2004)........................................................................22

Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000)............................................................................4

Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.,
        793 F.2d 1456 (5th Cir. 1986) ..........................................................................................31

Sprague v. Gen. Motors Corp., 133 F.3d 388 (6th Cir. 1998) (en banc) ......................................15

Stein v. Smith, 270 F. Supp. 2d 157 (D. Mass. 2003) ............................................................18, 27

Teagardener v. Republic-Franklin Inc. Pension Plan, 909 F.2d 947
        (6th Cir. 1990).....................................................................................................................4

Thompson v. Avondale Indus., Inc., No. Civ. A. 99-3439, 2003 WL 359932
        (E.D. La. Feb. 14, 2003) ...................................................................................................17

Varity Corp. v. Howe, 516 U.S. 489 (1996) ................................................................................30

Vivien v. WorldCom, Inc., No. C 02-01329 WHA, 2002 WL 31640557
        (N.D. Cal. July 26, 2002).................................................................................................23

Wright v. Oregon Metallurgical Corp., 360 F.3d 1090
        (9th Cir. 2004)...........................................................................................11, 12, 13, 28

**Statutes and Rules**

15 U.S.C. § 77e ........................................................................................................... 19

29 U.S.C. § 1002 ......................................................................................................... 30

29 U.S.C. § 1021 ......................................................................................................... 27

29 U.S.C. §§ 1021-31 .................................................................................................. 21

29 U.S.C. § 1104 ......................................................................................................... 13

29 U.S.C. § 1109 ......................................................................................................... 21

Fed. R. Civ. P. 8(a) ............................................................................................... 23, 24

Fed. R. Civ. P. 9(b) ........................................................................................... 1, 22, 23

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1

Defendants respectfully submit this memorandum of law in support of their motion to dismiss the Consolidated Amended Class Action Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).[1]

PRELIMINARY STATEMENT

Plaintiffs in this purported class action assert claims for breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA") on behalf of participants in Morgan Stanley ERISA plans, but their Complaint fails to state a valid claim that any of the Defendants breached any obligation under ERISA.

The purported Plaintiff class consists of participants in Morgan Stanley's Employee Retirement Savings Plan (the "401(k) Plan") and its Employee Stock Ownership Plan (the "ESOP") between August 6, 2006, and July 25, 2008 (the "Class Period"). Those plans held Morgan Stanley stock, which declined in value during the Class Period. Plaintiffs charge that Defendants breached purported obligations under ERISA because they did not sell Morgan Stanley stock held by the ESOP and continued to offer investment in Morgan Stanley stock as an option under the 401(k) Plan. Plaintiffs also assert that Defendants violated ERISA by allegedly not disclosing information to Plan participants about Morgan Stanley's exposures to credit markets and about purported accounting and risk-management inadequacies.

Plaintiffs' contention that Defendants breached fiduciary duties by permitting investment in Morgan Stanley stock does not state a claim under ERISA because the challenged conduct was mandated by the Plans themselves. The 401(k) Plan *requires* that participants be given the option to invest in the Morgan Stanley Stock Fund, a fund that invests exclusively in Morgan

---

[1] Defendant O. Griffith Sexton has not yet been served by Plaintiffs and therefore is not a party to Defendants' motion to dismiss.

Stanley stock.  Similarly, the ESOP *requires* that contributions be invested in Morgan Stanley stock through the Morgan Stanley Stock Fund.  Courts have repeatedly recognized that such requirements preclude any claim that Defendants breached any fiduciary duty by permitting investment in Company stock.  Although a narrow exception to the rule has been created in situations involving an "impending collapse" that would render a company's stock "essentially worthless," nothing of the sort has been or could be alleged here.

Second, Plaintiffs' allegations that Defendants did not provide complete and accurate information to Plan participants about Morgan Stanley's financial condition and purported accounting and risk-management inadequacies similarly fails to state a valid claim under ERISA. There is no obligation under ERISA to provide such information.  Nor do Plaintiffs' allegations that Morgan Stanley's earnings releases and public statements misled Plan participants state a claim.  Courts have repeatedly held that such statements are made in a corporate and not a fiduciary capacity and thus are not actionable under ERISA as a matter of law.  In any event, the Complaint does not allege that any ERISA fiduciary actually knew the supposed information that Plaintiffs claim ought to have been disclosed.

Third, Plaintiffs' other claimed ERISA breaches are similarly invalid.  The allegation that certain Defendants owned Morgan Stanley stock fails to state a claim of conflict of interest, and Plaintiffs' failure to plead a valid primary breach of any ERISA obligation defeats their claims for breach of any duty to monitor and co-fiduciary liability.

Finally, the Complaint fails to allege facts sufficient to show that the various Defendants are fiduciaries with respect to the matters that form the basis of Plaintiffs' claims.

<u>THE COMPLAINT ALLEGATIONS</u>

The Plaintiff class allegedly consists of beneficiaries under the Plans during the Class Period.  Defendants are Morgan Stanley, which is a publicly traded company, and its broker-

dealer subsidiary, Morgan Stanley & Co., Inc. ("MS & Co."), two members of Morgan Stanley's Board of Directors (John J. Mack, the CEO, and O. Griffith Sexton), members of MS & Co.'s Board of Directors, members of the Investment Committee for the 401(k) Plan and the Plan Administrator for both Plans (Karen Jamesley, Morgan Stanley's Global Director of Human Resources).[2]  (Compl. ¶¶ 26-38.)  Plaintiffs assert that Defendants are named fiduciaries under the Plans or performed functions that make them *de facto* fiduciaries.  (Id. ¶¶ 39-54.)

MORGAN STANLEY'S EMPLOYEE BENEFIT PLANS

A.  The 401(k) Plan.  The 401(k) Plan permits Morgan Stanley employees to save for retirement on a tax-favored basis.  (Id. ¶ 61.)  Participants in the 401(k) Plan have individual accounts and personally determine how to allocate their savings among various investment options.  (Id. ¶¶ 62-63; Declaration of Robert F. Wise, Jr., Ex. C, Morgan Stanley Summary Plan Description – 401(k) Plan & ESOP, at 10 (as of July 1, 2007) ("Summary Plan Description").)  The investment options are selected by the Investment Committee, except that the 401(k) Plan *requires* that the investment options include the Morgan Stanley Stock Fund ("MSSF"), which invests only in Morgan Stanley stock (with a small cash position to fund withdrawals by Plan participants).  (Wise Decl. Ex. A, 401(k) Plan § 8(b) (as of Nov. 20, 2007).)  The 401(k) Plan provides that the MSSF may be "liquidated, removed or closed as an Investment Fund *only by amendment to the Plan*."  (Id. § 8(b)(ii)(A) (emphasis added).)  As Plan sponsor, MS & Co. (and

---

[2]  The MS & Co. Board Defendants are Walid A. Chammah, Charles Chasin, Zoe Cruz, Richard Portogallo, James P. Gorman, Neal A. Shear and Cordell G. Spencer.  The Investment Committee Defendants are Michael Rankowitz, Thomas C. Schneider, Michael T. Cunningham, R. Bradford Evans, Kirsten Feldman, Edmund C. Puckhaber and William B. Smith.  (Compl. ¶¶ 35, 37.)  The Complaint also names ten John Doe Defendants.  (Id. ¶ 38.)

its delegates) has sole authority to amend the Plan.  (Compl. ¶ 2; Wise Decl. Ex. A, 401(k) Plan § 19.) [3]

The 401(k) Plan appoints Morgan Stanley's Global Director of Human Resources as Plan Administrator with statutory responsibility for certain tasks such as providing a summary plan description to Plan participants.  (Compl. ¶ 57.)  The Plan limits the Plan Administrator's duties to those set forth in the 401(k) Plan document.  (Wise Decl. Ex. A, 401(k) Plan § 14(b)(iii) ("The Plan Administrator shall perform only its Fiduciary Responsibilities as provided in the Plan.").)

Plan participants were advised by Plan documents of the risks of investing in the MSSF. (E.g., Wise Decl. Ex. D, 401(k) Plan Fund Summary Guide, at 7 (as of Sept. 30, 2007) (advising that risks of investing in the MSSF was "Very High" and that "[u]ndiversified funds" have "greater risk" because they are invested "in a single company").)

