<u>**Redacted for Public File**</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MORGAN STANLEY ERISA LITIGATION | ) Filed Under Seal<br>) Pursuant to Court Order<br>)<br>) MASTER FILE NO.: 07 Civ. 11285 |
| THIS DOCUMENT RELATES TO: | )<br>) |
| All Actions | ) |

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFFS' OPPOSITION TO
# <u>DEFENDANTS' MOTION TO DISMISS</u>

## TABLE OF CONTENTS

                                                                          Page

INTRODUCTION ....................................................................................1

STATEMENT OF FACTS ........................................................................3

ARGUMENT ...........................................................................................7

   I.      STANDARD IN DECIDING A MOTION TO DISMISS .....................7

   II.     THE COMPLAINT ADEQUATELY ALLEGES A BREACH OF THE
        FIDUCIARY DUTY OF PRUDENCE .................................................8

        A.     Defendants Cannot Override ERISA's Duties of Prudence Under
              the Guise of Settlor Intent ...................................................................9

        B.     The Presumption of Prudence Does Not Apply at the Motion to
              Dismiss Stage ....................................................................................10

        C.     Plaintiffs' Allegations Overcome the Presumption of Prudence ..............12

        D.     ERISA Section 404(c) Provides No Safe Harbor .....................................15

   III.    THE COMPLAINT ADEQUATELY ALLEGES A BREACH OF THE
        DUTY OF CANDOR ..........................................................................17

        A.     Defendants Failed to Disclose Material Information to Plan
              Participants ........................................................................................18

        B.     Material Omissions in Public Filings and Press Releases Are
              Actionable under ERISA ..................................................................21

   IV.    THE COMPLAINT PROPERLY ALLEGES A CLAIM FOR BREACH
        OF DUTY TO AVOID CONFLICTS OF INTEREST .........................24

   V.     THE COMPLAINT ADEQUATELY ALLEGES A CLAIM FOR
        FAILURE TO MONITOR....................................................................25

   VI.    THE COMPLAINT SUFFICIENTLY ALLEGES CO-FIDUCIARY
        LIABILITY...........................................................................................26

   VII.   THE COMPLAINT SUFFICIENTLY ALLEGES THE FIDUCIARY
        STATUS OF DEFENDANTS ..............................................................27

        A.     Standards for Determining Fiduciary Status Under ERISA .....................27

B.    The Complaint Sufficiently Alleges the Fiduciary Status of Defendants ................................................................................28

       1.    Morgan Stanley ................................................................29

       2.    MS&Co ............................................................................31

       3.    Morgan Stanley Director Defendants (John J. Mack) ...................32

       4.    MS&Co Director Defendants ........................................32

       5.    The Investment Committee ..........................................33

CONCLUSION ................................................................................34

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*In re ADC Telecomm.*,
  No. 03-2989, 2004 U.S. Dist LEXIS 14383 (D. Minn. July 26, 2004) ......................27

*In re AEP ERISA Litig.*,
  327 F. Supp. 2d 812 (S.D. Ohio 2004) ................................................................. passim

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 02-CV- 8853, 2005 U.S. Dist.
  LEXIS 3715 (S.D.N.Y. March 9, 2005) ....................................................................3, 8

*Adams v. Freedom Forge Corp.*,
  204 F.3d 475 (3d Cir. 2000)........................................................................................18

*Agway Inc. Employees' 401(k) Thrift Inv. Plan v. Magnuson*,
  No. 03-CV-1060, 2006 U.S. Dist. LEXIS 74670 (N.D.N.Y. July 13, 2006) ...... passim

*Allison v. Bank One-Denver*,
  289 F.3d 1223 (10th Cir. 2002) ..................................................................................16

*Alvidres v. Countrywide Fin. Corp.*,
  No. 07-CV-5810, 2008 U.S. Dist. LEXIS 27431 (C.D. Cal. March 18, 2008) .....13, 19

*American Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life
  Assurance Soc. of the U.S.*,
  841 F.2d 658 (5th Cir. 1988) ......................................................................................31

*Anweiler v. American Elec. Power Serv. Corp.*,
  3 F.3d 986 (7th Cir. 1993) ..........................................................................................18

*Beam v. HSBC Bank USA*,
  No. 02-CV-0682, 2003 U.S. Dist. LEXIS 15744 (W.D.N.Y. Aug. 19, 2003) ............33

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct 1955 (2007)....................................................................................................7

*Birmingham v. SoGen-Swiss Int'l Corp. Retirement Plan*,
  718 F.2d 515 (2d Cir. 1983)........................................................................................30

*Board of Trs. of the CSA/ITU Negotiated Pension Plan v. Weinstein*,
  107 F.3d 139 (2d Cir. 1997).........................................................................................19

*In re CMS Energy*,
    312 F. Supp. 2d 898 (E.D. Mich. 2004)..................................................................27

*In re Calpine Corp. ERISA Litig.*,
    No. 03-CV-1685, 2005 U.S. Dist. LEXIS 34452 (N.D. Cal. Dec. 5, 2005)...............19

*Cannon v. MBNA Corp.*,
    No. 05-429, 2007 U.S. Dist. LEXIS 48901 (D. Del. July 6, 2007) ......................21, 31

*In re Cardinal Health ERISA Litig.*,
    424 F. Supp. 2d 1002 (S.D. Ohio 2006) .............................................................13, 24

*In re Coca-Cola Enters. Inc. ERISA Litig.*,
    No. 06-CV-953, 2007 U.S. Dist. LEXIS 44991 (N.D. Ga. June 20, 2007)...........15, 31

*Cress v. Wilson*,
    No. 06-CV-2717, 2007 U.S. Dist. LEXIS 42632 (S.D.N.Y. June 7, 2007) ...............18

*Crowley v. Corning, Inc.*,
    No. 02-CV-6172, 2004 U.S. Dist. LEXIS 758 (W.D.N.Y. Jan. 14, 2004)...........10, 12

*Crowley v. Corning, Inc.*,
    234 F. Supp. 2d at 222 (W.D.N.Y. 2002) ..........................................................22, 31

*DiFelice v. U.S. Airways, Inc.*,
    497 F.3d 410 (4th Cir. 2007) ...............................................................................16

*In re Diebold ERISA Litig.*,
    No. 06-CV-170, 2008 U.S. Dist. LEXIS 42746 (N.D. Ohio May 28, 2008)...............21

*Donovan v. Bierwirth*,
    680 F.2d 263 (2d Cir. 1982)....................................................................................2

*Donovan v. Bierwirth*,
    754 F.2d 1049 (2d Cir. 1985)..................................................................................24

*Edgar v. Avaya*,
    503 F.3d 340 (3d Cir. 2007)..........................................................................12, 15, 19

*In re Elec. Data Sys. Corp. ERISA Litig.*,
    224 F.R.D. 613 (E.D. Tex.  2004)...........................................................................16

*In re Elec. Data Sys. ERISA Litig.*,
    305 F. Supp. 2d at 658 (E.D. Tex. 2004) ...............................................................21

*In re Enron Corp. Sec., Derivative, & ERISA Litig.,*
    284 F. Supp. 2d at 511 (S.D. Tex. 2003) .................................................... passim

*In re Ferro Corp. ERISA Litig.,*
    422 F. Supp. 2d 850 (N.D. Ohio 2006) ........................................................10

*In re First Am. Corp. ERISA Litig.,*
    No. 07-CV-01357, 2008 U.S. Dist. LEXIS 83832 (C.D. Cal. July 14, 2008)............21

*In re Ford Motor Co. ERISA Litig.,*
    No. 06-CV-11718, 2008 U.S. Dist. LEXIS 40719 (E.D. Mich. Mar. 31, 2008) .........13

*In re Fremont Gen. Corp. ERISA Litig.,*
    07-CV-02693, slip op. at 3 ...........................................................................13

*Gee v. UnumProvident Corp.,*
    No. 03-CV-147, 2005 U.S. Dist. LEXIS 3138 (E.D. Tenn. Jan. 12, 2005)................23

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.,*
    No. 83-CV-5401, 1997 U.S. Dist. LEXIS 7234 (S.D.N.Y. May 22, 1997) .................9

*Hecker v. Deere & Co.,*
    No. 07-3605 (7th Cir. April 2, 2008) ...........................................................17

*Hill v. BellSouth Corp.,*
    313 F. Supp. 2d 1361 (N.D. Ga. 2004) ........................................................24

*In re Honeywell Int'l ERISA Litig.,*
    No. 03-1214, 2004 U.S. Dist. LEXIS 21585 (D.N.J. Sept. 14, 2004) ...................25, 27

*In re JDS Uniphase Corp. ERISA Litig.,*
    No. 03-04743, 2005 U.S. Dist. LEXIS 17503 (N.D. Cal. July 13, 2005)..............21, 24

*James v. Pirelli Armstrong Tire Corp.,*
    305 F.3d 439 (6th Cir. 2002) .....................................................................18

*Kirschbaum v. Reliant Energy, Inc.,*
    526 F.3d 243 (5th Cir. 2008) ..........................................................10, 12, 15

*Kling v. Fidelity Mgmt. Trust Co.,*
    323 F. Supp. 2d 132 (D. Mass. 2004) ...........................................................31

*Koch v. Dwyer,*
    No. 98-CV-5519, 1999 U.S. Dist. LEXIS 11101 (S.D.N.Y. July 22, 1999) ................7

*Kuper v. Iovenko,*
    66 F.3d 1447 (6th Cir. 1995) ........................................................................12

*LaLonde v. Textron, Inc.,*
    270 F. Supp. 2d 272 (D.R.I. 2003)......................................................12, 28

*LaLonde v. Textron,*
    369 F.3d 1 (1st Cir. 2004).......................................................................12, 13

*Liss v. Smith,*
    991 F. Supp. 278 (S.D.N.Y. 1998) ..............................................................33

*Lively v. Dynegy Inc.,*
    420 F. Supp. 2d 949 (S.D. Ill. 2006)............................................................18

*Lowen v. Tower Asset Mgmt., Inc.,*
    829 F.2d 1209 (2d Cir. 1987).......................................................................30

*In re McKesson HBOC, Inc. ERISA Litig.,*
    391 F. Supp. 2d 812 (N.D. Cal. 2005).........................................................25

*McMahon v. McDowell,*
    794 F.2d 100 (3d Cir. 1986).........................................................................31

*Mellot v. ChoicePoint,*
    561 F. Supp. 2d 1305 (N.D. Ga. 2007) ........................................................15

*Merck & Co, Inc., Sec., Derivative & ERISA Litig.,*
    No. 05-CV-2369, 2006 U.S. Dist. LEXIS 53729 (D.N.J. July 11, 2006)...................11

*Mertens v. Hewitt Assoc.,*
    508 U.S. 248 (1993) .....................................................................................30

*Meyer v. Berkshire Life Ins. Co.,*
    250 F. Supp. 2d 544 (D. Md. 2003) .............................................................31