B.  The ESOP.  The ESOP is an employee stock ownership plan "designed to invest primarily in qualified employer securities."  (Wise Decl. Ex. B, ESOP art. 5.01(a) (as of Nov. 20, 2007).)  The Company allocated funds to employees' ESOP accounts under two programs: (1) grants to match employee contributions to their 401(k) Plan accounts and (2) discretionary profit-sharing grants.  The ESOP directs that Company contributions to the ESOP "*shall be invested in shares of Company Stock*."  (Id. art. 4.01(a) (emphasis added); see also Wise Decl. Ex. C, Summary Plan Description at 6 (explaining that 401(k) matching contributions "may be made in cash and invested in the [MSSF] or may be made in shares of [Company] stock

---

[3] The Court may consider on a motion to dismiss any "public disclosure documents" required to be filed with the SEC, "any statements or documents incorporated in [the complaint] by reference" and documents on which plaintiffs relied in bringing suit.  Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000); see also Teagardener v. Republic-Franklin Inc. Pension Plan, 909 F.2d 947, 949-50 (6th Cir. 1990) (ERISA plan documents incorporated in complaint by reference may be considered on motion to dismiss).  Even a document that is not incorporated by reference may be considered where the complaint "relies heavily upon its terms and effect," such that it is "integral" to the complaint.  Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).

contributed directly to the [MSSF]").)  As of 2007, employees with at least three years of service or who are at least 55 years old can transfer their MSSF interests in their ESOP accounts to other 401(k) Plan investment options.[4]  (Wise Decl. Ex. B, ESOP art. 7.04(a).)

As Plan sponsor, Morgan Stanley (and its delegates) has sole authority to amend, modify or terminate the ESOP.  (Id. art. 12.01.)  Like the 401(k) Plan, the ESOP was administered by Karen Jamesley.  (Compl. ¶¶ 29-30.)

THE ALLEGED ERISA VIOLATIONS

Plaintiffs' breach-of-fiduciary-duty claims rest on a common premise:  That Defendants allegedly knew about impending losses that would hurt Morgan Stanley's stock price (see, e.g., id. ¶ 186), but did not sell the stock held by the Plans or advise Plan participants of the impending losses because Defendants wanted to conceal their alleged mismanagement (id. ¶ 256).  In essence, Plaintiffs' theory is that Defendants committed securities fraud by allegedly misleading the market about Morgan Stanley's financial condition, and then breached ERISA duties owed to Plaintiffs by not acting to protect them from the stock drop that would occur when the market learned the truth.  The Complaint fails, however, to plead either the predicate fraud or the purported breaches of fiduciary duty.

A.  Defendants' Allegedly Imprudent Management of the Plans

Plaintiffs contend that Defendants mismanaged the Plans by continuing to hold Morgan Stanley stock in the ESOP and by permitting continued investment by 401(k) Plan participants in the MSSF when Defendants allegedly knew or should have known that the Company's financial

---

[4] Prior to 2007, transfers were permitted only for persons who were at least 55 years old or who had left Morgan Stanley.  None of the Plaintiffs allege that he or she was unable to transfer MSSF interests in their ESOP account into alternative investment options.

health was at risk.  (See Compl. ¶ 5.)  Plaintiffs assert that, beginning in 2005, Morgan Stanley sought to increase returns by "backing its credit derivative products with subprime mortgages" (id. ¶ 95) and acquired Saxon Capital, Inc. ("Saxon"), a servicer and originator of subprime mortgages (id. ¶ 108).  Through Saxon, Morgan Stanley purportedly learned about the "deterioration" of the subprime lending market and associated "fraudulent practices" (id. ¶¶ 111-20) that allegedly put Morgan Stanley's "overall health at risk" (id. ¶ 120).

Plaintiffs also assert that Morgan Stanley's accounting, internal controls and risk-management procedures were inadequate and that Defendants should have known that these supposed inadequacies "put[] the Company's overall financial health at risk." (Id. ¶ 150; see also id. ¶¶ 5, 92, 171, 176, 178.)  Plaintiffs allege that the procedures and technology used by Morgan Stanley's Legal Entity and Accounting Disclosure ("LEAD") Group – which allegedly is responsible for Morgan Stanley's 10-K production, FAS reporting and internal financial reports (id. ¶¶ 146, 179-80) – were flawed.  (Id. ¶ 150; see also id. ¶¶ 174-77.)  These supposed flaws allegedly contributed to losses by Morgan Stanley that purportedly affected the value of its stock.

Plaintiffs contend that Defendants breached their fiduciary duties by "continu[ing] to offer Company stock as an investment option" and by "permitt[ing] the Plans to purchase additional shares in spite of Morgan Stanley's inability to properly manage its self-created risk." (Id. ¶ 254.)  They claim that Defendants were obligated to stop offering the MSSF as an option under the 401(k) Plan and to sell the Company stock held by the MSSF for Plan participants' 401(k) and ESOP accounts (see id. ¶ 269), notwithstanding the Plans' requirements that the MSSF be offered as an option under the 401(k) Plan and that the ESOP invest in Company stock.

### B.  The Allegedly Inadequate Disclosure

Plaintiffs also claim that Defendants breached alleged fiduciary obligations to inform Plan participants of supposedly known dangers of investing in the MSSF (id. ¶¶  263, 294),

because Defendants allegedly did not correct purported misrepresentations by Morgan Stanley about the Company's exposure to the subprime mortgage market (id. ¶¶ 184, 188, 197, 201) and concealed alleged problems with the Company's accounting, internal controls and risk-management procedures (id. ¶¶ 7, 170-71, 224-29, 261).  Plaintiffs claim that the alleged misrepresentations by Morgan Stanley resulted from "deliberate senior management decisions designed to conceal the truth" about its alleged lack of internal controls and purported failures to record asset-impairment charges.  (Id. ¶ 256.)

The Complaint alleges that, beginning with its fiscal third quarter of 2007 (covering from June through August 2007), Morgan Stanley's quarterly filings, press releases and public statements were false and misleading because Morgan Stanley allegedly failed to disclose that it had "tremendous" subprime exposure, that its hedging strategy was ineffective and that it lacked internal controls adequate to manage the "burgeoning credit and liquidity crisis."  (Id. ¶¶ 201, 248, 252.)  Defendants allegedly knew in August 2007 that Morgan Stanley "was going to be taking a multi-billion dollar writedown" (id. ¶ 186), but allegedly did not cause Morgan Stanley to disclose that write-down until November 7, 2007, when it announced "that it would write-down the value of its subprime mortgage-related exposure by $3.7 billion, due to the 'continued market deterioration' since August" (id. ¶ 207).  Plaintiffs allege that in December 2007, Morgan Stanley announced further mortgage-related write-downs and Special Interest Vehicle losses. (Id. ¶ 218.)  Plaintiffs allege that Morgan Stanley falsely stated that its mortgage-related losses resulted from a hedged position that did not perform as expected (id. ¶ 219), because Morgan Stanley purportedly had known that the hedge was not adequate and because the Company's write-downs allegedly were caused "not solely because of the down-turn in the subprime mortgage market, but because of Morgan Stanley's inability to conduct proper accounting and

7

thereby assess its true risk exposure" (id. ¶ 220).  The Complaint alleges that the Company's 2007 annual report falsely stated that market volatility had caused problems in valuing certain securities, because it allegedly failed to disclose that its valuation personnel were unqualified. (Id. ¶¶ 224, 228, 231.)

The Complaint also asserts in conclusory fashion that Morgan Stanley's financial statements violated various Generally Accepted Accounting Principles ("GAAP") and Rules of the Financial Accounting Standards Board ("FASB")" (id. ¶¶ 132-45, 230, 232-39, 255-62), did not properly account for its products (id. ¶¶ 182-83), falsely overstated assets, understated liabilities and inflated stockholders' equity (id. ¶¶ 255-56).