*Moench v. Robertson,*
    62 F.3d 553 (3d Cir. 1995)....................................................................12, 13

*National Football Scouting Inc. v. Continental Assurance Co.,*
    931 F.2d 646 (10th Cir. 1991) ......................................................................31

*Nelson v. IPALCO Enters., Inc.,*
    480 F. Supp. 2d 1061 (S.D. Ind. 2007) ........................................................11

*Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*,
  369 F.3d 27 (2d Cir. 2004)........................................................................7

*Pedraza v. Coca-Cola Co.*,
  456 F. Supp. 2d 1262 (N.D. Ga. 2006) ..................................................10

*In re Polaroid ERISA Litig.*,
  362 F. Supp. 2d 461 (S.D.N.Y. 2005)............................................ passim

*Rankin v. Rots*,
  278 F. Supp. 2d 853 (E.D. Mich. 2003).............................16, 17, 20, 28

*In re Reliant Energy ERISA Litig.*,
  336 F. Supp. 2d at 671 .....................................................................18, 23

*Resource Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*,
  42 F. Supp. 2d 423 (D. Del 1999).........................................................21

*In re Schering-Plough Corp. ERISA Litig.*,
  No. 03-1204, 2007 U.S. Dist. LEXIS 59708 (D.N.J. Aug. 15, 2007) ........................22

*Schied v. Dynegy*,
  309 F. Supp. 2d 861 (S.D. Tex. 2004)..................................21, 22, 25

*In re Sears, Roebuck & Co. ERISA Litig.*,
  No. 02-8324, 2004 U.S. Dist. LEXIS 3241 (N.D. Ill. Mar. 3, 2004)........................25

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) ................................................................19

*In re Sprint Corp ERISA Litig.*,
  388 F. Supp. 2d 1207 (D. Kan. 2004)............................................. passim

*Square D Co. v. Scott Elec. Co.*,
  No. 06-459, 2008 U.S. Dist. LEXIS 39974 (W.D. Pa. May 16, 2008) ......................21

*Stein v. Smith*,
  270 F. Supp. 2d 157 (D. Mass. 2003) ......................................................8

*Suez Equity Investors, L.P. v. Toronto Dominion Bank*,
  250 F.3d 87 (2d Cir. 2001).....................................................................30

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002)................................................................................7

*In re Syncor ERISA Litig.*,
516 ........................................................................................................... 13

*In re Unisys Sav. Plan Litig.*
74 F.3d 420 (3d Cir. 1996) ........................................................ 16, 17, 23

*Varity Corp. v. Howe*,
516 U.S. 489 (1996) .................................................................................. 18

*In re Westar Energy, Inc.*,
No. 03-CV-4032, 2005 U.S. Dist. LEXIS 28585 (D. Kan. Sept. 29, 2005) ............... 10

*Woods v. S. Co.*,
396 F. Supp. 2d 1351 (N.D. Ga. 2005) ......................................... 20, 24, 25

*In re WorldCom*,
354 F. Supp. 2d 443 (S.D.N.Y 2005) ........................................................ 33

*In re WorldCom, Inc., ERISA Litig.*,
263 F. Supp. 2d 745 (S.D.N.Y. 2003) ................................................ passim

*Wright v. Oregon Metallurgical Corp.*,
360 F.3d 1090 (9th Cir. 2004) ........................................................... 15, 31

*Wynder v. McMahon*,
360 F.3d 73 (2d Cir. 2004) ........................................................................ 7

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 312 F. Supp. 2d 1165
(D. Minn. 2004) ......................................................................... 16, 18, 20

*In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206 (D. Conn. 2007) ............... 21, 22, 31

## FEDERAL STATUTES

29 C.F.R. § 2509.75-8 ................................................................................ 26

29 C.F.R. 2550.404c-1 ............................................................................... 17

29 U.S.C. § 1104(a)(1)(D) ........................................................................... 9

29 U.S.C. § 1002(16) ................................................................................. 28

29 U.S.C. § 1002 (21) ................................................................................ 28

29 U.S.C. § 1102(a)(1) ............................................................................... 28

29 U.S.C. § 1105(a) ...................................................................................................27 33

29 U.S.C. § 1104(a) .........................................................................................................2

Fed. R. Civ. P. 8(a) .........................................................................................................7

Fed. R. Civ. P. 9(b) .......................................................................................................20

Fed. R. Civ. P. 12(b)(6)...................................................................................................1

57 Fed. Reg. 46,906, 46,922 (Oct. 13, 1992)................................................................16

Plaintiffs respectfully submit this memorandum of law in opposition to Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint brought under Fed. R. Civ. P. 12(b)(6).[1]

## INTRODUCTION

The Morgan Stanley 401(k) Plan (the "401(k) Plan") and the Morgan Stanley Employee Stock Ownership Plan (the "ESOP") (collectively, the "Plans") are inter-related retirement plans operated and established by Morgan Stanley ("Morgan Stanley" or the "Company") as a benefit for its employees to permit tax-advantaged savings for retirement and other long-term goals. Morgan Stanley is the sponsor of the ESOP, while Morgan Stanley & Co., Incorporated ("MS&Co"), a wholly-owned subsidiary of Morgan Stanley, is the sponsor of the 401(k) Plan.

Throughout the Class Period (August 9, 2006 to present),[2] one of the investment options in the 401(k) Plan was a fund consisting exclusively of Morgan Stanley common stock ("Company Stock"). In addition, throughout the Class Period, the Company funded all yearly Matching and Profit Sharing Contributions (hereinafter "Employer Contributions") *exclusively* in Company Stock. At or near the beginning of the Class Period, the Plans held approximately *$4 billion* in Company Stock out of approximately $7 billion in total assets.

Plaintiffs and member of the proposed class are current or former employees of Morgan Stanley who participate in the Plans through their employment with Morgan Stanley. The

---

[1] "Complaint" or "¶ ___" refers to the Consolidated Amended Class Action Complaint for Violations of ERISA. Defendants' Memorandum of Law in Support of Defendant's Motion to Dismiss is referenced herein as "Def. Mem."

[2] Defendants incorrectly assume that the Class Period closed with the filing of the Complaint on July 25, 2008. Def. Mem. at 1. However, the Complaint alleges that the Class Period continues through the present.

Complaint alleges that the conduct of Defendants[3] violated the fiduciary duties they owed to the Plans and the Plans' participants under the Employee Retirement Income Security Act of 1974 ("ERISA"), § 404(a) and 405(a), 29 U.S.C. § 1104(a) and § 1105(a).

The Complaint alleges in detail that Defendants knew, or should have known, throughout the Class Period that Morgan Stanley was encountering enormous credit problems as a result of, *inter alia*, its significant involvement in Collateralized Debt Obligations ("CDOs") and credit default swaps ("CDSs"), its exposure to the subprime lending market, and its lack of adequate internal controls and risk management systems to cope with these issues. ¶¶ 86-262. As a consequence, Company Stock was exceedingly risky, and because the Company's serious problems were not adequately or completely disclosed to the market, the Company's stock price was artificially inflated.

However, instead of protecting the Plans and the Plans' participants from exposure to Company Stock, as they were called upon to do under ERISA,[4] Defendants: (1) continued to offer Company Stock as an investment option for participant-directed contributions to the 401(k) Plan; (2) continued to fund all yearly Employer Contributions with Company Stock; and (3) maintained complete restrictions on the transfer of Company Stock attributable to Employer

---

[3] As alleged in the Complaint (¶¶ 39-54), and as discussed below, each of the Defendants named in the Complaint is alleged to have been a fiduciary of the 401(k) Plan and/or the ESOP. Defendants are Morgan Stanley; MS&Co; Morgan Stanley's Global Director of Human Resources; the Morgan Stanley Board of Directors; the MS&Co Board of Directors; and the Investment Committee of the Plans. ¶ 32-37. The Morgan Stanley Director Defendants are defined in the Complaint as John Mack and O. Griffin Sexton (¶ 31), but Mr. Sexton has recently been voluntarily dismissed from the case without prejudice. *See* Docket No. 48. Therefore, Mr. Mack is the only member of the Morgan Stanley Board who now is a Morgan Stanley Director Defendant.

[4] A fiduciary must discharge his duties with respect to a retirement plan "with an eye single to the interests of the participants and beneficiaries," and has duties to plan participants and beneficiaries that are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 271, 272 n.8 (2d Cir. 1982). Congress intended these duties owed by a fiduciary to a plan's participants and beneficiaries to be broadly and liberally construed. *See Agway Inc. Employees' 401(k) Thrift Inv. Plan v. Magnuson*, No. 03-CV-1060, 2006 U.S. Dist. LEXIS 74670 at *10 (N.D.N.Y. July 13, 2006).

Contributions until January 1, 2007.[5]  Meanwhile, the Plans' $4 billion investment in Company

Stock declined to approximately $2.2 billion by the end of 2007.  That value has continued to

decline significantly and cause massive losses to the Plans, as the Company Stock price has

fallen from $50 per share at the end of 2007 to approximately $9 per share today.

Construing all the allegations in the Complaint as true -- allegations that state a claim to

relief that is plausible on its face -- Defendants' motion to dismiss must be denied.[6]

## STATEMENT OF FACTS

As set forth in the detailed allegations of the Complaint, in the years leading up to the

precipitous decline in the value of its stock, Morgan Stanley, following the vision of Defendant

Mack, elected to expose the Company's capital to risky and complex investment vehicles,

including credit-backed assets such as mortgage-backed securities.  ¶¶ 86-92.  Morgan Stanley's

aggressive and risky business strategy, as crafted and executed by Defendant Mack, coupled with

inadequate internal controls necessary to manage its massive exposures to risk, culminated in

disaster, resulting in the Company's stock falling over 90% from a high of  $90.95 per share in

June 2007, to approximately $9 per share at the time of this filing.

On August 9, 2006, the first day of the proposed Class Period, in furtherance of

Defendant Mack's determination to take more risk with the Company's capital, the Company

announced the signing of a definitive merger agreement with Saxon Capital, Inc., a company that

---

[5]  Transfer restrictions on Employer Contributions were loosened only on January 1, 2007, when participants over 55 with three years of service were permitted to fully transfer such holdings and participants under age 55 with three years of service were permitted to transfer such holdings according to a specified schedule.  Therefore, through much of the Class Period, participants in the Plans were locked into a substantial amount of their Company Stock in these holdings.  ¶¶ 74-75.