Plaintiffs allege that Defendants withheld negative information about the Company and did not sell Company stock held by the Plans because they held significant personal investments in Morgan Stanley stock.  (Id. ¶¶ 272, 302-03.)  The Complaint asserts that Mr. Mack sold 207,331 of his 3.9 million shares in March 2007 and that alleged stock sales by other Defendants show that they knew of the Company's allegedly "precarious" position.  (Id. ¶ 274.)

Based on these same allegations, in addition to their claims for mismanagement (Count 1, id. ¶¶ 280-86) and failure to provide information (Count 2, id. ¶¶ 287-98), Plaintiffs also assert claims under ERISA for conflicts of interest (Count 3, id. ¶¶ 299-306), failure to monitor (Count 4, id. ¶¶ 307-15) and co-fiduciary liability (Count 5, id. ¶¶ 316-26).

## ARGUMENT

## I.    PLAINTIFFS HAVE NOT STATED A MISMANAGEMENT CLAIM

The First Cause of Action (for mismanagement and lack of prudence) must be dismissed as a matter of law.

A.  <u>Compliance with Plan Requirements Is Not Actionable</u>

Both of the Plans *require* the very conduct that Plaintiffs contend was a breach of

fiduciary duties owed to Plan participants.

The 401(k) Plan mandates that participants be given the option of investing in the MSSF.

The Plan states that "[t]he Investment Funds" offered to Plan participants "*shall consist of* the

Morgan Stanley Stock Fund" and other funds selected by the Investment Committee.  (Wise

Decl. Ex. A, 401(k) Plan § 8(b)(i) (emphasis added).)  The Plan requires that the MSSF "be

invested *exclusively* in Morgan Stanley Stock."  (<u>Id.</u> § 8(b)(ii)(A) (emphasis added).)  It does not

permit the Investment Committee or the Plan Administrator to remove the MSSF from the list of

available investment options.  Similarly, the ESOP provides that "Employer Contributions to the

Plan *shall* be invested in shares of Company Stock" (Wise Decl. Ex. B, ESOP art. 4.01(a)

(emphasis added)), and that such investment shall be made through the MSSF (<u>see</u> Wise Decl.

Ex. C, Summary Plan Description at 6).

Courts have repeatedly recognized that where, as here, an ERISA plan requires

investment in company stock, the plan fiduciaries have no discretion with respect to plan

investments and hence cannot be charged with breach of fiduciary duty for continuing plan

investments in company stock.  <u>See</u> <u>Crowley v. Corning, Inc.</u>, No. 02 Civ. 6172, 2004 WL

763873, at *10 (W.D.N.Y. Jan. 14, 2004) ("[T]he Plan does not give the fiduciaries any

discretion with regard to investments in company stock.  Consequently, the Plan creates no

potential for fiduciary liability with regard to investments in [company] stock."); <u>see also</u>

<u>Kirschbaum v. Reliant Energy, Inc.</u>, 526 F.3d 243, 253 (5th Cir. 2008) ("Because the Plan's

requirements to invest in [company] stock are mandatory and were treated as such by [the

company and alleged ERISA fiduciaries], we agree with the district court that no fiduciary duties

are inherent in the Plan other than to follow its terms."); <u>Pedraza v. Coca-Cola Co.</u>, 456 F. Supp.

2d 1262, 1275-76 (N.D. Ga. 2006) ("no exercise of fiduciary duty was implicated" where plan "specifically required that only Coca-Cola stock be supplied to the ESOP, and required that Coca-Cola stock be offered as one of the choice-of-investment options").  The mismanagement claim (the First Cause of Action) must therefore be dismissed as a matter of law.

B.  Plaintiffs Have Not Overcome the Presumption that
     Investment In Company Stock Was Prudent

Even if the Plan documents were not a complete defense (and they are), Plaintiffs' allegations do not meet the high pleading standard that is required to claim that plan fiduciaries breached their fiduciary duties by investing in company stock.  Plan fiduciaries are entitled to a presumption that it is prudent to invest ESOP assets in company stock and to permit 401(k) plan participants to invest in company stock funds, and Plaintiffs' allegations fall short of pleading the kind of catastrophic loss of value during the Class Period that would be necessary to overcome that presumption.

In Moench v. Robertson, 62 F.3d 553 (1995), the Third Circuit held that "an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision."  Id. at 571.  This presumption of prudent investment, often called the "Moench presumption," has been applied widely by the courts of appeals, as well as by district courts in the Second Circuit.  See, e.g., Kirschbaum, 526 F.3d at 254-56; Pugh v. Tribune Co., 521 F.3d 686, 701 (7th Cir. 2008); Edgar v. Avaya, Inc., 503 F.3d 340, 345-49 (3d Cir. 2007); Kuper v. Iovenko, 66 F.3d 1447, 1459 (6th Cir. 1995); In re Polaroid ERISA Litig., 362 F. Supp. 2d 461, 474 (S.D.N.Y. 2005); Crowley, 2004 WL 763873, at *6-8, *12-13.  The presumption of prudence applies not only to plan investments in company stock, but also to offerings of company stock funds to 401(k) plan participants.  See, e.g., Polaroid, 362 F. Supp. 2d at 474 (presumption "applies with equal force to 401(k) plans requiring that the

10

employer's stock be an investment option"); In re WorldCom, Inc. ERISA Litig., 263 F. Supp. 2d 745, 764 (S.D.N.Y. 2003) (applying Moench presumption where 401(k) plan at issue).

Plaintiffs' allegations fail to overcome the presumption that it was prudent to continue to permit 401(k) Plan participants to invest in the MSSF and to invest ESOP funds in the MSSF. See Moench, 62 F.3d at 571-72.  The presumption is a "substantial shield" against claims of breach of fiduciary duty, Kirschbaum, 526 F.3d at 256, and cannot be overcome by allegations of "[m]ere stock fluctuations, even those that trend downward significantly," Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1099 (9th Cir. 2004).  Rather, courts look to whether the plaintiff has adequately alleged that an investment in company stock was maintained in the face of a "precipitous decline" in the value of a company's stock.  See Kirschbaum, 526 F.3d at 255 (plaintiffs failed to rebut Moench presumption because there was "no indication that [the company's] viability as a going concern was even threatened, nor that [its] stock was in danger of becoming essentially worthless"); Edgar, 503 F.3d at 348 (affirming dismissal on grounds that only a "dire situation" would require fiduciary "to disobey the terms of the Plans by not offering the [company stock fund] as an investment option, or by divesting the Plans of [company] securities").

Indeed, many courts have held that the Moench presumption is rebutted only where "a company is on the verge of financial collapse."  In re Coca-Cola Enters. Inc., ERISA Litig., Master File No. 1:06-CV-0953 (TWT), 2007 WL 1810211, at *10 (N.D. Ga. June 20, 2007); see also, e.g., Mellot v. ChoicePoint, Inc., 561 F. Supp. 2d 1305, 1315 (N.D. Ga. 2007) (applying Moench presumption in granting motion to dismiss where "Plaintiff has not alleged [the company's] impending collapse"); In re McKesson HBOC, Inc. ERISA Litig., 391 F. Supp. 2d 812, 829-33, 842-43 (N.D. Cal. 2005) (allegations of inequitable conduct without allegations of

11

imminent collapse insufficient to withstand motion to dismiss); In re Calpine Corp. ERISA Litig., No. C 03-1685 (SBA), 2005 WL 1431506, at *5-6 (N.D. Cal. Mar. 31, 2005) (complaint dismissed where "financial statements demonstrate that [defendant] was a viable concern throughout the alleged class period"); In re Duke Energy ERISA Litig., 281 F. Supp. 2d 786, 794-95 (W.D.N.C. 2003) (prudence claim not viable where "dire circumstances" or "impending collapse" not alleged).

In keeping with these principles, courts have repeatedly rejected claims of imprudent investment as a matter of law in cases involving losses as great as 75% and 80% of a stock's value. See, e.g., Kirschbaum, 526 F.3d at 255 n.12 (citing cases where stock drops of 75% and 80% were deemed insufficient to overcome the presumption and holding that drop of approximately 40% was insufficient); Wright, 360 F.3d at 1098-99 (dismissing claims where stock price dropped by more than 72%); McKesson, 391 F. Supp. 2d at 818, 838-39 (dismissing claims where stock price dropped 75% on restatement of financials due to massive accounting irregularities).