[6]  The vast majority of District courts have refused to dismiss, at the pleading stage, cases brought under ERISA concerning the appropriate use of company stock in retirement plans.  Recent cases in the Second Circuit include: *Agway,* 2006 U.S. Dist. LEXIS 74670; *In re AOL Time Warner, Inc. Sec. & ERISA Litig.,* 02-CV-8853, 2005 U.S. Dist. LEXIS 3715 (S.D.N.Y. March 9, 2005); *In re Polaroid ERISA Litig.,* 362 F. Supp. 2d 461 (S.D.N.Y. 2005); *In re WorldCom, Inc., ERISA Litig.,* 263 F. Supp. 2d 745 (S.D.N.Y. 2003).

services and originates residential mortgages. ¶ 108.  Not only did this acquisition provide the Company with millions in servicing and securitization income in the first half of 2007, it also, more importantly, provided the Company with first-hand knowledge of the deterioration, risks and fraudulent practices of the subprime lending market in which it was heavily engaged. ¶¶ 110-119.  Specifically, the Company created a trading desk that used CDOs and CDSs to hedge against low quality subprime mortgages.  ¶¶ 120-121.  Despite the public assurances of Defendant Zoe Cruz (one of the MS&Co Board of Directors Defendants) that "the firm is demonstrating better risk management" and Defendant Mack's description of the Company's "effective, disciplined, risk-taking" (¶ 155), Defendants knew or should have known that the Company lacked the information technology systems and internal controls necessary to assess and properly report the Company's risk associated with its subprime exposure. ¶ 91.

Ignoring repeated and credible warnings that the subprime market was volatile, deteriorating and risky, the Company made assurance throughout the Class Period that its "effective, disciplined risk taking" insulated it from the negative effects being experienced at other institutions.  ¶¶ 153, 155, 159, 162, 185, 189, 199, 202, 204.  Even after certain Company executives voiced concern over its exposure to the mortgage market, the Company continued to invest in complex and risky mortgage backed securities.  ¶¶ 161, 186.  Significantly, the Company also to make reassurances that it had sufficient internal controls to manage its risk, and a bright future.  ¶¶ 156, 158, 170, 227.

Unbeknownst the Plans' participants, nothing could have been further from the truth. The Legal Entity and Accounting Disclosure Group, which was responsible for the Company's financial reporting, was staffed with individuals unqualified to conduct accounting work relating to its derivative products, *i.e.*, equity linked notes, CDSs, and CDOs.  ¶¶ 146-148, 171.  The

Company's IT systems, critical to its ability to properly account for its complex financial products and their associated risk, were outdated and caused the Company to lose track of hundreds of millions of dollars. ¶¶ 149, 174. As a result of these and other accounting related deficiencies, the Company knew, and indeed each Defendant knew or should have known, as early as August 2007, that it would be necessary to take multi-billion dollar writedowns as a result of its derivatives exposure, with Defendant Cruz going so far as to tell clients to "head for the exits." ¶¶ 161, 178-188. Despite this awareness, the Company and other Defendants failed to properly disclose this information. Rather, when commenting on the Company's results for the third quarter of 2007, Defendant Mack merely reported that the Company was being affected by a "turbulent market." ¶ 191. In fact, at that time, the Company took $1.2 billion in writedowns related to its subprime exposure (with billions more to follow). ¶ 197.

Even after the initial writedowns, the Company continued its pattern of denial, encouraging employees to remain "tightlipped" about future writedowns. ¶ 205. On November 7, 2007, the Company announced that it would be taking another $3.7 billion in writedowns, the biggest piece of which came from a CDO position going from $11.4 billion to $8.3 billion, again pointing to market forces. ¶¶ 207-08. On December 19, 2007, the Company reported an additional $5.7 billion of writedowns related to mortgages, for a total of $9.4 billion. ¶ 218. Remarkably, in a conference call held to discuss these additional writedowns, Defendant Mack continued to tout the Company's risk management capabilities. ¶ 219. Moreover, despite his awareness of the Company's internal control problems, Defendant Mack stated that the Company had been "as transparent as possible about [its] exposure." *Id.* In furtherance of the Company's attempt to conceal its true risk exposure, the Company's 2007 Annual Report continued to make reassurances concerning the adequacy of its internal controls, its ability to

properly manage risk, accurate accounting valuations, and the competency of its personnel. ¶¶ 227–38.

As 2008 began, the Company continued to downplay the severity of the 2007 results, saying that the losses were "the result of an error in judgment by a small team. . . ." ¶ 242. However, the Company reported losses of $1.1 billion in its lending business in the first quarter of 2008 and $1.182 billion of losses attributable to mortgage, credit and asset management related activities in the second quarter. ¶¶ 245, 249.

While all of these events were occurring, the price of Company Stock declined from over $85 per share in early 2007, to $36.75 per share on July 25, 2008, causing a massive decline in the value of the Plans that were heavily and continuously investing in Company Stock. Plaintiffs filed the operative amended Complaint on that date.

### Developments Following the Filing the Complaint

The question of the Company's viability as a going concern has continued to date. Since the filing of the Complaint, the Company and its stock price have continued to deteriorate. In the third quarter of 2008, the Company reported $1.3 billion in losses attributable to loan commitments and mortgages. On September 16, 2008, in a conference call discussing its third quarter results, Colm Kelleher, the Company's CFO, stated, "[o]bviously in some areas we find that hedges are not effective and we manage the risk appropriately more often that not by selling the exposure." In fact, nearly one month earlier, the Company announced that it would have to repurchase approximately $4.5 billion of securities between September 30 and November 30 of 2008. By early October, Company Stock had traded as low as $7 per share.

Recently, the Company requested that its status be changed from an investment bank to a bank holding company, an indication to the market that it is not capable of survival as the risky financial institution it aspired to become. Also, the Company had entered into an agreement with

Mitsubishi UFJ Financial Group ("MUFG"), whereby MUFG infused $9 billion of capital into the Company. Although these steps seemingly provided the Company with new-found stability, the price of Company Stock has continued to decline, falling to $9.20 per share as of November 20, 2008, and the market continues to articulate concerns over the ultimate benefits of both of these decisions.

**ARGUMENT**

## I.    STANDARD IN DECIDING A MOTION TO DISMISS

In order to withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct 1955, 1974 (2007). When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true, and draw all reasonable inferences in plaintiff's favor. *See Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 31 (2d Cir. 2004) (citation omitted).

Fed. R. Civ. P. 8(a), which provides that a complaint must include only "a short and plain statement of the claim entitling plaintiff to relief," is the applicable standard for pleading an ERISA claim. *Polaroid*, 362 F. Supp. 2d at 470; *Agway*, 2006 U.S. Dist. LEXIS 74670. Such a statement must simply "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citation omitted); *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004).

Moreover, in the specific context of an ERISA claim, whether a fiduciary duty has been breached involves a highly fact-intensive analysis and is therefore rarely if ever decided on a motion to dismiss. *See, e.g., Koch v. Dwyer*, 98-CV-5519, 1999 U.S. Dist. LEXIS 11101, at *31 (S.D.N.Y. July 22, 1999) ("What [the fiduciary] knew about the prudence of the investment in question" is a factual question inappropriate for resolution on a motion to dismiss.) *Stein v.*

7

*Smith*, 270 F. Supp. 2d 157, 167 (D. Mass. 2003) (whether stock offered as investment option was inappropriate cannot be determined on a motion to dismiss).

## II. THE COMPLAINT ADEQUATELY ALLEGES A BREACH OF THE FIDUCIARY DUTY OF PRUDENCE

Under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), a fiduciary must discharge his duties "solely in the interest of the participants and beneficiaries" and must act "with the care, skill, prudence, and diligence under the circumstance then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." These duties are commonly referred to as the "duty of loyalty" and the "duty of prudence." The prudence standard is an objective one, and good faith is not a viable defense. *In re Enron Corp. Sec., Derivative, & ERISA Litig.*, 284 F. Supp. 2d at 511, 548 (S.D. Tex. 2003).

The Complaint alleges that Defendants knew or should have known of facts concerning the Company that should have caused them to investigate the prudence of continued investment of the Plans' assets in Company Stock, but that instead, while the value of Company Stock collapsed, they (1) continued to offer Company Stock as an investment option for participant-directed contributions to the 401(k) Plan; (2) continued to fund the ESOP yearly with Employer Contributions with Company Stock; and (3) maintained almost complete restrictions for much of the Class Period on the transfer of Company Stock attributable to Employer Contributions. ¶¶ 86-269, ¶¶ 280-86. These allegations are more than sufficient to support a claim for breach of the duty of prudence under ERISA Section 404(a)(1)(B). *See, e.g., Agway*, 2006 U.S. Dist. LEXIS 74670 at *60-61; *AOL*, 2005 U.S. Dist. LEXIS 3715; *Polaroid*, 362 F. Supp. 2d at 475-76; *WorldCom*, 263 F. Supp. 2d 745. In any event, whether or not Defendants have breached their fiduciary duty to act prudently requires development of the facts through discovery and is therefore, inappropriate for resolution on a motion to dismiss. *See, e.g., Polaroid* at 475

("whether a Plaintiff has overcome the presumption of prudence is an evidentiary determination that is ill-suited to resolution on a motion to dismiss.")

### A.   Defendants Cannot Override ERISA's Duties of Prudence Under the Guise of Settlor Intent

Defendants argue that they cannot be held liable for continuing to offer Company Stock as an investment option in the 401(k) Plan, or for continuing to fund Employer Contributions in the ESOP in the form of Company Stock, because they had "no discretion" to do otherwise.  Def. Mem. at 9-10.  However, it is well-established that a plan fiduciary is bound to adhere to plan documents only to the extent such adherence complies with the fiduciary duties imposed by ERISA.  *See* 29 U.S.C. § 1104(a)(1)(D) (fiduciaries must perform duties "in accordance with the documents and instruments governing the plan *insofar as such documents and instruments are consistent with the provisions of this Title [I] and Title IV*") (emphasis added).  "ERISA commands fiduciaries to obey Plan documents only to the extent they are consistent with other fiduciary duties. . . [T]he fact that the Plan required investments in [Company] stock does not *ipso facto* relieve [defendants] of their fiduciary obligations.'" (internal citations omitted)).  *Polaroid*, 362 F. Supp. 2d at 473-74.  *See also Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 83-CV-5401, 1997 U.S. Dist. LEXIS 7234, at *4 (S.D.N.Y. May 22, 1997) ("An ERISA fiduciary cannot 'hide' behind the terms of a contract to insulate itself from liability for breaching its fiduciary duty.").

Here, Plaintiffs have alleged that Defendants permitted Company Stock as an investment option in the 401(k) Plan, and invested Employer Contributions in the form of Company Stock in the ESOP, at a time when Morgan Stanley was extremely vulnerable due to its undisclosed risky investments, and its stock price was inflated and almost certain to decline.  *E.g.*, ¶¶ 5, 121-130. Under these circumstances, deviation from the terms of 401(k) Plan and the ESOP was required

under ERISA.[7]

**B.      The Presumption of Prudence Does Not Apply at the Motion to Dismiss Stage**

Defendants argue that the Court should require Plaintiffs to overcome an evidentiary presumption at the pleading stage that they acted prudently with respect to investment of Company Stock in the Plans.  Def. Mem. at 10-13.  However, the Second Circuit has never adopted such a presumption, at the pleading stage, or even at a later stage in the litigation.