Plaintiffs' allegations fall short of pleading that Morgan Stanley's stock experienced the kind of "precipitous decline" during the Class Period necessary to overcome the presumption that it was prudent to continue to permit 401(k) Plan participants to invest in the MSSF and to keep the ESOP invested in the MSSF. Nor do Plaintiffs allege that during that period Morgan Stanley suffered a financial collapse or ceased to be viable as a going concern. Plaintiffs allege that Morgan Stanley's stock price rose during the Class Period to a 52-week unadjusted high of $90.95 in June 2007 (Compl. ¶ 164), but do not allege that the price declined during the Class Period to the extent that would be necessary to overcome the presumption of prudence. ERISA does not require Plan fiduciaries to disregard Plan requirements in response to fluctuations in the

value of the Company's stock.  See Wright, 360 F.3d at 1099.  Only an "impending collapse" or a "precipitous decline" can disturb the presumptive prudence of investment in Company stock, and Plaintiffs have not alleged any such collapse or decline during the Class Period.

     C.   Section 404 of ERISA Also Bars Plaintiffs' Prudence Claim

     ERISA expressly provides that where, as here, plan participants have individual accounts, plan fiduciaries have no duty to protect plan participants who exercise their own investment decisions against loss resulting from ownership of investments in company stock.  ERISA § 404(a)(2), 29 U.S.C. § 1104(a)(2).  As the Third Circuit recognized in Moench, a key objective of ERISA is to promote "the concept of employee ownership" of company stock.  62 F.3d at 568; see also Kuper, 66 F.3d at 1458 ("In drafting the ESOP provisions of ERISA, Congress intended to encourage employees' ownership of their employer company.").

     Indeed, Section 404(c) of ERISA exempts plan fiduciaries from *any* liability for investment in individual accounts where "losses . . . result from participants' exercise of control over investment decisions."  29 U.S.C. § 1104(c).  This provision exempts Defendants from liability because the Plan participants exercise control over their investments.  Each participant has an individual account (see Wise Decl. Ex. A, 401(k) Plan § 1; Wise Decl. Ex. B, ESOP arts. 1.01, 9.03) and is informed that the 401(k) Plan constitutes a plan under Section 404(c) (Wise Decl. Ex. C, Summary Plan Description at 10).  Participants' 401(k) Plan contributions are invested in Company stock only to the extent that participants affirmatively select Morgan Stanley stock as an investment option (Wise Decl. Ex. A, 401(k) Plan § 8(d)(i)-(ii)), and employees who have been at Morgan Stanley for at least three years or who are at least 55 years old can transfer their MSSF interests in their ESOP accounts into other options offered under the 401(k) Plan  (Wise Decl. Ex. C, Summary Plan Description at 11).  Thus, any losses allegedly suffered are attributable to the participants' own decisions to invest in the MSSF.  Plaintiffs

effectively concede that Section 404(c) applies and would be a complete bar to their claims (Compl. ¶ 329), but for the allegation that "Defendants failed to provide participants with complete and accurate information regarding Company stock," which they contend prevented Plan participants from "exercis[ing] the requisite independent control over their investment[s]" (id. ¶ 330). Because Plaintiffs' disclosure-based claim also fails as a matter of law, see infra at pp. 14-25, the limited exception does not apply and Section 404(c) bars their prudence claim.

## II.    PLAINTIFFS HAVE NOT STATED A CLAIM FOR INADEQUATE DISCLOSURE

The Second Cause of Action (for failure to provide complete and accurate disclosure) must be dismissed for failure to state a claim. Plaintiffs' disclosure claim is in fact a thinly disguised claim for securities fraud, recast as a breach of fiduciary duty to Plan participants: Plaintiffs allege that Morgan Stanley intentionally misled the markets about its financial condition, subprime exposure and risk-management abilities – and that Defendants violated ERISA by not disclosing "the truth" about these matters to Plan participants.

These allegations fail to state a valid claim under ERISA, for several reasons: First, there is no duty under ERISA to provide plan members with company information not otherwise disclosed to the market. Rather, the statute requires disclosures about the Plan and Plan benefits, and Plaintiffs do not contend that disclosures on those subjects were inadequate. Second, the statements in Morgan Stanley's earnings releases and public statements that Plaintiffs claim were misleading are not actionable under ERISA because, as courts have repeatedly held, disclosures made in a corporate capacity are not fiduciary communications subject to ERISA's obligation of complete and accurate disclosure. Finally, the conclusory allegations in the Complaint are inadequate to allege that any fiduciary with an obligation to provide information knew or should have known the information that Plaintiffs claim should have been disclosed.

A.  ERISA Imposes No Obligation To Provide the Information
    that Plaintiffs Claim Should Have Been Disclosed

There is no duty under ERISA to provide Plan participants with the kind of information that Plaintiffs contend Defendants were obligated to disclose about Morgan Stanley's possible exposures to adverse market conditions and purported accounting and risk-management inadequacies.  Plaintiffs' assertion that Defendants were obligated to provide otherwise undisclosed corporate information to Plan participants simply because the Plan provided them the option of investing in Morgan Stanley stock is contrary to law.

The obligation under ERISA to provide complete and accurate information to plan participants is limited to certain statutorily prescribed plan information (*i.e.*, information about benefits, enrollment, expenses, etc.).  See Mellot v. ChoicePoint, Inc., 561 F. Supp. 2d 1305, 1318 (N.D. Ga. 2007) (duty of disclosure under ERISA "is limited to the disclosure of information about the plan, plan benefits or plan expenses"); Calpine, 2005 WL 1431506, at *7 (same).  "[T]here is no general fiduciary duty of disclosure under ERISA."  Calpine, 2005 WL 1431506, at *7.  A corporate plan sponsor does not alter this general rule by offering plan participants the option of investing in company stock.  See, e.g., Sprague v. Gen. Motors Corp., 133 F.3d 388, 405-06 & n.15 (6th Cir. 1998) (en banc) ("It would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed."); Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 147 (2d Cir. 1997) ("[I]t [is] inappropriate to infer an unlimited disclosure obligation on the basis of general [ERISA fiduciary duty] provisions that say nothing about disclosure.").  Accordingly, no Plan fiduciary was obligated to disclose to Plan members information about Morgan Stanley's possible exposures to adverse market conditions and purported accounting and risk-management inadequacies.  Nor would it be reasonable to

15

construe ERISA as imposing obligations to provide company information to plan participants beyond the disclosures that must be made to all shareholders under the federal securities laws.

Although some courts have construed ERISA to require fiduciaries to disclose to plan participants that the company's stock is not a prudent investment when the company is facing an impending collapse and bankruptcy – *i.e.*, when the presumption of prudence might no longer protect fiduciaries' continued investment of plan assets in company stock – the Complaint here does not allege that Morgan Stanley has experienced any such catastrophic loss of value during the purported Class Period.  Compare, e.g., In re Polaroid ERISA Litig., 362 F. Supp. 2d 461, 465, 467-68, 478 (S.D.N.Y. 2005) (fiduciaries knew but did not disclose that company's "prospects as a going concern were in jeopardy" and that company was using "inappropriate accounting tactics" that eventually led to its collapse and bankruptcy); In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F. Supp. 2d 511, 562-63 (S.D. Tex. 2003) (noting substantive allegations of "fraudulent accounting" and "precarious, swiftly deteriorating financial condition," where the company ultimately collapsed and filed bankruptcy); see also In re Dynegy, Inc. ERISA Litig., 309 F. Supp. 2d 861, 868, 889 (S.D. Tex. 2004) (undisclosed "accounting improprieties" required repeated restatements of financials that eventually rendered company stock essentially worthless).  None of the circumstances that led the courts in these cases to conclude that plan fiduciaries were obligated to advise plan members against investing in company stock has been alleged here.