District courts in the Second Circuit and elsewhere have viewed the presumption of prudence inappropriate for resolution on a motion to dismiss.  *See, e.g., Agway*, 2006 U.S. Dist. LEXIS 74670, at *73 ("[I]n light of the complexity of the issues involved and the uncertainty surrounding the intersection between the requirements of a plan to invest in a company's stock and securities and the duty owed under ERISA by plan fiduciaries, disposition of such claims on a motion to dismiss pursuant to Rule 12(b)(6), without the benefit of a more fully developed record, is generally not appropriate or desirable.").[8]

---

[7]  None of the cases cited by Defendants (Def. Mem. at 9) supports a rule that strict adherence to the terms of a retirement plan shields plan fiduciaries from liability under ERISA.  Indeed, each of those cases held that fiduciaries could be liable for fiduciary breaches under ERISA, notwithstanding the requirement that they invest plan assets in Company Stock.  In *Crowley v. Corning, Inc.*, No. 02 Civ. 6172, 2004 U.S. Dist. LEXIS 758 (W.D.N.Y. Jan. 14, 2004), the court held that the ERISA claim would have survived if the plaintiffs had pled that the defendants abused their discretion in investing in employer stock.  *Id.* at 12-13.  However, here, Plaintiffs allege such an abuse of discretion.  *See* supra pages 12-14.  In *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 255 (5th Cir. 2008), the Court did not reach the issue of how it would rule in the face of a plan with a requirement, merely holding on a motion for *summary judgment* that the plaintiffs did not sufficiently rebut a presumption that the defendants' investments were prudent.  In *Pedraza v. Coca-Cola Co.*, 456 F. Supp. 2d 1262, 1275-76 (N.D. Ga. 2006), the court found that the allegations of the complaint did not overcome a presumption that the fiduciaries had acted prudently when following the terms of a plan.  As noted above, even if such a presumption applied in this case -- which it should not -- Plaintiffs have alleged sufficient allegations to overcome the presumption.

[8]  *See also Enron*, 284 F. Supp. 2d at 534 n.3 ("[a] determination as to whether an ESOP fiduciary breached its fiduciary duty should not be made on a motion to dismiss, but only after discovery develops a factual record."); *In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850, 860 (N.D. Ohio 2006) ("The Court has serious doubts as to whether it is appropriate to evaluate the *Moench* presumption [on motion to dismiss for failure plead claims]"); *In re Westar Energy, Inc.*, No. 03-CV-4032, 2005 U.S. Dist. LEXIS 28585, at *72 (D. Kan. Sept. 29, 2005) ("Moreover, the Court is not persuaded that the presumption should be applied at this, the motion to dismiss stage of the proceeding."); *In re Sprint Corp  ERISA Litig.*, 388 F. Supp. 2d 1207, 1225 (D. Kan. 2004)(same).

Moreover, even the minority of courts that have examined the presumption at the pleading stage have specifically limited it to instances where fiduciaries were *strictly* bound by the plan to invest in company stock. *See, e.g. Merck & Co, Inc., Sec., Derivative & ERISA Litig.*, No. 05-CV-2369, 2006 U.S. Dist. LEXIS 53729, at *23 (D.N.J. July 11, 2006); *Nelson v. IPALCO Enters., Inc.*, 480 F. Supp. 2d 1061, 1098 (S.D. Ind. 2007). Here, while the 401(k) Plan required that one of the investments offered to participants be Company Stock (*see* Wise Decl. Ex. A, 401(k) Plan §8(b)(i)), it also expressly allowed Company Stock in the 401(k) Plan to be invested and reinvested temporarily in "interest-bearing short term investments" with no restriction on how long funds may be maintained in such investments. *See* Wise Decl. Ex. A, 401(k) Plan § 8(b)(ii)(A).

In addition, while the ESOP states that "Employer Contributions to the ESOP shall be invested in shares of Company Stock" (*see* Wise Decl. Ex. B, ESOP §§ 4.01(a)), section 7.04(d)(i) of the ESOP expressly overrides Article 4.01(a) and provides as follows:

> ***The Plan Administrator shall adopt such rules, restrictions, and procedures as it deems advisable with respect to all matters relating to the election and use of Company Stock.*** The Plan Administrator shall have the right, without prior notice to any Participant, to suspend transfers into or out of Company Stock, to delay effecting transfers or our out of Company Stock, or to limit the frequency or amount of transfers into our out of Company Stock, if the Plan Administrator determines that such action is necessary or advisable, including without limitation: ***(1) in light of unusual market conditions...***

Moreover, section 6(f) of the 401(k) Plan provides that Employer Contributions "*shall be made in the form of cash*" unless MS&Co determines to make such contributions in the form of Company Stock. *See* Wise Decl. Ex. A, 401(k) Plan § 6(f); Ex. C, Summary Plan Description at 6 (noting that matching contributions may initially be made in cash).

# REDACTED

REDACTED

Thus, a presumption of prudence should not be extended under the circumstances in this case, particularly on the pleadings.[9]

### C.    Plaintiffs' Allegations Overcome the Presumption of Prudence

Even if the Court were to decide that the presumption of prudence should apply at the pleading stage, Plaintiffs' allegations are sufficient to overcome the presumption, particularly in light of the fact that, as discussed above, the Plans provided the fiduciaries with the means to protect the Plans from investment in Company Stock.

Citing *Moench*, 62 F.3d at 571 and other authorities, Defendants argue that "mere price fluctuations" cannot overcome the presumption of prudence. Def. Mem. at 10-12.[10] Defendants' standard is incorrect. In *Moench*, the Third Circuit recognized that a fiduciary's knowledge of impending collapse, coupled with its conflicted status, can constitute an abuse of discretion. *Moench*, 62 F.3d at 571-21. While *Moench* involved a company that was, in fact, on the brink of

---

[9] The cases cited by Defendants in support of the application of a presumption of prudence at the pleading stage (Def. Mem. at 10) are inapposite or not persuasive. In *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995) and *Kirschbaum*, 526 F.3d at 254-56, the presumption was applied *only on summary judgment*, and in *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995), the presumption was applied *only at trial*. While the presumption has been applied at the motion to dismiss stage in *Edgar v. Avaya*, 503 F.3d 340 (3d Cir. 2007) and some other cases, as discussed above the Second Circuit has not ruled on the issue and no clear consensus has thus far emerged in the case law. In *LaLonde v. Textron*, 369 F.3d 1, 6 (1st Cir. 2004), the First Circuit noted this lack of consensus and stated that "[b]ecause the important and complex area of law implicated by plaintiffs' claims is neither mature nor uniform, we …would run a very high risk of error if we were to lay down a hard-and-fast rule." While Defendants cite three decisions from district courts in the Second Circuit, the are anavailing, In *Worldcom*, 263 F. Supp. 2d 745, the court considered but did *not* apply the presumption. In *Crowley*, 2004 U.S. Dist. LEXIS 758, the Court relies heavily on a decision that was later overturned. *See LaLonde*, 369 F.3d 1, overturning *LaLonde v. Textron, Inc.*, 270 F. Supp. 2d 272 (D.R.I. 2003). *Polaroid*, 362 F. Supp. 2d at 475, is simply contrary to the numerous cases cited above, and notably the *Polaroid* court determined that the presumption was overcome by the pleadings.

[10] *Moench* involved a suit by a plan participant against an ESOP committee for breach of fiduciary duty based on the committee's decision to invest solely in employer stock during a period in which the employer's financial condition deteriorated. *Moench*, 62 F.3d at 558-59. The Court found that the factors the plaintiff alleged (precipitous drop in stock prices, committee members' knowledge of the impending collapse, and their conflicted loyalties as corporate insiders and fiduciaries), if proven, could overcome the presumption. *Id.* at 571-72. In reversing the grant of summary judgment for defendants, the court emphasized the paramount importance of "vigorously enforcing standards of fiduciary responsibility." *Id.* at 569.

12

collapse, *id.* at 557, nowhere in the opinion does the Third Circuit limit its holding to companies facing such dire circumstances. Indeed, a plaintiff can overcome the presumption of prudence that attaches to investment in employer stock by showing, *inter alia*, that "an adequate investigation would have revealed to a reasonable fiduciary that investment [in employer stock] . . . was improvident." *Polaroid*, 362 F. Supp. 2d at 475 (citing cases).

Alternatively, courts have held that the presumption can be overcome by a showing that the fiduciaries continued to invest in employer stock when they knew or should have known that the stock had become exceedingly risky or artificially inflated. *See, e.g., In re Syncor ERISA Litig.*, 516. F.3d 1095, 1102 (9th Cir. 2008) (artificial inflation sufficient to overcome presumption of evidence); *Lalonde*, 369 F.3d at 6 (same); *In re Fremont Gen. Corp. ERISA Litig.,* 07-CV-02693, slip op. at 3 (C.D. Cal. May 29, 2008) (finding allegations of serious mismanagement in light of numerous problems and red flags at the company sufficient to demonstrate imprudence); *Alvidres v. Countrywide Fin. Corp.*, 07-CV-05810, 2008 U.S. Dist. LEXIS 27431, at *4 (C.D. Cal. Mar. 18, 2008) (holding allegations of serious mismanagement as well as stock fluctuation sufficient to demonstrate imprudence) *In re Ford Motor Co. ERISA Litig.*, No. 06-CV-11718, 2008 U.S. Dist. LEXIS 40719, at *49 (E.D. Mich. Mar. 31, 2008); (holding that there are many ways to demonstrate imprudence, including showing "that the stock has become excessively risky as a result of massive mismanagement"); *In re Cardinal Health ERISA Litig.*, 424 F. Supp. 2d at 1002 (S.D. Ohio 2006) (holding that an ERISA fiduciary could be found imprudent where fiduciaries "knew, or had reason to know that [the company] faced troubles that were certain to cause a decline in the value of its stock"); *Sprint*, 388 F. Supp. 2d at 1224-1225 (noting that "impending collapse" in *Moench* refers to collapse of stock price, not company itself).