To the contrary, if anything, this case more closely resembles Edgar v. Avaya, Inc., 503 F.3d 340 (3d Cir. 2007), in which the Third Circuit held that allegations "[t]hat defendants did not inform Plan participants about several adverse corporate developments prior to [the company's] earnings announcement" did not state a claim for breach of ERISA's disclosure

obligations.  Id. at 350-51.  The court held that the defendants had complied with their disclosure obligations under ERISA because the required summary plan description had disclosed that market performance would affect the value of investments in company stock and had apprised plan participants of the risks of investing in a non-diversified corporate stock fund.  Id. at 350. There was no further obligation, the court held, to disclose adverse information relevant to the company's performance in advance of its regular earnings announcement.  Id.  The same reasoning should govern here.  As in Edgar, Plaintiffs have not alleged that the Plan documents did not warn Plan participants of the risks of price fluctuation or investing in a non-diversified stock fund such as the MSSF.  See supra p. 4.  Plaintiffs' assertion that Defendants were required to disclose the alleged information about Morgan Stanley's exposures to adverse market conditions and its purported accounting and risk-management inadequacies accordingly does not state a claim under ERISA.[5]

> B.  The Allegedly Misleading Disclosures by Morgan Stanley
>      Were Not ERISA Communications and Are Not Actionable

Plaintiffs also fail to state a claim in asserting that Defendants were obligated to disclose Company information under ERISA because public filings and press releases issued by Morgan Stanley purportedly misrepresented its financial condition and its accounting and risk-

---

[5] Plaintiffs' claim that Defendants should have advised Plan participants of alleged undisclosed inside Company information fails for the additional reason that "[f]iduciaries are not obligated to violate the securities laws in order to satisfy their fiduciary duties."  In re McKesson HBOC, Inc. ERISA Litig., No. C00-20030 (RMW), 2002 WL 31431588, at *6 (N.D. Cal. Sept. 30, 2002); see also Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 256 (5th Cir. 2008) ("[R]equiring a fiduciary to override the terms of a company stock purchase plan could suggest the necessity of trading on insider information.  Such a course is prohibited by the securities laws."); Harzewski v. Guidant Corp., 489 F.3d 799, 808 (7th Cir. 2007) (noting that "[i]t probably would have been unlawful" for the company to sell stock held by the pension plan "on the basis of inside knowledge of the company's problems," in which case there is "no breach of fiduciary duty [since the] duty of loyalty does not extend to violating the law"); Thompson v. Avondale Indus., Inc., No. Civ. A. 99-3439, 2003 WL 359932, at *19 (E.D. La. Feb. 14, 2003) (rejecting claim that the management defendants withheld material non-public information that prevented other fiduciaries from making well-informed decisions).

management abilities.  (Compl. ¶ 290.)  There is no obligation under ERISA to supplement purportedly incomplete disclosures made in a corporate capacity, as opposed to statements made in discharging a fiduciary duty under ERISA.  Plaintiffs' position amounts to a claim that every corporate disclosure is a fiduciary ERISA communication, which is simply not the law.

The distinction between corporate disclosures and ERISA communications was explained by the Fifth Circuit in Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 256-57 (5th Cir. 2008).  There, as here, the plaintiffs argued that the defendants had violated ERISA because statements in the company's SEC filings were purportedly not complete and accurate.  The Fifth Circuit rejected that position and affirmed that plaintiffs could not prove their disclosure claim because they had failed to raise any issue as to whether "defendants were acting in anything other than a corporate capacity in making these statements."  Id. at 257.  There was no duty under ERISA, the court held, to correct statements made in a corporate capacity.  See id.; see also Crowley v. Corning, Inc., 234 F. Supp. 2d 222, 228 (W.D.N.Y. 2002) (alleged misstatements regarding financial performance did not give rise to claim under ERISA "regardless of [their] truth or falsity"); Marks v. Newcourt Credit Group, 342 F.3d 444, 454 n.2 (6th Cir. 2003) (challenged statements actionable only when directed specifically to plan participants or related to plan management or administration); In re Calpine Corp. ERISA Litig., No. C 03-1685 (SBA), 2005 WL 3288469, at *9 (N.D. Cal. Dec. 5, 2005) (granting motion to dismiss where plaintiff could not allege that statements were made in a fiduciary capacity or directed to plan participants, even though the alleged misrepresentation "turned out to have an adverse impact on the plan"); Stein v. Smith, 270 F. Supp. 2d 157, 173 (D. Mass. 2003) (no possible fiduciary liability for statements made in releases and SEC filings because they were not made to plan participants specifically or in the context of discussing plan benefits).

Plaintiffs attempt to avoid this clear rule by alleging that the supposedly misleading Morgan Stanley public filings were incorporated by reference in Plan documents. (Compl. ¶¶ 46(b), 49(a), 172, 290.) That allegation does not transform public filings made in a corporate capacity into fiduciary communications. See e.g., Kirschbaum, 526 F.3d at 257 (incorporation of SEC filings into prospectus distributed to plan fiduciaries does not make filings ERISA communications). But in any event, Plaintiffs' allegation that Morgan Stanley's SEC filings were incorporated into the Summary Plan Description (Compl. ¶¶ 46(b), 49(a), 290) is contradicted by the document itself (see Wise Decl. Ex. C, Summary Plan Description). See, e.g., Crowley, 234 F. Supp. 2d at 228 (rejecting allegation contradicted by plan provisions). And Plaintiffs' assertion that the Form S-8 registration statement is a Plan document is simply incorrect. It is a securities law filing required not by ERISA but by the Securities Act of 1933, 15 U.S.C. § 77e, and SEC Rules. See Kirschbaum, 526 F.3d at 257 (filing of Form S-8 is a "corporate obligation arising under the securities laws").

Finally, Plaintiffs' contention that Defendants were obligated by ERISA to correct Morgan Stanley's supposedly misleading public filings fails for the additional reason that the Complaint lacks allegations to support the claim that those filings were misleading. Plaintiffs allege that Morgan Stanley failed to disclose its exposure to possible subprime losses (see Compl. ¶¶ 163, 184, 201, 220, 248, 252, 263), but that allegation is contradicted by the express risk disclosures in its public filings, which warned of market risk, including specifically risk related to mortgage-related investments (Wise Decl. Ex. E, Morgan Stanley, Annual Report (Form 10-K), at 14, 15 (Nov. 30, 2007) ("2007 Annual Report")). Plaintiffs' allegations that Morgan Stanley misled the markets about its risk-management ability (see Compl. ¶¶ 170-73) are belied by the Company's disclosures that its hedging strategies and risk-management

techniques "may not be fully effective in mitigating [its] risk exposure in all market

environments or against all types of risk" (Wise Decl. Ex. E, 2007 Annual Report at 20).[6]  Nor

does the Complaint identify any specific financial disclosure that was false as a result of

supposedly flawed accounting policies.

Plaintiffs' failure to allege that Morgan Stanley's public filings were misleading is further

apparent in the absence of any allegation that the eventual disclosure of the supposedly withheld

information prompted a material drop in the price of its stock.  Plaintiffs' allegations that Morgan

Stanley's stock price declined during the relevant period (Compl. ¶ 12) and that "the gravity of

the situation weighed on the stock" (id. ¶ 210) fail to demonstrate that any loss was caused by

any failure to disclose information at an earlier date – i.e., that the purported nondisclosures had

any effect on Morgan Stanley's stock price.  It is not enough for Plaintiffs simply to recite the

stock price on various dates without linking a decline in the price to a particular disclosure.  (Id.

---

[6] Morgan Stanley's risk disclosures during the Class Period expressly warned investors about market risk, including risks to investments in mortgage-backed securities and the possibility that hedging strategies might not be fully effective:

"Our results of operations may be materially affected by market fluctuations and by economic and other factors.  The amount, duration and range of our market risk exposures have been increasing over the past several years, and may continue to do so.  Our results of operations may be materially affected by market fluctuations due to economic factors."  (Wise Decl. Ex. E, 2007 Annual Report at 14; Wise Decl. Ex. F, Morgan Stanley, Annual Report (Form 10-K), at 16 (Nov. 30, 2006) ("2006 Annual Report").)