Here, even if the presumption of prudence is applied on the pleadings (which it should

not be), Plaintiffs have alleged more than sufficient facts to overcome it.  The Complaint alleges,

among other things, that the Plans' massive investment in Company Stock subjected the Plans'

participants to a remarkably unacceptable level of risk due to the downward trend of the

Company's stock price, serious mismanagement and risky business conduct, including the

following:

- $9.4 billion in writedowns related to its CDO and subprime exposure (¶¶ 206-19);
- Defendants' conflicted status, which contributed to the Plans' participants bearing an unacceptable level of risk (¶¶ 271-74);
- The gross mismanagement relating to Morgan Stanley's CDO and subprime securities evidenced by, among other things:  (a) the acquisition of Saxon Capital, Inc. for $706 million, which engaged in deceptive and illegal practices such as: (1) over-inflating home appraisals, (2) falsifying loan documentation, (3) underwriting loans that did not meet Freddie Mac of Fannie Mae guidelines, (4) failing to verify stated incomes and assets on loan applications, (5) strong-arming customers into loans they could not afford and did not understand and (6) engaging in straw-man buying schemes, foreclosure schemes and identity theft (¶¶ 111-21);
- The aggressive growth of its subprime loan and CDO portfolio and CDO hedging strategy, even after credit markets seriously deteriorated and the subprime crisis intensified (¶¶ 153-71);
- The complete failure to operate and implement the internal controls necessary for its  extensive participation in the credit derivatives market (¶¶ 131-133, 146-150, 171-182), including its failure to acknowledge, manage and accurately disclose the risks associated with that participation (¶¶ 91-95, 122-125, 131-145, 163, 168-190); this lack of internal controls was a violationof the Rules of the Financial Accounting Standards Board ("FASB") (¶¶ 131-145);
- The failure to properly disclose that much of its financial valuation personnel was unqualified to manage the valuation of the Company's securities and that the Company's valuations systems and models were not capable of valuing its securities (¶¶ 228-242);
- Downgrades by credit agencies (¶¶ 221-222); and
- Public speculation that because of its credit exposure the Company might have to file for bankruptcy (*supra* page 7);
- The precipitous decline of Company Stock by nearly 90% (*supra* page 3).  This argument negates Defendants' "price fluctuation" argument because the

uninterrupted decline of the price of Company Stock during the Class Period
stretches beyond the breaking point of the definition of "fluctuation."

Moreover, recent news reports regarding Morgan Stanley since the filing of the

Complaint further bolster Plaintiffs' case against Defendants, that to a reasonable fiduciary,

Company Stock was an imprudent investment for the Plans.  For example, Morgan Stanley's

status was changed from an investment bank to a bank holding company, giving it more access

to loans from the Federal Reserve, after its stock declined to as low as $7 per share amidst

speculation that the Company might cease to exist.  The Company's poor condition necessitated

that it enter into an agreement with MUFG to enable it to receive a massive capital infusion of $9

billion. [11]  The Company has also had to layoff thousands of employees.  Thus, even if the Court

applies the Defendants' presumption of prudence standard as proposed by Defendants, which it

should not, Plaintiffs have pled facts sufficient to overcome it.

### D.      ERISA Section 404(c) Provides No Safe Harbor

Defendants assert that the fiduciaries are absolved of liability for breaching their

fiduciary duty of prudence under ERISA § 404(c), which provides a limited exception to a

fiduciary's liability where a participant has been deemed to have exercised full control over

investment decisions.  Def. Mem. at 13-14.  However, for several reasons Defendants cannot

---

[11]  The cases cited by Defendants (Def. Mem. at 10-12) are of no help to them because they were either decided on
summary judgment or the weakness of the allegations were in sharp contrast to the allegations here.  For example,
*Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004), involved a claim for the breach of the duty to
diversify, not investment in company stock, serious mismanagement, company-wide risk, or artificial inflation of the
company's stock price.  In *Kirschbaum*, 526 F.3d at 255, the complaint was insufficient to overcome the
presumption where there was no indication that the company's viability as a going concern was ever threatened, and
*Kirschbaum* was decided on summary judgment after the development of a full factual record.  In *In re Coca-Cola
Enters. Inc. ERISA Litig.*, No. 06-CV-953, 2007 U.S. Dist. LEXIS 44991, at **19-33 (N.D. Ga. June 20, 2007),
plaintiffs' imprudence theory primarily rested on allegations of channel stuffing, which was not sufficiently
supported by the complaint.  In *Mellot v. ChoicePoint*, 561 F. Supp. 2d 1305, 1315 (N.D. Ga. 2007), the court
merely held that a 17% stock drop over a three week period did not require discontinuation of company stock as an
investment option.  In *Avaya*, 503 F.3d at 348-49, the stock dropped only slightly ($2.68/share) as a result of
"corporate developments that were likely to have a negative effect on the company's earnings" but then fully
recovered.

avail themselves of the protection of ERISA § 404(c).

First, to the extent that § 404(c) applies at all, it is an affirmative defense and therefore, cannot be considered on a motion to dismiss. *See Allison v. Bank One-Denver*, 289 F.3d 1223, 1238 (10th Cir. 2002); *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 447(3d Cir. 1996); *Enron*, 284 F. Supp. 2d at 578; *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 312 F. Supp. 2d 1165, 1183 (D. Minn. 2004); *Rankin v. Rots*, 278 F. Supp. 2d 853, 872 (E.D. Mich. 2003); *Sprint*, 338 F. Supp. 2d at 1234-35.

Second, the § 404(c) defense would not apply -- at any stage in these proceedings -- to Company Stock invested in the Plans through Employer Contributions, since it is indisputable that those investments were made by the Company *without any input whatsoever from participants.* ¶ 76. That certain participants (as of early 2007) were able to slowly transfer those holdings *after the initial investment in Company Stock had been made by the Company* (¶¶ 74-75) hardly negates this point.

Third, § 404(c) does not apply to "the act of designating investment alternatives." Final Regulation Regarding Participant Directed Individual Account Plans (ERISA § 404(c)) Plans, 57 Fed. Reg. 46,906, 46,922 (Oct. 13, 1992) (29 C.F.R. at 2550). Therefore, Defendants' decisions regarding whether to offer Company Stock as an investment alternative are not protected by § 404(c). *See DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 n.3 (4th Cir. 2007); *Enron*, 284 F. Supp. 2d at 511; *In re Elec. Data Sys. Corp. ERISA Litig.*, 224 F.R.D. 613, 625 (E.D. Tex. 2004).[12]

Finally, § 404(c) applies only if fiduciaries provide plan participants with complete and

---

[12] *See also* Amended Brief of the Secretary of Labor, Elaine L. Chao, As Amicus Curiae In Support of Plaintiffs' Appellants at 11, *Hecker v. Deere & Co.*, No. 07-3605 (7th Cir. April 2, 2008), available at http://www.dol.gov/sol/media/briefs/Deere(A)-04-02-2008.pdf.

accurate information concerning the investment alternatives so that participants can exercise informed control over their investments. *See* 29 C.F.R. § 2550.404c-1(c). Such control is not exercised unless the participants are provided with "sufficient information to make informed decisions with regard to investment alternatives available under the plan . . ." 29 C.F.R. § 2550.404c-1(b)(2)(B).[13] Therefore, where, as here, participants are alleged to have acted on incomplete information, the § 404(c) defense does not apply. *See Unisys*, 74 F.3d at 447 (to prevail under § 404(c), fiduciaries must provide "information sufficient for the average participant to understand and assess," including "developments which materially affected the financial status of the investments"); *Enron*, 284 F. Supp. 2d at 578; *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 829-30 (S.D. Ohio 2004); *Sprint*, 338 F. Supp. 2d 1234-35; *Rankin*, 278 F. Supp. 2d at 872-73; *WorldCom*, 263 F. Supp. 2d at 764 n.12.

## III.  THE COMPLAINT ADEQUATELY ALLEGES A BREACH OF THE DUTY OF CANDOR

It is well-established that the duty of loyalty under ERISA § 404(a) involves what is known as a "duty of candor," which requires fiduciaries to speak truthfully to participants and to disclose information that participants need in order to exercise their rights and interests under the plan. *See, e.g., Polaroid*, 362 F. Supp. 2d at 479 (quoting *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993)) ("This Court agrees with those decisions holding that an ERISA fiduciary has both a duty not to make misrepresentations to plan participants, and 'an affirmative duty to inform when the (fiduciary) knows that silence might be

---

[13] Specifically, a participant's or beneficiary's exercise of control is not independent in fact if "a plan fiduciary has concealed material non-public facts regarding the investment from the participant or beneficiary . . . ." 29 C.F.R. 2550.404c-1(2)(ii).

harmful.'") (additional citations omitted).[14]

A fiduciary breaches the duty of candor "regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002). Moreover, "[a] determination of whether the information provided to participants was adequate to inform them of the risks of investing in [employer] stock is a fact-intensive inquiry that must await a full factual record." *In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 671 (S.D. Tex. 2004). *See also Xcel*, 312 F. Supp. at 1181 (same). In *Cress v. Wilson*, No. 06-CV-2717, 2007 U.S. Dist. LEXIS 42632 (S.D.N.Y. June 7, 2007), the defendants argued that "the duty of disclosure is limited to express disclosure requirements set out in ERISA." *Id.* at **28-29. Judge Koetl declined to dismiss disclosure claim, holding that "the plaintiffs have raised factual questions over who bore the duty [to disclose or inform] and whether false information was disseminated." *Id.* at *29.

## A.   Defendants Failed to Disclose Material Information to Plan Participants

The Complaint alleges that Defendants breached their duty of candor under ERISA by failing to provide complete and accurate information regarding Company Stock to the Plans' participants, including information concerning the significant risk posed by the Company's exposure to the subprime market, which Defendants knew or should have known, for reasons

---

[14] *See also Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) ("[L]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1)")(citation omitted); *Lively v. Dynegy Inc.*, 420 F. Supp. 2d 949, 954 (S.D. Ill. 2006) ("Because the complaint alleges breaches of both the duty not to affirmatively mislead participants and the duty to disclose material facts affecting a participant's interest, the motion [to dismiss] is not well taken."); *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 492 (3d Cir. 2000) (noting there is an "affirmative duty to inform when the [fiduciary] knows that silence might be harmful"); *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993) (fiduciaries must communicate material facts affecting the interests of beneficiaries); *WorldCom.*, 263 F. Supp. 2d at 766 ("an ERISA fiduciary may not knowingly present false information regarding a plan investment option to plan participants."). Therefore, Defendants' contention that their disclosure obligations are limited to "certain statutorily prescribed plan information (*i.e.*, information about benefits, enrollment, expenses, etc.)" or, at most, to a situation in which the company faces an "impending collapse or bankruptcy" (Def. Mem. at 15-17) is contrary to the caselaw.

specifically detailed in the Complaint (¶ 291), would effect the participants' investment choices.[15]

Defendants argue that imposing a duty on fiduciaries to act on undisclosed inside company information would violate the securities laws. Def. Mem. at 17 n. 5. This argument has been consistently rejected by the Courts. As stated in *WorldCom,* 263 F. Supp. 2d at 766:

> The defendants have tried to describe a tension between the federal securities laws and ERISA that would require dismissal of this claim. Their arguments, however, cannot undermine the soundness of the general principle underlying [the disclosure claim] that ERISA fiduciaries cannot transmit false information to plan participants when a prudent fiduciary would understand that the information was false. Nor is there anything in [the disclosure claim] ... that requires ERISA fiduciaries to convey non-public material information to Plan participants. What is required, is that any information that is conveyed to participants be conveyed in compliance with the standard of care that applies to ERISA fiduciaries.