"We also securitize and trade in a wide range of commercial and residential real estate and real estate-related whole loans, mortgages and other real estate and commercial assets and products, including residential and commercial mortgage-backed securities.  These businesses could be adversely affected by a downturn in the real estate sector."  (Wise Decl. Ex. E, 2007 Annual Report at 15; Wise Decl. Ex. F, 2006 Annual Report at 17.)

"[O]ur hedging strategies and other risk management techniques may not be fully effective in mitigating our risk exposure in all market environments or against all types of risk . . . .  Some of our methods of managing risk are based upon our use of observed historical market behavior. As a result, these methods may not predict future risk exposures, which could be significantly greater than the historical measures indicate."  (Ex. E, 2007 Annual Report at 20; Ex. F, 2006 Annual Report at 22.)

¶¶ 198, 216, 243, 250.)  In a similar ERISA case where, as here, plaintiffs attempted to advance

what was effectively a "securities fraud case masquerading as an ERISA case," the district court

properly concluded that "[l]oss causation is an element of the claim, and the Plaintiff should be

required to allege facts that show it."  In re Coca-Cola Enters. Inc., ERISA Litig., Master File

No. 1:06-CV-0953 (TWT), 2007 WL 1810211, at *8 (N.D. Ga. June 20, 2007).  The lack of any

allegations here that would support a theory of loss causation further illustrates that Plaintiffs

have failed to allege that Morgan Stanley's disclosures were materially misleading, much less

that they gave rise to an ERISA obligation to make corrective disclosures to Plan participants.

### C.  The Complaint Does Not Allege that Any Fiduciary Breached Any Duty to Inform Plan Participants

A person is a fiduciary under ERISA only with respect to specific fiduciary obligations

that by law or by fact are performed by that person.  See Pegram v. Herdrich, 530 U.S. 211, 225-

26 (2000); see also 29 U.S.C. § 1109(a); In re WorldCom, Inc. ERISA Litig., 236 F. Supp. 2d

745, 760 (S.D.N.Y. 2003) ("ERISA liability arises only from actions taken or duties breached in

the performance of ERISA obligations.").  A person's fiduciary duties are accordingly

determined by his or her "discretionary authority" or "discretionary responsibility" under a plan.

See Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 18 (1st Cir. 1998).  Plaintiffs have failed

to allege that any Defendant was a Plan fiduciary for purposes of providing information to Plan

participants.  Nor have they alleged facts that would support a claim that any Defendant breached

such a duty.

The only Defendant responsible for communicating with Plan participants is Karen

Jamesley, the Plan Administrator for both the 401(k) Plan and the ESOP.  As Plan Administrator,

Ms. Jamesley is charged by ERISA with providing Plan participants certain information,

including Summary Plan Descriptions.  See 29 U.S.C. §§ 1021-31; (see also Compl. ¶ 57).  The

21

Complaint does not allege that Ms. Jamesley herself had any knowledge of the alleged market developments, exposures or accounting and risk-management inadequacies that Plaintiffs contend Morgan Stanley did not disclose.  In fact, the only allegations specific to Ms. Jamesley relate to her position as Plan Administrator and allege that she was a fiduciary.  (Compl. ¶¶ 29-30, 43-45, 48, 57-58.)  The Complaint then goes on for dozens of pages, without once mentioning her name.  This failure to allege specifically "when the 'adverse information' was available, or known" to Ms. Jamesley defeats any claims that she breached any fiduciary duty of disclosure.  See, e.g., Crowley, 234 F. Supp. 2d at 230 (dismissing disclosure claim against certain defendants who were not specifically alleged to have knowledge of the purportedly undisclosed information).

Plaintiffs' disclosure claim fails as to all other Defendants because no other Defendants are fiduciaries for the purpose of communicating with Plan participants.  See infra pp. 27-32.  In addition, Plaintiffs' disclosure claim also fails because Plaintiffs have not alleged knowledge of the purported nondisclosures by any individual Defendants.  Plaintiffs allege that Morgan Stanley intentionally misled the markets about its subprime exposure and risk-management abilities as a "result[] [of] a series of deliberate senior management decisions designed to conceal the truth." (Compl. ¶ 256.)  Indeed, the Complaint makes repeated, albeit inadequate, allegations that Defendants knew that Morgan Stanley's financial statements filed with the SEC were false and misleading (see, e.g., id. ¶¶ 255-56), and that Defendants sought to "artificially inflate the price of Company stock" (id. ¶ 255).  Yet Plaintiffs have failed to allege facts to support this claim – which sounds in "fraud" – with the particularity required by Rule 9(b).  Nor can Plaintiffs avoid satisfying Rule 9(b) simply because their complaint asserts claims for breach of fiduciary duty rather than fraud.  See, e.g., Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004)

22

(requirement that plaintiff satisfy Rule 9(b) turns on "the conduct alleged" and is "not limited to allegations styled or denominated as fraud").  Indeed, "Rule 9(b)'s heightened pleading standards apply to breach of fiduciary duty claims where the breach is premised on the defendant's fraudulent conduct."  In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig., Nos. 02 MDL 1484 (JFK), 02 Civ. 8472 (JFK), 2008 WL 2594819, at *8-9 (S.D.N.Y. June 26, 2008) (non-ERISA breach-of-fiduciary-duty case).  Specifically, courts have recognized that where a "fraudulent scheme" is put forward as the basis of a fiduciary-breach claim under ERISA, the averments of fraud must meet the Rule 9(b) standard.  See, e.g., Coca-Cola, 2007 WL 1810211, at *5-6 (applying Rule 9(b) where complaint "presupposes the existence of a fraud that [defendants] knew about, participated in, benefitted from, and concealed" and that accordingly "[n]one of the Plaintiffs' claims can succeed if this fraudulent scheme cannot be proven"); Vivien v. WorldCom, Inc., No. C 02-01329, 2002 WL 31640557, at *6-7 (N.D. Cal. July 26, 2002) (standard of Rule 9(b) applies to ERISA claim for allegedly false and misleading statements that sounded in fraud).  But cf. In re Polaroid ERISA Litig., 362 F. Supp. 2d 461, 469-70 (S.D.N.Y. 2005) (declining to apply Rule 9(b) where fraud allegations were "extraneous to Plaintiffs' claims").

In any event, even under the liberal notice pleading standard of Rule 8(a), Plaintiffs' group-pleading allegations that Defendants "knew or should have known" information that purportedly was not disclosed (see, e.g., Compl. ¶¶ 112, 150, 255, 262, 263, 268, 292) are unsupported by any specific factual allegations and therefore fail to state an ERISA claim for breach of the duty to make adequate disclosure.  See, e.g., Crowley, 234 F. Supp. 2d at 230 (dismissing disclosure claim on grounds that "[a] complaint that contains only conclusory allegations and lack[s] any factual assertions for support fails even the liberal standard" for

notice pleading); <u>Howell v. Motorola, Inc.</u>, 337 F. Supp. 2d 1079, 1090-92 (N.D. Ill. 2004) (dismissing disclosure claim for failure to satisfy Rule 8(a) where complaint failed to allege how certain defendants knew information or were on inquiry notice).

Plaintiffs also have failed to plead facts to support their assertion that Defendants made false and misleading statements.  Plaintiffs assert that "senior management" made decisions "to conceal the truth" (Compl. ¶ 256), but Plaintiffs never identify who made these decisions, when they made them, what they specifically decided or what exactly was concealed – much less what statements made by the Company were misleading.  Indeed, many of Plaintiffs' fraud allegations are inadequately asserted against "Defendants" generally (<u>see</u>, <u>e.g.</u>, <u>id.</u> ¶¶ 262, 265), "some Defendants" (<u>see</u>, <u>e.g.</u>, <u>id.</u> ¶ 273) or "certain Defendants" (<u>see</u>, <u>e.g.</u>, <u>id.</u> ¶ 302).