Defendants also offer the argument that none of them was a fiduciary for the purpose of communicating to the Plans participants. Def. Mem. at 21. However, the Complaint alleges each Defendant's fiduciary status in detail, including the ways in which Defendants exercised *de facto* fiduciary authority regarding communications to the Plans' participants. ¶¶ 25-54. These allegations are sufficient at this stage in the proceedings because, as discussed in VII,

---

[15] The cases cited by Defendants (Def. Mem. at 15-17) do not support the limited disclosure obligations Defendants seek to advance. This case does not resemble *Edgar v. Avaya* 503 F.3d 340 (3rd Cir. 2007), because here, Plaintiffs allege that Defendants affirmatively misled the Plans Participants, which the Court in *Avaya* recognized as being prohibited, and merely held that defendants were not required to disclose adverse facts regarding earnings to plan participants prior to the company's earnings announcement. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998), did not concern a claim on behalf of a plan for breach of fiduciary duties, and the court held that a different case would be presented if it were alleged that the company provided misleading information. *Board of Trs. of the CSA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139 (2d Cir. 1997), was an action brought by a plan administrator seeking a declaratory judgment that ERISA did not require them to produce actuarial valuation reports to plan participants, and the court reached the limited holding that actuarial valuation reports are beyond ERISA's disclosure requirements. *In re Calpine Corp. ERISA Litig.*, No. 03-CV-1685, 2005 U.S. Dist. LEXIS 34452 (N.D. Cal. Dec. 5, 2005), a case from the Northern District of California, has been contradicted by other courts in the Ninth Circuit. *See, e.g., Alvidres v. Countrywide Fin. Corp.*, No. 07-CV-5810, 2008 U.S. Dist. LEXIS 27431, at *9 (C.D. Cal. March 18, 2008) ("fiduciaries have an affirmative duty to provide participants with information material to the participants' circumstances, even when the participant has not specifically asked for the information") (citing *Baker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995)).

determining fiduciary status and its contours is a highly fact intensive inquiry not amenable to

disposition on a motion to dismiss.  On a motion to dismiss, where the allegations of the

complaint are entitled to every favorable inference, it is generally error to rule out the possibility

that a certain communication was made in a defendant's fiduciary capacity.  *See, e.g., Woods v.

S. Co.*, 396 F. Supp. 2d 1351, 1365 (N.D. Ga. 2005) (citing *Xcel*, 312 F. Supp. 2d at 1180-81)

(questions of fiduciary status and capacity are ill-suited to resolution on Rule 12(b)(6) motion);

*Sprint*, 388 F. Supp. 2d at 1228 (it is premature to determine scope of fiduciary duties and

whether particular defendant acted in fiduciary capacity on motion to dismiss).

Defendants further claim that the Complaint fails to sufficiently allege that Defendants

had knowledge of any material information about the problems facing the Company.  *See* Def.

Mem. at 22-23.  However, the Complaint specifies how Defendants knew or should have known

of the serious problems facing Morgan Stanley (¶¶ 92-95, 120-121, 168-268, 108), including

knowledge gained through the Company's acquisition of Saxon.  ¶¶ 108-121.  ERISA fiduciaries

have a duty to investigate and determine whether the information they are providing is accurate.

*See, e.g., Enron* 284 F. Supp. 2d at 685-59 (finding sufficient allegations of failure to disclose

"what they knew or should have known, through prudent investigation, was a threat to the

pension plans or to correct any material misinformation").  Moreover, issues regarding the state

of a defendant's "knowledge" are factual questions that should not be decided on a motion to

dismiss.  *See, e.g., AEP*, 327 F. Supp. 2d at 832 .[16]

---

[16] Defendants attempt to impose the heightened pleading standard of Fed. R. Civ. P. 9(b) to the duty of candor
claim. Def. Mem. at 22-23.  Courts have consistently held that Rule 9(b) does not apply to claims brought under
ERISA, including claims for breach of the duty of candor, even when knowing and intentional breach of fiduciary
duties is alleged.  *See, e.g., In re Polaroid ERISA Litig.*, 362 F. Supp. 2d at 469-70 ("allegations of intentional
conduct to do not transmogrify breach of fiduciary duty claims into causes of action for fraud").  That is so because
the purpose of Rule 9(b) is "to safeguard defendants against spurious charges of immoral and fraudulent behavior".
*See, e.g., Square D Co. v. Scott Elec. Co.*, No. 06-459, 2008 U.S. Dist. LEXIS 39974, at *5 (W.D. Pa. May 16,
2008).  In any event, even if Rule 9(b) did apply to the duty of candor claim, Plaintiffs have satisfied that pleading

### B. Material Omissions in Public Filings and Press Releases Are Actionable under ERISA

The Complaint also alleges that Defendants spoke to participants in SEC filings and press releases and failed to communicate and/or made misleading statements therein. ¶¶ 287-298. Such statements constitute a breach of a fiduciary's duty of candor. *See, e.g., WorldCom*, 263 F. Supp. 2d at 766-67; *In re First Am. Corp. ERISA Litig.*, No. 07-CV-01357, 2008 U.S. Dist. LEXIS 83832, at *19 (C.D. Cal. July 14, 2008).[17]

Defendants argue that the duty of candor claim cannot be maintained with respect to SEC filings and press releases because those documents were not expressly incorporated into the SPD or other Plan communications. Def. Mem. at 19. However, where incomplete and inaccurate statements in SEC filings are incorporated into Plan documents, such statements are deemed to have been made in a fiduciary capacity by plan fiduciaries and constitute a breach of ERISA's duty of candor. *See, e.g. Sprint*, 388 F. Supp. 2d at 1226-27; *see also JDS Uniphase*, 2005 U.S. Dist. LEXIS 17503, at *37 (holding that the defendants breached their duty to inform due to misrepresentations contained in SEC filings that were incorporated by reference into the plan's prospectus); *WorldCom*, 263 F. Supp. 2d at 766-67 ("Those who are ERISA fiduciaries, however, cannot in violation of their fiduciary obligations disseminate false information to plan participants, including false information contained in SEC filings."); *In re Xerox Corp. ERISA*

---

standard by providing each of the Defendants with notice of the who, what when and why of the claims being asserted against them. *See, e.g., Resource Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 441 (D. Del 1999) "[T]he requirement of particularity [in pleading fraud] does not require an exhaustive cataloging of the facts, but only sufficient factual specificity to provide assurance that plaintiff[s] ha[ve] investigated...the alleged fraud and reasonably believe [] that a wrong has occurred." (internal quotation omitted). *See also Cannon v. MBNA Corp.*, No. 05-429, 2007 U.S. Dist. LEXIS 48901, at *11 (D. Del. July 6, 2007); *Rankin*, 278 F. Supp. 2d at 866; *In re Elec. Data Sys. ERISA Litig.*, 305 F. Supp. 2d 658, 672 (E.D. Tex. 2004).

[17] *See also Sprint*, 388 F. Supp. 2d at 1226-27; *In re JDS Uniphase Corp. ERISA Litig.*, No. 03-04743, 2005 U.S. Dist. LEXIS 17503, at *38 (N.D. Cal. July 13, 2005); *Schied v. Dynegy*, 309 F. Supp. 2d 861, 879 (S.D. Tex. 2004); *AEP*, 327 F. Supp. 2d at 825; *In re Diebold ERISA Litig.*, No. 06-CV-170, 2008 U.S. Dist. LEXIS 42746, at *18(N.D. Ohio May 28, 2008); *In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206, 218 (D. Conn. 2007).

*Litig.*, 483 F. Supp. 2d 206, 218 (D. Conn. 2007). Here, the Complaint alleges that the Plans incorporated by reference Morgan Stanley's various SEC filings, which contained incomplete and inaccurate information regarding Morgan Stanley's exposure to the subprime market. ¶¶ 46, 49, 172, 194, 233, 290.

In *In re Schering-Plough Corp. ERISA Litig.*, No. 03-1204, 2007 U.S. Dist. LEXIS 59708, at *18 (D.N.J. Aug. 15, 2007), the court found that by including a reference to a prospectus within the summary plan description within the section where participants could obtain plan information, the summary plan description "impliedly incorporated by reference the prospectus into the SPD... [and] brought any statements made in the prospectus, or incorporated therein, into ERISA's crosshairs." Here, similarly, the SPD for the 401k Plan, under the heading "Investment Options," states that "You are encouraged to review the fund prospectuses and other available information before deciding how to invest your account."[18] *See Dynegy*, 309 F. Supp. 2d at 879 ("Plaintiff's allegations that . . . defendants distributed material that expressly 'encouraged' plan participants to 'carefully review' Dynegy's SEC filings, which they do not dispute materially misrepresented the company's financial status, sufficiently alleges that . . . defendants breached the fiduciary duty to speak truthfully to plan participants.")

Defendants further contend that because the Form S-8 registration statement is a securities law filing required by the Securities Act of 1933, it is not a Plan document. Def. Mem. at 19. However, the securities laws require an employer to disseminate certain portions of its SEC filings (Form S-8) to employees. *See, e.g., WorldCom*, 263 F. Supp. 2d at 766 n.14; *Gee v.*

---

[18] None of the various cases cited by Defendants (Def. Mem. at 18) supports their position that express incorporation is necessary. For example, in *Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222, 228 (W.D.N.Y. 2002), the court merely noted that the plaintiff alleged that SEC filings were incorporated into the SPD, not whether express incorporation was necessary, or whether an SEC filing incorporated into an S-8 constitutes a representation in a fiduciary capacity.

*UnumProvident Corp.*, No. 03-CV-147, 2005 U.S. Dist. LEXIS 3138, at \*48 (E.D. Tenn. Jan. 12, 2005). Accordingly, Morgan Stanley's false statements, identified in the Complaint, were fiduciary speech as a matter of law since they were distributed, by law, to the Plans' participants.

Defendants also argue that the Complaint lacks support for the claim that Morgan Stanley's public filings were misleading because their public filings also contained various risk disclosures. Def. Mem. at 19-20. However, while boilerplate warnings about mortgage-backed securities may have been provided, Defendants did not disclose that its internal controls were incapable of accounting for and managing its hedging activities, and that its valuation models were flawed. ¶¶ 229, 239. Moreover, "[a] determination of whether the information provided to participants was adequate to inform them of the risks of investing in [employer] stock is a fact-intensive inquiry that must await a full factual record." *Reliant*, 336 F. Supp. 2d at 671. Accordingly, the specific content and veracity of Morgan Stanley's purported cautionary statements are immaterial to this motion to dismiss. *See AEP*, 327 F. Supp. 2d at 832 ("Whether the communications constituted misrepresentations and whether they were material under the principles we have articulated are questions of fact that are properly left for trial.") (quoting *Unisys*, 74 F.3d at 443).