Plaintiffs allegation that Mr. Mack's statement in December 2007 that losses had resulted in part from a hedged position that had not performed as expected was false – purportedly because Morgan Stanley had known that the hedge was inadequate (Compl. ¶¶ 219-20) – is unsupported by any factual allegations.  Plaintiffs also contend that Mr. Mack misleadingly suggested that it was merely the downturn in the subprime markets and not also "Morgan Stanley's inability to conduct proper accounting and thereby assess its true risk exposure" that had caused it to take write-downs in 2007 and 2008.  (<u>Id.</u> ¶ 220.)  But the Complaint contains no allegations that *connect* the supposed accounting shortcomings with the Company's write-downs.  Much less do they sufficiently show that any Defendant was either personally aware of the alleged accounting and risk-management inadequacies alleged by Plaintiffs or was in a position to know.  Indeed, Plaintiffs' claim that "Morgan Stanley was aware yet failed to properly disclose that its internal controls were incapable of accounting for and managing its hedging activities" (<u>id.</u> ¶ 229) fails to allege that any individual Defendant was aware of these

facts.  See Crowley, 234 F. Supp. 2d at 230 (dismissing disclosure claim against certain defendants where complaint made general claims of knowledge against all defendants without specifying actual knowledge as to each defendant).  In a case alleging personal breaches of duty, it is inadequate to charge an individual fiduciary with breach based on the alleged knowledge of "the company."

Plaintiffs' allegations that Morgan Stanley was not complying with FASB rules and GAAP (e.g., Compl. ¶¶ 255-62) fail to allege what effect if any the supposed noncompliance had on its financial statements or its risk-management processes.  Plaintiffs do not allege specific facts that would suggest knowledge of any such problems by any particular Defendant.  Nor does the Complaint allege that the supposed problems would require any restatement of Morgan Stanley's financials.  The conclusory assertions that Morgan Stanley should have anticipated possible losses and disclosed that information sooner (see Compl. ¶¶ 186-87, 197, 201, 220) fails to support any claim that any Defendant breached any duty under ERISA.

III.  PLAINTIFFS HAVE NOT STATED CLAIMS FOR CONFLICT OF INTEREST, FAILURE TO MONITOR OR CO-FIDUCIARY LIABILITY

The Third, Fourth, and Fifth Causes of Action – which are essentially bootstrap claims, charging that Defendants breached their duty of loyalty by failing to avoid conflicts of interest, breached their duty to monitor and are liable under a co-fiduciary theory – must also be dismissed.

Plaintiffs' allegations in support of its conflict-of-interest charge (Third Cause of Action) fail to state a claim because Plaintiffs have not shown any valid conflict or any connection between the supposed conflict and any claimed harm to the Plan.  The allegation that "certain Defendants" had "significant" investments in Morgan Stanley stock (Compl. ¶¶ 302-03), that several Defendants' compensation was tied to the stock's performance (id. ¶ 271) and that Mr.

Mack sold stock in March 2007 valued at more than $16 million (id. ¶ 274) are inadequate to support the claim that Defendants failed to avoid conflicts of interest. See Polaroid, 362 F. Supp. 2d at 479 (dismissing claim for conflict of interest where only allegation was that defendants' compensation was stock-based); In re WorldCom, Inc. ERISA Litig., 263 F. Supp. 2d 645, 768 (S.D.N.Y. 2003) (same). Plaintiffs failure to show any causal link between the supposed conflict and the harm similarly defeats the claim. See In re McKesson HBOC, Inc. ERISA Litig., 391 F. Supp. 2d 812, 835 (N.D. Cal. 2005) (breach-of-loyalty claim must allege a specific conflict and resulting harm to the plan, an act or omission taken by a fiduciary while acting as a fiduciary and as a result of the conflict, and the specific benefit to the fiduciary from the conflict); In re Dynegy, Inc. ERISA Litig., 309 F. Supp. 2d 812, 897-98 (S.D. Tex. 2004) (same).

Plaintiffs' assertions that Defendants failed to monitor other fiduciaries (Fourth Cause of Action) or are liable as co-fiduciaries for alleged breaches by other Defendants (Fifth Cause of Action) fail to state claims because, as shown above, the Complaint does not state a claim for breach of any duty by any Defendant. Having failed to plead a valid primary breach of any ERISA duty, Plaintiffs have necessarily failed to plead an essential element of their failure-to-monitor and co-fiduciary claims. See Coca-Cola, 2007 WL 1810211, at *11 (no breach of duty to monitor investment fiduciaries in absence of underlying prudence breach); Izzarelli v. Rexene Prods. Co., 24 F.3d 1506, 1525 n.34 (5th Cir. 1994) (no co-fiduciary liability without primary breach); In re Calpine Corp. ERISA Litig., No. C 03-1685 (SBA), 2005 WL 1431506, at *8 (N.D. Cal. Mar. 31, 2005) (same). Nor have Plaintiffs alleged other essential elements of a co-fiduciary claim.[7]

---

[7] Plaintiffs' conclusory allegations that Defendants concealed, enabled and failed to remedy co-fiduciaries' failures (Compl. ¶¶ 319, 322, 325) are insufficient to state a claim for co-fiduciary liability. See, e.g., Lee v.

IV.  PLAINTIFFS HAVE FAILED TO ALLEGE THE FIDUCIARY
      STATUS OF CERTAIN DEFENDANTS

As explained above, a defendant cannot be held liable under ERISA unless he was performing a fiduciary function with respect to the allegedly wrongful action.  See supra pp. 21. Plaintiffs accordingly must plead, for each Defendant, that the Defendant was a fiduciary with respect to the conduct that is the basis for each claim against that Defendant.  See Pegram v. Herdrich, 530 U.S. 211, 226 (2000).  The Complaint fails to do this.

A.  The Corporate Defendants Are Not Fiduciaries with
     Respect to Any Claim

Neither Morgan Stanley or MS & Co. is a "named fiduciary" under either Plan.  Morgan Stanley is the sponsor of the ESOP, and MS & Co. is the sponsor the 401(k) Plan.  As plan sponsors, they have no fiduciary duties.  Their role as sponsor is that of a "settlor" of a trust, not a fiduciary.  Akers v. Palmer, 71 F.3d 226, 231 (6th Cir. 1995); see also Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 433, 444-45 (1999) (plan sponsor is like settlor of a trust); Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996) (in adopting ERISA plans, employers "do not act as fiduciaries"); Hunter v. Caliber Sys., Inc., 220 F.3d 702, 718 (6th Cir. 2000).

Nor does the Complaint allege that either Morgan Stanley or MS & Co. is a de facto fiduciary.  Plaintiffs' assertion that Morgan Stanley was responsible for "communications to [Plan] participants" (Compl. ¶ 46(b)) is unsupported and in fact contrary to the ERISA statute, which assigns that function to the Plan Administrator, 29 U.S.C. § 1021.  The allegation that Morgan Stanley and MS & Co. can decide whether Morgan Stanley's contributions to the ESOP

Burkhart, 991 F.2d 1004, 1010-11 (2d Cir. 1993) (dismissing co-fiduciary claim that failed to allege actual knowledge of co-fiduciary's breach); Donovan v. Cunningham, 716 F.2d 1455, 1475 (5th Cir. 1983) (to claim co-fiduciary liability, plaintiff must allege actual knowledge of fiduciary's breach); Stein v. Smith, 270 F. Supp. 2d 157, 175 (D. Mass. 2003) (unsupported allegation that defendants knew or should have known of breach is inadequate).

are made in cash or stock (Compl. ¶¶ 46(c), 50(c)) does not make either entity a fiduciary, because that determination is not a fiduciary act for the benefit of Plan participants. Indeed, for Plan participants, the form of the contribution is immaterial because the ESOP dictates that Morgan Stanley's contributions, in whatever form they are made, "shall be invested in shares of Company Stock" (Wise Decl. Ex. B, ESOP art. 4.01(a)). In either event, the ESOP is invested in the MSSF. (Wise Decl. Ex. C, Summary Plan Description at 6.)