Finally, Defendants' argument that Plaintiffs must link declines in stock price to particular disclosures and must plead loss causation (Def. Mem. at 21) completely misses the mark. Not surprisingly, Defendants completely ignore controlling Second Circuit precedent governing loss allegations under section 409 of ERISA. The Second Circuit has held that the measure of damages in an ERISA case is restoring the Plan to the position it would have occupied but for the breach. *See Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985). Accordingly, Defendants' argument is inapplicable in an ERISA context and has been rejected

23

by several Courts. *See, e.g., Cardinal Health*, 424 F. Supp. 2d at 1009-10); *JDS*, 2005 U.S. Dist. LEXIS 17503, at *17 (rejecting argument on the basis that defendants could not "provide any authority for the proposition that federal courts have applied similar reasoning in dismissing ERISA claims on causation grounds.").

## IV.   THE COMPLAINT PROPERLY ALLEGES A CLAIM FOR BREACH OF DUTY TO AVOID CONFLICTS OF INTEREST

The Complaint alleges that certain Defendants, including Defendant Mack, had significant personal investments in Morgan Stanley stock, stock options and future stock compensation.  ¶¶ 301-04.  Under these circumstances, Defendants had the incentive to maintain Company Stock at a high price and therefore maintain the Plans' massive investment of Company Stock in the Plans, which in part required preventing participants of the Plans from learning of the risks of such investments.  Thus, Defendants' possessed incentives that were in direct contradiction to Defendants' duty to act solely in the interest of the Plans participants. Indeed, instead of taking actions to protect the Plans participants, Defendant Mack, together with other Defendants, dramatically increased the Company's exposure to risky assets.  ¶¶ 86, 89, 90, 168-184, 185-214.

These allegations sufficiently support, at the pleading stage, a claim for breach of the fiduciary duty to avoid conflicts of interest under ERISA.  *See, e.g., Woods.*, 396 F. Supp. 2d at 1359-60 ("find[ing] that Plaintiff satisfied the low pleading threshold of Rule 8 by averring that Defendants held an interest in [the employer] during the relevant time period, and engaged in imprudent acts and omissions with respect [to] the Plan to protect the value of their own investment"); *Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361, 1369 (N.D. Ga. 2004) (holding that fiduciaries whose compensation was tied in some manner to the price of employer stock had an incentive to boost the value of such employer stock that conflicted with the interests of the Plan

participants and beneficiaries sufficient to state a claim for breach of ERISA's fiduciary duty of loyalty); *In re Honeywell Int'l ERISA Litig.*, No. 03-1214, 2004 U.S. Dist. LEXIS 21585, at *44 (D.N.J. Sept. 14, 2004) (even "imprecise" allegations stated a claim for breach of the duty of loyalty where, *inter alia*, the compensation of the fiduciaries was tied to the value of the company stock); *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02-8324, 2004 U.S. Dist. LEXIS 3241, at *22 (N.D. Ill. Mar. 3, 2004) (same).[19]

## V.   THE COMPLAINT ADEQUATELY ALLEGES A CLAIM FOR FAILURE TO MONITOR

The fiduciary duties imposed by ERISA § 404(a) require those fiduciaries with the power to appoint and remove plan fiduciaries to monitor the performance of those appointees, and to provide the appointees with any adverse information that the fiduciary might possess. *See, e.g. WorldCom*, 263 F. Supp. at 765 ("When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity"); *Woods*, 396 F. Supp. 2d at 1373, (the duty to monitor includes the responsibility to share material, non-public information with appointed fiduciaries); *AEP*, 327 F. Supp. 2d at 833 ("Where the duty to monitor is irrefutable and this litigation is in its infancy, Plaintiffs' allegations are sufficient to meet the requirements of Rule 8(a), especially where further factual development cannot occur without discovery."). [20]

---

[19] The cases cited by Defendants (Def. Mem. at 26) do not support their position.  For example, in *Polaroid*, 362 F. Supp. 2d at 479 and *In re WorldCom*, 263 F. Supp. 2d at 768, the conflict of interest claim was stock-compensation related, the plaintiffs did not allege that defendants' conflicts of interest impeded their prudent decision-making.  In *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 835 (N.D. Cal. 2005) and *Dynegy*, 309 F. Supp. 2d at 897-98, the connection between the conflict of interest and harm to the plan was not alleged. ¶¶ 268-73.

[20] 29 C.F.R. § 2509.75-8 states that: "at reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan."

The Complaint alleges that Morgan Stanley, MS&Co, the Morgan Stanley Director Defendants and the MS&Co. Director Defendants (the "Monitoring Defendants") should have informed their appointees of the undue risks posed by Company Stock and removed appointees who ignored such risks.  ¶¶ 308-14.  Instead, as Company Stock in the Plans declined in value by nearly $3 billion dollars, the Monitoring Defendants did nothing, suggesting that either they had no system in place to review and evaluate the performance of their appointees or turned a blind eye to their appointees' breaches.  These allegations sufficiently support a claim for the breach of the duty to monitor under ERISA.  *See Polaroid*, 362 F. Supp. 2d at 477 (allegation that a defendant failed to keep plan administrators and fund managers informed is sufficient to state a claim under ERISA).

Defendants' sole argument with respect to this claim is that the Complaint fails to allege a valid primary claim.  Def. Mem. at 25-26.  As discussed herein, the Complaint states a primary claim and therefore, the Complaint sufficiently alleges that the Monitoring Defendants breached their duty to monitor under ERISA.

## VI.    THE COMPLAINT SUFFICIENTLY ALLEGES CO-FIDUCIARY LIABILITY

ERISA Section 405(a), 29 U.S.C. § 1105(a), renders a fiduciary liable for the breach of another fiduciary if he or she (1)  participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or (2) enables another fiduciary to commit a breach; or (3)  has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts to remedy the breach.  29 U.S.C. § 1105(a).  Where a complaint adequately pleads a defendant's breach of fiduciary duty, the complaint generally also states a valid claim for co-fiduciary liability against that same defendant.  *See, e.g., In re Honeywell Int'l ERISA Litig.*, 2004 U.S. Dist. LEXIS 21585, at *49 ("it follows almost inevitably" that defendants liable for one breach were also liable as co-fiduciaries with respect to

the same breaches.") [21]

The Complaint alleges that each defendant breached his or her duties as co-fiduciaries by failing to prevent breaches by other fiduciaries and/or by enabling breaches by other fiduciaries. ¶¶ 317-25.  As such, Defendants are liable under ERISA § 405(a).  In particular, the Complaint alleges that the Monitoring Defendants, including Defendant Mack, who was intimately aware of the serious problems facing the Company, enabled the breaches of other fiduciaries, namely the Investment Committee, by failing to provide members of that committee with information concerning the imprudence of investing in Company Stock.  ¶¶ 321-23.

Defendants' only argument with respect to this claim is that no primary breach of an ERISA fiduciary duty has been alleged.  To the contrary, as demonstrated above, the Complaint sufficiently alleges four independent breaches by Defendants of their fiduciary duties.

## VII.  THE COMPLAINT SUFFICIENTLY ALLEGES THE FIDUCIARY STATUS OF DEFENDANTS

### A.    Standards for Determining Fiduciary Status Under ERISA

ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the Plan."  ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).  The person named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the "sponsor" of the plan is considered the administrator of the plan and thereby the named fiduciary.  ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

---

[21] *See In re ADC Telecomm.*, No. 03-2989, 2004 U.S. Dist LEXIS 14383, at *25-27 (D. Minn. July 26, 2004) ("Based on the above analysis finding sufficient preliminary averments to maintain the ERISA breaches alleged, the co-fiduciary allegations also survive"); *In re CMS Energy*, 312 F. Supp. 2d 898, 910 (E.D. Mich. 2004) ("Having declined to dismiss the fiduciary liability claims, the court will also decline to dismiss any of the co-fiduciary liability claims at this juncture.").

In addition, ERISA treats as fiduciaries any other persons who *in fact* perform fiduciary functions (including juridical persons such as Morgan Stanley and MS&Co).  A person is a fiduciary to the extent that he or she "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or . . . has any discretionary authority or discretionary responsibility in the administration of such plan."  ERISA § 3(21)(A), 29 U.S.C. § 1002 (21)(A).

In pleading fiduciary status under 29 U.S.C. § 1002 (16)(A), often referred to as "de facto" or "functional" fiduciary status, a plaintiff is to be afforded wide latitude because ERISA's assignment of fiduciary duties on the basis of function typically requires the development of additional facts in discovery.  See *Rankin v. Rots*, 278 F. Supp. 2d at 879 (expecting plaintiffs to determine each particular individual who exercised decision making authority is too much to ask at the pleading stage); *Lalonde v. Textron, Inc.,* 270 F. Supp. 2d 272, 277 n.4 (D.R.I. 2003) (an entity's functional fiduciary status is a "highly fact specific" inquiry not properly resolved on a motion to dismiss).  This is particularly true in a case as complex as this with:  (i) two interrelated Plans (the 401(k) Plan and the ESOP); (2) two "named" fiduciaries (the Morgan Stanley Global Director and the Investment Committee) whose responsibilities are not fully known; (3) two separate Boards (Morgan Stanley's Board and MS&Co's Board) with the authority to decide whether to fund Employer Contributions in cash or Company Stock; and (4) an unclear relationship between Morgan Stanley and its agents, including the Morgan Stanley Global Director.

**B.      The Complaint Sufficiently Alleges the Fiduciary Status of Defendants**

Instead of delegating fiduciary responsibility for the Plans to external service providers, Morgan Stanley and MS&Co (the sponsors, respectively, of the ESOP and the 401(k) Plan) chose to comply with the requirement of ERISA § 402(a)(1) by naming themselves and/or

assigning relevant fiduciary functions to their own officers, employees and agents.[22] ¶¶ 39-54.
Nonetheless, Defendants appear to argue that only the Investment Committee members were
fiduciaries of the Plans with respect to decisions relating to the selection and retention of
Company Stock -- and even then, fiduciaries with respect to only the 401(k) Plan and with
discretion over only investments other than Company Stock.  Def. Mem. at 22, 27-32.
Defendants' arguments are unavailing.

The Complaint's allegations, which must be taken as true on this motion to dismiss, point
to the plausible conclusion that each Defendant was a "named" and/or "*de facto*" fiduciary of the
401(k) Plan and/or the ESOP, and that each Defendant was acting in a fiduciary capacity with
respect to at least some of the alleged fiduciary breaches.

### 1.    Morgan Stanley

By the express terms of the 401(k) Plan, the Plan Administrator (defined as *Morgan
Stanley's* Global Director of Human Resources) was a "named fiduciary."  *See* Wise Decl.
Ex. A, Section 14(a), and definition of Plan Administrator in the 401(k) Plan.  Similarly, by the
express terms of the ESOP, the Plan Administrator (defined in the ESOP as *Morgan Stanley's*
Global Director of Human Resources) was a "named fiduciary."  *See* Wise Decl. Ex. B, Article
1.34 and Article 9.01 of the ESOP.  Therefore, Morgan Stanley *itself* was a "named fiduciary" of
the 401(k) Plan and the ESOP.  ¶¶ 43-45, 46(a), 48.[23]

---

[22]  Although the Plans had an institutional trustee unrelated to Morgan Stanley, the trustee was required by the Trust Agreement to take directions from Morgan Stanley.  *See* ¶ 40; Wise Decl. Ex. C, Summary Plan Description at p. 20.