Nor can Morgan Stanley or MS & Co. be deemed fiduciaries because Plaintiffs have alleged that their employees performed fiduciary functions. (E.g., Compl. ¶¶ 46(a), 47, 50(a), 51.) Courts in this and other circuits have refused to impose fiduciary responsibility on *respondeat superior* or agency grounds where the employer is not itself a plan fiduciary. See Crowley, 234 F. Supp. 2d at 228 (dismissing *respondeat superior*-based claims against the corporate defendant where plaintiffs failed to show that the corporation itself carried out any of the alleged actions in a fiduciary capacity); Coca-Cola, 2007 WL 1810211, at *13 (declining to impose fiduciary liability on a *respondeat superior* theory of liability); Crowley v. Corning, Inc., No. 02 Civ. 6172, 2004 WL 763873, at *5 (W.D.N.Y. Jan. 14, 2004) (rejecting argument that Plan Administrator that was employee of company acted as company's agent); see also Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1101-02 (9th Cir. 2004) ("Because the [defendant] was neither a fiduciary nor a *de facto* fiduciary, the district court did not err in concluding that the [defendant] could not be found liable under ERISA for breach, or participation in the breach, of a fiduciary duty.").

B.  The Morgan Stanley Board Defendants Are Not
       Fiduciaries with Respect to Any Claim

The Complaint fails to allege that John J. Mack, the Chairman and Chief Executive

Officer of Morgan Stanley, is an ERISA fiduciary for either Plan.[8]  Neither Plan names Mr.

Mack as a fiduciary or assigns any fiduciary responsibility to him.  Plaintiffs' allegation that Mr.

Mack determined the form (cash or stock) of Morgan Stanley's annual contributions to the ESOP

(id. ¶ 49) does not make him a Plan fiduciary, because as explained above, that determination

was not a fiduciary function.  Nor is Mr. Mack a Plan fiduciary because he allegedly

"communicated" with Plan members through Morgan Stanley public filings that allegedly were

incorporated in Plan documents.  See WorldCom, 236 F. Supp. 2d at 760 (SEC filings that are

incorporated in plan documents by reference do not provide "a basis for ERISA claims against

their signatories").  Indeed, Morgan Stanley's corporate filings, whether or not incorporated in

Plan documents, are not fiduciary communications.  See infra p. 17-21.

C.  The MS & Co. Board Members Are Not Fiduciaries
       with Respect to Any Claim

Plaintiffs' allegation that the members of the MS & Co. Board have the authority to

appoint and remove members of the Investment Committee does not make the MS & Co. Board

members fiduciaries with respect to the 401(k) Plan generally.  Rather, the fiduciary function of

the MS & Co. Board members alleged by Plaintiffs is limited to overseeing the constitution of

the Investment Committee.  Plaintiffs have not alleged that the MS & Co. Board members

breached a duty in connection with the appointment or removal of members of the Investment

Committee, and this ends the inquiry with respect to the fiduciary status of the MS & Co. Board

---

[8] The other member of the Board named as a Defendant, O. Griffith Sexton, has not been served and
therefore is not a party to Defendants' motion to dismiss.

members.  Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 18 (1st Cir. 1998) (noting that

"fiduciary liability arises in specific increments correlated to the vesting or performance of

particular fiduciary functions in service of the plan, not in broad, general terms").

    Plaintiffs' allegation that the MS & Co. Board members are fiduciaries for the purpose of

monitoring the Investment Committee (Compl. ¶¶ 310-13) is unsupported by any specific factual

allegation and therefore "fails even the liberal standard" for notice pleading.  Cf. Crowley, 234 F.

Supp. 2d at 230.  Even if the MS & Co. Board members had such a duty, Plaintiffs have not

alleged that they had any reason to suspect that the Investment Committee was not fulfilling its

duties.  In addition, the duty to monitor is extremely limited and, contrary to Plaintiffs'

suggestion (see Compl. ¶ 313), does not encompass the authority or discretion to control

investment options.  See Polaroid, 362 F. Supp. 2d at 473 ("ERISA does not attach liability for

investment decisions to fiduciaries whose roles were limited to appointing, retaining and

removing other fiduciaries."); Crowley, 234 F. Supp. 2d at 229 (dismissing claim that

"defendants imprudently continued to offer participants the ability to invest their plan funds in

[company] stock" because "the Board did not control investment options;" the "only power the

Board had under the Plan was to appoint, retain, or remove members of the Committee"); Rankin

v. Rots, 278 F. Supp. 2d 853, 872 (E.D. Mich. 2003) (defendant charged only with "appointing,

retaining, and removing members of a benefits committee" is not liable for investment

decisions).

    Nor does the Plan obligate the MS & Co. Board members to provide information to the

Investment Committee, as Plaintiffs have alleged (Compl. ¶¶ 310-12).  And as already noted,

under ERISA fiduciary liability is coextensive with discretionary authority.  See 29 U.S.C.

§ 1002(21)(A); Varity Corp. v. Howe, 516 U.S. 489, 498, 502 (1996); Flanigan v. Gen. Elec.

30

Co., 242 F.3d 78, 87 (2d Cir. 2001); Plumb v. Fluid Pump Serv., Inc., 124 F.3d 849, 854-55 (7th

Cir. 1997) (ERISA fiduciary "will not be held to be a fiduciary with respect to an activity unless

the plan documents show that [the fiduciary] was responsible for that activity"); Coleman v.

Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992) (same); Sommers Drug Stores Co.

Employee Profit Sharing Trust v. Corrigan Enters., Inc., 793 F.2d 1456, 1459-60 (5th Cir. 1986)

(fiduciary liability coextensive with authority or control allocated by plan).[9]

       Finally, because Plaintiffs have not stated any claim that the Investment Committee

members breached any duty, there can be no claim against the MS & Co. Board members for

failure to monitor.  See Pugh v. Tribune Co., 521 F.3d 686, 702 (7th Cir. 2008) (affirming

dismissal of duty-to-monitor claim because it was "premised on the first two rejected claims that

the appointed fiduciaries breached their duties"); Coca-Cola, 2007 WL 1810211, at *11 (because

investment in company stock was prudent, "there can be no cause of action for failure to monitor

conduct with respect to this investment").

      D.  The Investment Committee Defendants Are Not
          Fiduciaries with Respect to Any Claim

       As an initial matter, the responsibilities of the Investment Committee are limited to the

401(k) Plan, and they have no responsibilities with respect to the ESOP.  (See Wise Decl. Ex. A,

401(k) Plan § 8(b).)[10]  As to the 401(k) Plan, the responsibilities of the Investment Committee is

limited to selecting and monitoring the investment options other than the MSSF, which as

explained above is required to be offered to Plan participants.  The Investment Committee has no

---

[9] Indeed, at least one court has rejected the argument that a duty to monitor imparts a duty to disclose.  See In re Reliant Energy ERISA Litigation, 336 F. Supp. 2d 646, 658-59 (S.D. Tex. 2004) (dismissing disclosure claim).

[10] The ESOP directs that "Employer Contributions to the Plan shall be invested in shares of Company Stock" (Wise Decl. Ex. B, ESOP art. 4.01(a)), obviating any need for an investment committee, and indeed there is no mention of an investment committee in the ESOP document.

discretion that bears in any way on Plaintiffs' claim that the MSSF was not an appropriate investment option under the 401(k) Plan.  (See Wise Decl. Ex. A, 401(k) Plan §§ 8(b)(ii)(A), 19(a); Wise Decl. Ex. B, ESOP art. 12.01.)  And in any event, as shown above, Plaintiffs have not stated a claim that it was imprudent to permit 401(k) Plan participants to invest in the MSSF. See supra pp. 8-14.  Plaintiffs do not allege that the Investment Committee had any authority or responsibility to communicate with Plan participants that would make them fiduciaries with respect to the alleged failures to make complete disclosures to Plan participants.

CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Complaint be dismissed for failure to state a valid claim.  Given that Plaintiffs have already amended their Complaint and had ample opportunity to plead their claims, dismissal should be with prejudice.


Dated:   New York, New York
         September 26, 2008

                                        DAVIS POLK & WARDWELL


                                        By:   /s/ Robert F. Wise, Jr.
                                              _____
                                                   Robert F. Wise, Jr.

                                        Robert F. Wise, Jr.
                                        robert.wise@dpw.com
                                        Charles S. Duggan
                                        charles.duggan@dpw.com

                                        DAVIS POLK & WARDWELL
                                        450 Lexington Avenue
                                        New York, New York 10017
                                        Telephone: (212) 450-4000
                                        Facsimile: (212) 450-3800


                                        *Attorneys for Defendants*

33