[23]  The Plans do not contain limitations on the fiduciary obligations of the named fiduciaries.  *See* Wise Decl. Ex. A, Section 14 of the 401(k) Plan; Wise Decl. Ex. B, Article 9.08 of the ESOP.  Morgan Stanley is therefore considered a fiduciary for *all* purposes.  *See, e.g., Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1218-19 (2d Cir. 1987) (Congress included requirement of named fiduciary "so that responsibility for managing and operating the Plan -- and liability for mismanagement – are focuses with a degree of certainty.") (internal quotations omitted); *Birmingham v. SoGen-Swiss Int'l Corp. Retirement Plan*, 718 F.2d 515, 521-22 (2d Cir. 1983).

Defendants argue that Morgan Stanley is not a fiduciary of the Plans because fiduciary responsibility cannot be imposed on "*respondeat superior* or agency grounds where the employer is not itself a plan fiduciary." Def. Mem. at 28. Defendants' argument is a strawman. Under basic corporate principles, a corporation can only act through its agents. *See, e.g., Suez Equity Investors, L.P. v. Toronto Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001). The Complaint alleges that Morgan Stanley -- *in its own right* – was a "named fiduciary" of both the 401(k) Plan and the ESOP. *See Mertens v. Hewitt Assoc.*, 508 U.S. 248, 262 (1993) (fiduciary duties attach to the actions of an employer "to the extent that they function in their capacity as plan administrators.")

Alternatively, to the extent that Morgan Stanley's Global Director is deemed legally separate from Morgan Stanley itself, then the Global Director would be the fiduciary, and since Morgan Stanley had effective control over the Global Director, any breaches of fiduciary duty by the Global Director are imputed to Morgan Stanley under the doctrine of *respondeat superior*.[24] *See ¶ 47. Respondeat superior* remains a viable theory of liability for employers in ERISA cases,[25] and whether an employee or agent was acting within the scope of his employment or agency for *respondeat superior* purposes is a question that should not be decided on a motion to dismiss. *See National Football Scouting Inc. v. Continental Assurance Co.*, 931 F.2d 646, 649-50 (10th Cir. 1991) (applying *respondeat superior* for ERISA and finding that question of fact

---

[24]  In addition, because Morgan Stanley had effective control over the Morgan Stanley Director Defendants, the members of the Investment Committee and the MS&Co Director Defendants, any fiduciary breaches by those individuals are also imputed to Morgan Stanley under the doctrine of *respondeat superior*.

[25]  *See, e.g., American Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc. of the U.S.*, 841 F.2d 658, 665 (5th Cir. 1988); *McMahon v. McDowell*, 794 F.2d 100, 109 (3d Cir. 1986); *Xerox*, 483 F. Supp. 2d at 222; *Kling v. Fidelity Mgmt. Trust Co.*, 323 F. Supp. 2d 132, 145-47 (D. Mass. 2004) (adopting *respondeat superior* liability under ERISA); *Meyer v. Berkshire Life Ins. Co.*, 250 F. Supp. 2d 544, 563-64 (D. Md. 2003).

concerning agency relationship precluded summary judgment); *MBNA*, 2007 U.S. Dist. LEXIS

48901 at 9 (discovery necessary to determine applicability of *respondeat superior*).[26]

REDACTED

### 2.    MS&Co

REDACTED

In

addition, the Complaint alleges that any breaches of fiduciary duties by the MS&Co Directors or

the Investment Committee are imputed to MS&Co under the doctrine of *respondeat superior*.

¶ 51.

As with Morgan Stanley, Defendants argue that                    REDACTED

---

[26] The cases cited by Defendants (Def. Mem. at 28) do not eliminate *respondeat superior* liability in ERISA actions. In *Crowley*, 234 F. Supp. 2d at 228, the court did not question whether *respondeat superior* was a viable theory under ERISA.  It merely found that the allegations of the complaint were not sufficient to support the necessary control of the agent by the corporate entity.  *Coca-Cola Enters.*, 2007 U.S. Dist. LEXIS 44991, at *40, chose not to apply *respondeat superior*, but recognized a split in the courts on the issue.  *Wright*, 360 F.3d at 1101-02, never addressed *respondeat superior* liability.

REDACTED

. and that MS&Co cannot be liable on *respondeat superior* grounds because that theory of liability does not apply in ERISA actions.  Def. Mem. at 27-28.  For the same reasons discussed above with respect to Morgan Stanley, Defendants' arguments should be rejected.

### 3.   Morgan Stanley Director Defendants (John J. Mack)

The Complaint alleges that the Morgan Stanley Director Defendants -- John J. Mack, the Chairman and Chief Executive Officer of Morgan Stanley -- was a *de facto* fiduciary of the Plans by,

REDACTED

### 4.   MS&Co Director Defendants

The Complaint alleges that the MS&Co Director Defendants were *de facto* fiduciaries of the Plans during the Class Period in that they, *inter alia* (1) had ultimate oversight over the Plans, with the power and responsibility to appoint, monitor and replace members of the Investment Committee  (¶ 52; Wise Decl. Ex. A, §8(f)(i) of the 401(k) Plan); and (2)

REDACTED

Nor

do Defendants dispute that the power to appoint fiduciaries is a fiduciary function.[27]  Instead,

Defendants argue that the MS&Co Board did not have a fiduciary duty to provide adverse

information to the Investment Committee.  Def. Mem. at 30-31.  However, as discussed herein

at Section V, it is well-established that an appointing fiduciary has a duty to monitor his

appointees and provide any adverse information that he might possess.  The Complaint alleges

that the MS&Co Board (as well as defendant Mack) breached their fiduciary duty to monitor by

failing to provide the Investment Committee with material information concerning Morgan

Stanley's serious business problems.  ¶¶ 310-13.[28]

In addition, the MS&Co. Board (as well as defendant Mack) are liable for the breaches of

their co-fiduciaries, namely the Investment Committee, under ERISA § 405(a), 29 U.S.C.

§ 1105(a).  *See In re WorldCom*, 354 F. Supp. 2d 443, 445 (S.D.N.Y 2005); *Polaroid*, 362

F. Supp. 2d at 479-80.

### 5.      The Investment Committee

The Complaint alleges that the Investment Committee was a "named fiduciary" of the

401(k) Plan under ERISA § 402(a)(2).  ¶ 53; *see also* Wise Decl. Ex. A, Section 8(f)(i)(1) of the

401(k) Plan.  In addition, the Complaint alleges that the members of the Investment Committee

were *de facto* fiduciaries of the Plans within the meaning of ERISA § 3(21) by, *inter alia*,

selecting and monitoring the investment alternatives for the Plans.  ¶ 54; *see also*  Wise Decl.

---

[27] *See, e.g., Beam v. HSBC Bank USA*, No. 02-CV-0682, 2003 U.S. Dist. LEXIS 15744, at *10 (W.D.N.Y. Aug. 19, 2003) (directors' duty to appoint is fiduciary function); *Liss v. Smith*, 991 F. Supp. 278, 310 (S.D.N.Y. 1998) ("the power to appoint plan trustees confers fiduciary status.").

[28] None of the cases cited by Defendants (Def. Mem. at 30-31) limit the liability of appointing fiduciaries to the mere act of appointment.  Those cases either do not address whether the act of appointment carries with it a duty to provide appointees with relevant information, or actually conclude that such a duty is implicit in the fiduciary duty to appoint.  For example, in *Polaroid*, 362 F. Supp. 2d at 477 (Def. Mem. at 30), the Court that a complaint sufficiently alleged that an appointing fiduciary breached a fiduciary duty to monitor under ERISA by failing to ensure that his appointees "appreciated the huge risk inherent in the significant investment" in company stock.

Ex. A, § 8(b)(i) of the 401(k) Plan.

Defendants claim that the Investment Committee had no fiduciary responsibility whatsoever with respect to the ESOP, and that their fiduciary responsibilities to the 401(k) Plan did not include selecting and monitoring Company Stock because Company Stock was required to be offered to 401(k) Plan participants. Def. Mem. at 31. As discussed *infra* at Section II A & B, a fiduciary must disregard plan documents to the extent that the plan documents conflict with fiduciary duties under ERISA, and as also discussed *infra* at Section II A, the Investment Committee had tools at its disposal to protect the Plans from investment in Company Stock without disregarding Plan documents. Moreover, the Investment Committee's responsibilities with respect to the ESOP cannot be determined at this stage of the proceedings.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety. Alternatively, Plaintiffs respectfully request leave to amend the Complaint.

Dated: November 21, 2008

/s/ Sanford P. Dumain
Sanford P. Dumain
Lori G. Feldman
Arvind Khurana
Sara E. Fuks
MILBERG LLP
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229
Email: sdumain@milberg.com
lfeldman@milberg.com
akhurana@milberg.com
sfuks@milberg.com

Mark C. Rifkin
Michael Jaffe
Kate M. McGuire
WOLF HALDENSTEIN ADLER FREEMAN
& HERZ LLP
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653
Email: rifkin@whafh.com
        jaffe@whafh.com


**Interim Co-Lead Counsel for Plaintiffs**
Robert I. Harwood
Samuel K. Rosen
Jennifer Hirsh
HARWOOD FEFFER LLP
488 Madison Avenue
New York, NY 10022
Telephone: (212) 935-7400
Facsimile: (212) 753-3630
Email: rharwood@hfesq.com
        srosen@hfesq.com

Joseph H. Meltzer
Edward W. Ciolko
James Maro
SCHIFFRIN BARROWAY TOPAZ &
KESSLER LLP
280 King of Prussia Road
Radnor, PA 198087
Telephone:  (610) 667-7706
Facsimile:  (510) 667-7056
Email: jmelzer@sbtklaw.com
        eciolko@sbtklaw.com

**Executive Committee of Interim Co-Lead
Counsel for Plaintiffs**

Jeffrey Abraham
ABRAHAM FRUCHTER & TWERSKY
LLP
One Penn Plaza
Suite 2805
New York, NY 10119
Email:  jabraham@aftlaw.com

**Additional Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

I, Sara Fuks, one of Plaintiffs' Counsel in the *In re Morgan Stanley ERISA Litigation*, Master File No.: 07-Civ. 11285 (S.D.N.Y.), hereby certify that on Friday, November 21, 2008, I caused the foregoing redacted *Memorandum of Law in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss* to be served along with an unredacted copy of the *Memorandum of Law in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss*, upon the following Defendants via email and U.S. Mail:

Robert F. Wise, Jr., Esq.
Charles S. Duggan, Esq.
DAVIS POLK & WARDELL
450 Lexington Avenue
New York, NY 10017
Telephone:  (212) 450-4000
Facsimile: (212) 450-3800
Email:  robert.wise@dpw.com
        charles.duggan@dpw.com

Sara Fuks