UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MORGAN STANLEY ERISA LITIGATION | MASTER FILE NO.: |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | 07 Civ. 11285 (DAB) |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Attorneys for Defendants*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

PROCEDURAL HISTORY ........................................................................................... 3

THE COMPLAINT ALLEGATIONS ............................................................................. 4

    A.   Morgan Stanley's ERISA Plans ........................................................... 4

    B.   The Alleged ERISA Violations ............................................................. 6

ARGUMENT ............................................................................................................... 8

    I.   THE COMPLAINT FAILS TO STATE AN IMPRUDENCE CLAIM ................. 9

        A.   Defendants Morgan Stanley, MS&Co, the MS&Co Board
           and John Mack Were Not Fiduciaries with Regard to
           Plan Investments ............................................................................... 9

        B.   Plaintiffs Fail to Allege Abuse of Discretion by the
           Named Fiduciaries ........................................................................... 10

        C.   Company Contributions Were Not Fiduciary Acts .............................. 15

    II.   THE COMPLAINT FAILS TO STATE A DISCLOSURE CLAIM ................... 17

        A.   ERISA Imposes No Obligation to Provide the Information
           That Plaintiffs Allege Was Not Disclosed ....................................... 17

        B.   Morgan Stanley's Corporate Disclosures Were Not ERISA
           Communications ............................................................................. 18

        C.   No Defendant Breached a Fiduciary Duty to Communicate
           with Plan Participants ...................................................................... 21

    III.   THE COMPLAINT FAILS TO STATE CLAIMS FOR CONFLICT
        OF INTEREST, FAILURE TO MONITOR OR CO-FIDUCIARY
        LIABILITY ........................................................................................ 23

CONCLUSION ........................................................................................................ 25

TABLE OF AUTHORITIES

CASES

PAGE

In re AIG, Inc. ERISA Litig. II, No. 08 Civ. 5722 (LTS) (KNF), 2011 WL 1226459
(S.D.N.Y. Mar. 31, 2011) ....................................................................................14

In re Am. Express Co. ERISA Litig., 762 F. Supp. 2d 614 (S.D.N.Y. 2010) ..................13, 18, 23

Ashcroft v. Iqbal, 556 U.S. 662 (2009)............................................................................8

In re Avon Prods., Inc. Sec. Litig., No. 05 Civ. 6803, 2009 WL 848083
(S.D.N.Y. Mar. 3, 2009), adopted, 2009 WL 884687 (S.D.N.Y. Mar. 30, 2009) ....................5

In re Bank of Am. Corp. Sec., Derivative & ERISA Litig., 756 F. Supp. 2d 330
(S.D.N.Y. 2010) ..............................................................................10, 13, 23, 24

In re Bausch & Lomb Inc. ERISA Litig., No. 06-CV-6297, 2008 WL 5234281
(W.D.N.Y. Dec. 12, 2008) ...............................................................................10

In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.,
763 F. Supp. 2d 423 (S.D.N.Y. 2011).......................................................... passim

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .........................................................8

Benitez v. Humana, Inc., No. 3:08CV-211-H, 2009 WL 3166651
(W.D. Ky. Sept. 30, 2009) ................................................................................19

In re Citigroup ERISA Litig., No. 07 Civ. 9790, 2009 WL 2762708
(S.D.N.Y. Aug. 31, 2009), aff'd sub nom., Gray v. Citigroup, Inc.,
662 F.3d 128 (2d Cir. 2011)..............................................................11, 19, 21

In re Coca-Cola Enters. Inc. ERISA Litig., No. 1:06-CV-0953 (TWT), 2007 WL 1810211
(N.D. Ga. June 20, 2007) ...................................................................................21

Crocco v. Xerox Corp., 137 F.3d 105 (2d Cir. 1998) ...................................................10

Donovan v. Cunningham, 716 F.2d 1455 (5th Cir. 1983) .............................................24

Edgar v. Avaya, Inc., 503 F.3d 340 (3d Cir. 2007) ......................................................11

Fisher v. JP Morgan Chase & Co., 703 F. Supp. 2d 374 (S.D.N.Y. 2010).....................13, 18, 23

Gay v. Medi-Ray, Inc., No. 01 Civ. 8497, 2002 U.S. Dist. LEXIS 28675
     (S.D.N.Y. July 26, 2002) ...................................................................................16

Gearren v. McGraw-Hill Cos., 690 F. Supp. 2d 254 (S.D.N.Y. 2010)...................................18-19

Gearren v. McGraw-Hill Cos., 660 F.3d 605 (2d Cir. 2011)................................................. passim

Gray v. Citigroup, Inc., 662 F.3d 128 (2d Cir. 2011) ............................................................ passim

Hunter v. Caliber Sys. Inc., 220 F.3d 702 (6th Cir. 2000).......................................................16

Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243 (5th Cir. 2008)..........................................11, 19

Kuper v. Iovenko, 66 F.3d 1447 (6th Cir. 1995) .....................................................................11, 13

Lee v. Burkhart, 991 F.2d 1004 (2d Cir. 1993) .........................................................................24

In re Lehman Bros. Sec. & ERISA Litig., 683 F. Supp. 2d 294 (S.D.N.Y. 2010) ..............8, 12, 13

In re Lehman Bros. Sec. & ERISA Litig., No. 09-MD-02017, 2011 WL 4632885
     (S.D.N.Y. Oct. 5, 2011) ..............................................................................................14, 15

In re McKesson HBOC, Inc. ERISA Litig., 391 F. Supp. 2d 812 (N.D. Cal. 2005) ...................13

Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995) ......................................................................11

In re Morgan Stanley ERISA Litig., 696 F. Supp. 2d 345 (S.D.N.Y. 2009) ........................3, 9, 10

Pegram v. Herdrich, 530 U.S. 211 (2000) ......................................................................16, 18, 21

Plumbers & Steamfitters Local 773 Pension Fund v. CIBC, 694 F. Supp. 2d 287
     (S.D.N.Y. 2010) ...........................................................................................................8

In re Polaroid ERISA Litig., 362 F. Supp. 2d 461 (S.D.N.Y. 2005) ...........................................23

Quan v. Computer Scis. Corp., 623 F.3d 870 (9th Cir. 2010) ................................................11, 12

In re RNC Litig., No. 04-5068 (SRC), 2006 WL 753149 (D.N.J. Mar. 21, 2006)........................15

Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000)............................................................................5

In re SLM Corp. ERISA Litig., No. 08-4334, 2010 WL 3910566 (S.D.N.Y. Sept. 24, 2010) .....13

Smith v. Delta Air Lines, Inc. 422 F. Supp. 2d 1310 (N.D. Ga. 2006) .......................................13

Stein v. Smith, 270 F. Supp. 2d 157 (D. Mass. 2003) .................................................................24

Varity Corp. v. Howe, 516 U.S. 489 (1996) ........................................................................19

Veera v. Ambac Plan Admin. Comm., 769 F. Supp. 2d 223 (S.D.N.Y. 2011) ............................14

In re Wachovia ERISA Litig., No. 3:09cv262, 2010 WL 3081359
     (W.D.N.C. Aug. 6, 2010) ...........................................................................11, 13, 15

In re WorldCom, Inc., 263 F. Supp. 2d 745 (S.D.N.Y. 2003) .........................................................18

Wright v. Or. Metallurgical Corp., 360 F.3d 1090 (9th Cir. 2004) ...............................................13

<u>S</u>TATUTES & <u>R</u>ULES

29 U.S.C. §§ 1021-1031 ........................................................................................................21

Defendants respectfully submit this memorandum of law in support of their renewed motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Consolidated Amended Class Action Complaint (the "Complaint").

PRELIMINARY STATEMENT

This lawsuit is one of two ERISA actions now before Your Honor that assert claims under the Employee Retirement Income Security Act ("ERISA") against Morgan Stanley, its subsidiary Morgan Stanley & Co. Incorporated[1] ("MS&Co") and various individuals. The Plaintiffs are the same in both actions, and they advance the same basic legal claims, albeit for two different overlapping periods. This action, which was filed first, purports to cover the period from August 6, 2006 through July 25, 2008. The second action, Coulter v. Morgan Stanley & Co. Incorporated, No. 11 Civ. 1849 (DAB), covers the period from January 2, 2008 through December 31, 2008. In both cases, Plaintiffs claim that Defendants breached their fiduciary duties by not preventing Morgan Stanley's 401(k) Plan and Employee Stock Ownership Plan ("ESOP") from investing in Morgan Stanley stock and, in the case of Defendant John Mack, by authorizing Morgan Stanley to make contributions to the Plan in company stock rather than cash. Both suits also claim that Defendants breached ERISA duties by not warning Plan participants about risks to Morgan Stanley's business in the respective periods covered by the two complaints.

Defendants have previously moved to dismiss the Coulter complaint for failure to state a claim, based principally on the Second Circuit's recent decisions in Gray v. Citigroup, Inc., 662 F.3d 128 (2d Cir. 2011), and Gearren v. McGraw-Hill Cos., 660 F.3d 605 (2d Cir. 2011). These decisions affirmed the dismissal of ERISA claims essentially indistinguishable from those

---

[1] Morgan Stanley & Co. Incorporated is now Morgan Stanley & Co. LLC.

asserted in <u>Coulter</u> and in this Action.  Although Judge Sweet denied Defendants' motion to dismiss this Action in 2009, in light of the Second Circuit's decisions Defendants requested and were granted leave to file a renewed motion to dismiss this Action.  (Dkt. No. 91, Feb. 23, 2012.)

In <u>Gray</u>, the Second Circuit held that an ERISA fiduciary's plan investment in the stock of the sponsoring corporation is presumptively prudent and actionable only for abuse of discretion.  <u>Gray</u>, 662 F.2d at 136.  The court also held that if an ERISA plan *requires* investment in the corporation's own stock, a complaint must allege facts showing that the fiduciary was aware of "dire circumstances" facing the corporation which left no "room for reasonable fiduciaries to disagree" that the Plan requirement should be disregarded.  <u>Id.</u> at 140.  The Second Circuit also held that ERISA imposes no obligation to disclose information about the sponsoring corporation's financial condition to Plan participants and that corporate disclosures such as SEC filings are not actionable under ERISA.  <u>Id.</u> at 143.

These holdings make apparent that the Complaint fails to state a claim for imprudent management (First Cause of Action).  First, there is no allegation that Morgan Stanley, MS&Co or the individual Defendants had any fiduciary responsibility for the Plans' investments.  Second, the Complaint fails to plead that any Defendant who was a fiduciary for Plan investments was aware that Morgan Stanley faced "dire circumstances" in the period August 2006 to July 2008.  Third, Plaintiffs fail to state a claim that Mr. Mack committed an abuse of discretion by approving contributions of stock by Morgan Stanley to the Plan in January 2007 and January 2008, because Mr. Mack was not acting as a Plan fiduciary in making such decisions.  Nor does the Complaint plead that it was an abuse of discretion to contribute Company stock at those times – especially given the Plan's requirement that any cash contributed had to be invested in Company stock.

The disclosure claim of failure to provide complete information (Second Cause of Action) must also be dismissed, because ERISA does not require disclosures to Plan participants about Morgan Stanley's financial condition. Gray, 662 F.3d at 143. Moreover, each of the putatively misleading communications was made in a corporate and not a fiduciary capacity, and thus is not actionable under ERISA. Id. Nor do Plaintiffs plausibly allege that any such communication was false or misleading, or that any ERISA fiduciary knowingly concealed material information from Plan participants.

Plaintiffs' claims for conflict of interest, failure to monitor and co-fiduciary liability (Third, Fourth and Fifth Causes of Action) must all be dismissed as well. The allegation that certain Defendants owned Morgan Stanley stock fails to state a claim for conflict of interest, and there can be no co-fiduciary or duty-to-monitor liability where there is otherwise no ERISA violation.

## PROCEDURAL HISTORY

The amended Complaint in this Action was filed on July 25, 2008. Defendants' initial motion to dismiss was denied in a December 9, 2009 decision by Judge Robert W. Sweet, In re Morgan Stanley ERISA Litigation, 696 F. Supp. 2d 345, 358-59, 360-63 (S.D.N.Y. 2009).[2] The action was reassigned, and Defendants answered in January 2010 (Dkt. No. 64, Jan. 29, 2010). Magistrate Judge Andrew J. Peck restricted discovery to the period before the Complaint was filed, which was July 2008. (Dkt. No. 74, Dec. 20, 2010; Dkt. No. 75, Jan. 25, 2011.) In response, Plaintiffs filed their separate Coulter action, which asserted the same claims but for the

---

[2] Judge Sweet later disavowed the principal grounds for this ruling. See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig., 763 F. Supp. 2d 423, 571 (S.D.N.Y. 2011) (Sweet, J.) (stating that his holding in Morgan Stanley that the presumption of prudence was inapplicable at the pleading stage was "no longer appropriate"); id. at 575-78 (holding that ERISA does not require fiduciaries to disclose nonpublic company information to plan participants). In Gray and Gearren, the Second Circuit agreed with Judge Sweet's revised views as expressed in Bear Stearns.

period January 2, 2008 to December 31, 2008. Coulter v. Morgan Stanley & Co. Inc., 11 Civ.
1849 (DAB) (filed Mar. 16, 2011). Briefing of Defendants' motion to dismiss in Coulter was
completed on January 18, 2012.

On January 25, 2012, Defendants requested permission to file a renewed motion to
dismiss this action in view of the Second Circuit's decisions in Gray and Gearren. The Court
granted that request in an Order filed February 23, 2012 (amended on February 28, 2012 to stay
discovery). (Dkt. Nos. 91, 92.) In a February 24, 2012 letter to Your Honor, Plaintiffs proposed
to consolidate this Action with Coulter and file an amended complaint covering both actions.
(Ex. I.)[3] Defendants opposed that request on February 27, 2012, on the grounds that briefing in
Coulter was already completed. (Ex. J.) Plaintiffs then "offered" to "withdraw" this case
"except for their claim concerning Defendant John Mack's discretionary funding decisions,"
which they proposed to include in a new amended complaint in Coulter. (Ex. K, at 2.) As
Defendants noted in response, Plaintiffs do not need to amend Coulter in order to abandon claims
in this Action that they no longer intend to pursue. (Ex. L.) Plaintiffs have, however, as yet not
dismissed them.

THE COMPLAINT ALLEGATIONS

A. Morgan Stanley's ERISA Plans[4]

The 401(k) Plan. The 401(k) Plan permits Morgan Stanley employees to save for
retirement on a tax-favored basis. (¶ 2.) Participants in the Plan have individual accounts and
personally determine how to allocate their savings among various investment options. (¶¶ 62-63;

---

[3] "Ex. ___" refers to exhibits to the Declaration of Robert F. Wise, Jr., Esq., dated March 26, 2012.

[4] The Plans in this Action are the same Morgan Stanley Plans described in the briefing in support of
dismissal of the Coulter complaint. The ESOP was merged into the 401(k) Plan on August 31, 2008. (See Ex. D,
2008 11-K at 4.)

4

Ex. G, Morgan Stanley Summary Plan Description – 401(k) Plan & ESOP, at 10 (July 1, 2007) ("2007 SPD").)[5] The investment options for the 401(k) Plan are selected by an Investment Committee, except the Plan *requires* that the Morgan Stanley Stock Fund ("MSSF") be offered as an investment option. (E.g., Ex. E, 401(k) Plan § 8(b)(i).) The Plan *requires* the MSSF to invest exclusively in Morgan Stanley stock, excepting a small cash position to fund withdrawals. (Id. at § 8(b)(ii)(A).) The 401(k) Plan provides that the MSSF may be "liquidated, removed or closed as an Investment Fund *only by amendment to the Plan*." (Id. (emphasis added).)

Morgan Stanley's Global Head of Human Resources, Karen Jamesley, was appointed Plan Administrator with responsibility for certain statutorily required tasks, such as providing a summary plan description to Plan participants. (¶¶ 30, 48, 57.) The Plan limits the Plan Administrator's duties to such requirements as are set forth in the Plan, stating that "[t]he Plan Administrator shall perform only its Fiduciary Responsibilities as provided in the Plan." (E.g., Ex. E, 401(k) Plan § 14(b)(iii).)

The ESOP. The ESOP was an employee stock ownership plan "designed to invest primarily in qualified employer securities." (Ex. F, ESOP art. 5.01(a).) The Company makes two types of contributions to employees' ESOP accounts ("Company Contributions"): (i) to match employee 401(k) contributions and (ii) as discretionary profit-sharing grants. The ESOP directs that Company Contributions to the Plan "*shall* be invested in shares of Company Stock." (Id. art. 4.01(a) (emphasis added); see also Ex. G, 2007 SPD, at 6 (explaining that 401(k)

---

[5] The Court may consider on a motion to dismiss any "public disclosure documents" required to be filed with the SEC, "any statements or documents incorporated in [the complaint] by reference," and documents on which plaintiffs relied in bringing suit. Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000); see also In re Avon Prods., Inc. Sec. Litig., No. 05 Civ. 6803, 2009 WL 848083, at *7 n.12 (S.D.N.Y. Mar. 3, 2009) (Report & Recommendation) ("We may refer to plan documents on a Rule 12(b)(6) motion, since those documents are integral to the complaint and are specifically referenced in that pleading."), adopted, 2009 WL 884687 (S.D.N.Y. Mar. 30, 2009). Even a document not incorporated by reference may be considered where the complaint "relies heavily" upon it. Gray, 662 F.3d at 133-34 (relying upon ERISA plan documents).

matching contributions "may be made in cash and invested in the [MSSF] or may be made in shares of [Company] stock contributed directly to the [MSSF]").) Company Contributions would therefore be invested in Morgan Stanley stock even if initially contributed in cash. Like the 401(k) Plan, the ESOP was administered by Karen Jamesley. (¶¶ 29-30.)

    B. The Alleged ERISA Violations

    As in Coulter, Plaintiffs claim that Defendants anticipated that Morgan Stanley would incur business setbacks from its exposure to subprime investments (see, e.g., ¶ 186), yet failed to act prudently because they did not prevent the Plans from investing in Morgan Stanley stock or advise Plan participants of the alleged threat to Morgan Stanley's financial position. Allegedly, they did not do so because they wanted to conceal their purported mismanagement (¶ 256).

    Plaintiffs assert that, beginning in 2005, Morgan Stanley sought to increase returns by "backing its credit derivative products with subprime mortgages" (¶ 95) and acquired Saxon Capital, Inc., a servicer and originator of subprime mortgages (¶ 108). Through Saxon, Morgan Stanley purportedly learned about the "deterioration" of the subprime lending market and associated "fraudulent practices" (¶¶ 111-20) that allegedly put Morgan Stanley's "overall health at risk" (¶ 120). Plaintiffs also assert Defendants should have known that Morgan Stanley's accounting, internal controls and risk-management procedures were inadequate and "put[] the Company's overall financial health at risk." (¶ 150; see also ¶¶ 5, 92, 171, 176, 178.) The Complaint alleges that the procedures and technology used by Morgan Stanley's Legal Entity and Accounting Disclosure ("LEAD") Group – which Plaintiffs claim is responsible for Morgan Stanley's 10-K production, FAS reporting and internal financial reports (¶¶ 146, 179-80) – were flawed, and that these supposed flaws contributed to losses that purportedly affected the value of Morgan Stanley's stock. (¶ 150; see also ¶¶ 174-77.)

Imprudence.  In the First Cause of Action, Plaintiffs contend that Defendants breached their fiduciary duties by "continu[ing] to offer Company stock as an investment option" and by "permitt[ing] the Plans to purchase additional shares in spite of Morgan Stanley's inability to properly manage its self-created risk." (¶ 254.)  They claim that Defendants were obligated to stop offering the MSSF as an option under the 401(k) Plan and to sell the Company stock held by the MSSF for Plan participants' 401(k) and ESOP accounts (see ¶ 269), notwithstanding the Plans' requirements that the MSSF be offered as an option under the 401(k) Plan and that the ESOP invest in Company stock.  Plaintiffs also charge that Morgan Stanley CEO John Mack determined in January 2007 and January 2008 that Morgan Stanley's annual Company Contribution to the Plans would be made with treasury shares of Company stock, rather than cash (¶ 49(c)), which they allege was imprudent.

Inadequate Disclosures.  In their Second Cause of Action, Plaintiffs assert that Defendants failed to inform Plan participants of the extent of the risk of investing in the MSSF (¶¶ 263, 294), failed to correct purported misrepresentations by Morgan Stanley about the Company's exposure to the subprime mortgage market (¶¶ 184, 188, 197, 201), and concealed alleged problems with the Company's accounting, internal controls and risk-management procedures (¶¶ 7, 170-71, 224-29, 261).  Plaintiffs claim that the alleged misrepresentations by Morgan Stanley resulted from "deliberate senior management decisions designed to conceal the truth" about its alleged lack of internal controls and purported failures to record asset-impairment charges.  (¶ 256.)

Specifically, Plaintiffs allege that, beginning in the third quarter of its fiscal 2007, Morgan Stanley's quarterly filings, press releases and public statements misleadingly failed to disclose that Morgan Stanley had "tremendous" subprime exposure, that its hedging strategy was

ineffective, and that it lacked internal controls adequate to manage the "burgeoning credit and liquidity crisis." (¶¶ 201, 248, 252.)  Defendants allegedly knew in August 2007 that Morgan Stanley "was going to be taking a multi-billion dollar writedown" (¶ 186) but purportedly did not disclose it until November 7, 2007. (¶ 207.)  Morgan Stanley allegedly announced further mortgage-related write-downs and losses in December 2007.  (¶ 218.)  Plaintiffs claim that, despite knowing that its hedge was not adequate and that it was allegedly unable to assess "its true risk exposure" (¶ 220), Morgan Stanley falsely stated that its mortgage-related losses resulted solely from a hedged position that did not perform as expected (¶ 219).

The Complaint also asserts in conclusory fashion that Morgan Stanley's financial statements violated various Generally Accepted Accounting Principles ("GAAP") and Rules of the Financial Accounting Standards Board ("FASB") (¶¶ 132-45, 230, 232-39, 255-62), did not properly account for its products (¶¶ 182-83), falsely overstated assets, understated liabilities and inflated stockholders' equity (¶¶ 255-56).

## ARGUMENT

To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).  It therefore must "rest[] on 'factual allegations sufficient to raise a right to relief above the speculative level.'" Plumbers & Steamfitters Local 773 Pension Fund v. CIBC, 694 F. Supp. 2d 287, 296 (S.D.N.Y. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiffs instead must plead enough facts to 'nudge[] their claims across the line from conceivable to plausible.'" In re Lehman Bros. Sec. & ERISA Litig., 683 F. Supp. 2d 294, 303 (S.D.N.Y. 2010) (internal citations omitted) [hereinafter Lehman I].

8

I.     THE COMPLAINT FAILS TO STATE AN IMPRUDENCE CLAIM

    A.     Defendants Morgan Stanley, MS&Co, the MS&Co Board and John
           Mack Were Not Fiduciaries with Regard to Plan Investments

As in Coulter, Plaintiffs' claims against Morgan Stanley, MS&Co, the MS&Co Board and Mr. Mack must be dismissed because they were not "fiduciaries with respect to plaintiffs' ability to invest through the Plan in [Company] stock." Gray, 662 F.3d at 136.

In Gray, the Second Circuit affirmed the dismissal of similar claims against Citigroup and Citibank because Citigroup's ERISA plans did not assign them any fiduciary duties "to add or eliminate investment funds," and they had no authority to veto investment options selected by the persons who had such duties. See id. Like the Citigroup plans in Gray, the Plans here do not assign Morgan Stanley, MS&Co, the MS&Co Board or Mr. Mack any fiduciary duties regarding the Plan's investment options or the management of Plan assets, nor do they give them any authority over such matters. Conceding as much, Plaintiffs baldly assert that these Defendants were each "de facto" fiduciaries. (¶ 42.) But the Complaint fails to make the showing required under Gray to plead "de facto" fiduciary status. It alleges no particular "actions" taken by Morgan Stanley, MS&Co, the MS&Co Board or Mr. Mack regarding the selection of Plan investment options or the management of Plan assets. Gray, 662 F.3d at 136.[6]

Nor can Morgan Stanley or MS&Co be deemed fiduciaries based on actions by employees and directors who were named fiduciaries. (¶¶ 45, 46(a), 50-51.) "[The] Second Circuit [has] held that an employer cannot be held liable as a de facto fiduciary, where in

---

[6] Plaintiffs' assertion that Morgan Stanley possessed "authority to establish rules regarding the transfer of Company Stock" (¶ 46(d)) is contradicted by the Plan documents, which expressly confer that authority on the Plan Administrator. (See Ex. F, ESOP art. 3.08(c).) The assertion that Morgan Stanley actually "exercised such authority" (¶ 46(d)) is unsupported by any alleged particular "actions" and thus must be disregarded. See Gray, 662 F.3d at 136. Although Judge Sweet held in 2010 that the Complaint adequately alleged that Morgan Stanley was a de facto fiduciary, see Morgan Stanley, 696 F. Supp. 2d at 356, that holding cannot survive the Second Circuit's decision in Gray.

accordance with ERISA, the employer has designated specific individuals or entities to serve as fiduciaries." In re Bausch & Lomb Inc. ERISA Litig., No. 06-CV-6297, 2008 WL 5234281, at *11 (W.D.N.Y. Dec. 12, 2008) (citing Crocco v. Xerox Corp., 137 F.3d 105, 107 (2d Cir. 1998)). This Court has, moreover, repeatedly refused to assign fiduciary status based on a *respondeat superior* or agency theory. See, e.g., In re Bank of Am. Corp. Sec., Derivative & ERISA Litig., 756 F. Supp. 2d 330, 347 (S.D.N.Y. 2010) (rejecting ERISA claim premised on "principles of agency and respondeat superior liability"); Morgan Stanley, 696 F. Supp. 2d at 355-56 (rejecting claim of fiduciary responsibility based on *respondeat superior* theory).

B.    Plaintiffs Fail to Allege Abuse of Discretion by the Named Fiduciaries

Unlike the other Defendants, the Investment Committee and the Plan Administrator were "named fiduciaries," the former for the 401(k) Plan and the latter for both Plans. The Investment Committee was responsible for selecting the investment options under the 401(k) Plan (see Ex. E 401(k) Plan § 8(b)(i)), and the Plan Administrator had the authority to impose "such process, conditions or limitations as [she] shall determine" on the selection of investments by 401(k) Plan participants (see id. § 8(d)(i)). Cf. Gray, 662 F.3d at 136 (holding that the Citigroup plan investment and administration committees were fiduciaries as to investments because they possessed, respectively, authority to "add or eliminate investment funds" and to "impose timing and frequency restrictions on participants' investment selections").

Importantly, neither the Investment Committee nor the Plan Administrator had authority to discontinue investment in Company stock. To the contrary, the 401(k) Plan mandated that "[t]he Investment Funds" offered to Plan participants "*shall consist of* the Morgan Stanley Stock Fund" and other options to be selected by the Investment Committee (Ex. E, 401(k) Plan § 8(b)(i) (emphasis added)). It also required that the MSSF "be invested and reinvested

*exclusively* in Morgan Stanley Stock" (id. § 8(b)(ii)(A) (emphasis added)).[7] The ESOP similarly

required that "Employer Contributions to the Plan *shall* be invested in shares of Company Stock"

(Ex. F, ESOP art. 4.01(a) (emphasis added); Ex. G, 2007 SPD at 6).

As Defendants explained in <u>Coulter</u>, while the <u>Gray</u> court held that similar requirements

in Citigroup's plan did not render fiduciary conduct "beyond [the Court's] power to review,"

<u>Gray</u>, 662 F.3d at 139, the Second Circuit joined other circuit courts in holding that ERISA

fiduciaries "are entitled to a presumption" that investment of plan assets in company stock is

prudent. <u>See Gray</u>, 662 F.3d at 137-40 (citing <u>Moench v. Robertson</u>, 62 F.3d 553 (3d Cir. 1995)

and decisions of other circuit courts adopting so-called "Moench presumption").[8]  In keeping

with that presumption, the conduct of fiduciaries regarding investments in company stock

"should be reviewed for an abuse of discretion." <u>Id.</u> at 136.  The court recognized that the

degree of judicial scrutiny depends on "the degree of discretion a plan gives its fiduciaries to

invest." <u>Id.</u> at 138.  "[A] fiduciary's failure to divest from company stock is less likely to

constitute an abuse of discretion if the plan's terms require – rather than merely permit –

investment in company stock." <u>Id.</u> at 139.

Where such investment is required, "*only* circumstances placing the employer in a 'dire

situation' that was objectively unforeseeable by the settlor could require fiduciaries to override

plan terms." <u>Id.</u> at 140 (quoting <u>Edgar</u>, 503 F.3d at 348) (emphasis added)).  As the court

explained, this "substantial shield" means that the complaint fails to state a claim if, on the facts

---

[7]  Plan provisions such as these have been held to require investment in company stock notwithstanding exceptions permitting short term investments in cash or other liquid instruments as necessary to fund withdrawals. <u>See, e.g.</u>, <u>In re Citigroup ERISA Litig.</u>, No. 07 Civ. 9790, 2009 WL 2762708, at *8 (S.D.N.Y. Aug. 31, 2009), <u>aff'd sub nom. Gray</u>, 662 F.3d at 128; <u>In re Wachovia Corp. ERISA Litig.</u>, No. 3:09cv262, 2010 WL 3081359, at *9-10 (W.D.N.C. Aug. 6, 2010); <u>Kirschbaum v. Reliant Energy, Inc.</u>, 526 F.3d 243, 247, 255 (5th Cir. 2008).

[8]  <u>See also Edgar v. Avaya, Inc.</u>, 503 F.3d 340, 347-48 (3d Cir. 2007); <u>Kirschbaum</u>, 526 F.3d at 250; <u>Kuper v. Iovenko</u>, 66 F.3d 1447, 1459 (6th Cir. 1995); <u>Quan v. Computer Scis. Corp.</u>, 623 F.3d 870, 883 (9th Cir. 2010).

allegedly known to the fiduciary, "there is room for reasonable fiduciaries to disagree as to whether they are bound to divest from company stock." Id. at 140 (quoting Quan, 623 F.3d at 882). The Complaint here fails to plead that any Plan fiduciaries had information during any part of the Class Period that would cause them to conclude that Morgan Stanley was facing the sort of "dire situation" that left no "room to disagree" that they were compelled to discontinue investment in Company stock, despite the Plans' requirements. Gray, 662 F.3d at 140-41; see also In re Bear Stearns Cos. Sec. Derivative & ERISA Litig., 763 F. Supp. 2d 423, 572 (S.D.N.Y. 2011) (plaintiffs must plead that fiduciary had "knowledge at a pertinent time" of a "'dire situation sufficient to compel [a sell-off]'") (quoting Lehman I, 683 F. Supp. 2d at 301).[9]

Plaintiffs' prudence claim is essentially identical to the claim rejected by the Second Circuit in Gray. The Gray plaintiffs alleged that Citigroup stock was an imprudent investment in 2007 and early 2008 (the same time period at issue here) because Citigroup (like Morgan Stanley) had made "ill-advised investments in the subprime-mortgage market" and the defendants (as here) allegedly knew of that market's "impending collapse." Gray, 662 F.3d at 140. The Second Circuit held that allegations such as these – essentially, that a company "made bad business decisions" – are inadequate to plead that the company faced a "dire situation," "much less that the Investment Committee or the [Plan Administrator] knew or should have known that the situation was dire." Id. at 140-41. And even if any defendant "could have foreseen that Citigroup would lose tens of billions of dollars" on its subprime investments, he or she "would not have been compelled to find that Citigroup, with a market capitalization of almost $200 billion, was in a dire situation." Id. at 141.

---

[9] The "dire circumstances" standard applies even if the plan does not require investment in company stock. In Gearren, the plan directed that the stock fund be invested only "primarily" (i.e., not exclusively) in company stock, yet the Second Circuit still applied the "dire circumstances" test. See 660 F.3d at 609-10.

The Second Circuit's reasoning compels the same conclusion in this case. The Complaint fails to show that any alleged fiduciary could have foreseen Morgan Stanley's alleged losses in the fourth quarter of 2007. But even if they could have, the losses would hardly compel the conclusion that Morgan Stanley was in a "dire situation." To the contrary, Morgan Stanley's market capitalization as of the end of its third quarter 2007 was almost $56 billion (Ex. M, Market Capitalization Chart), and it reported a profit and paid dividends for each of the first three quarters of 2007. (Ex. B, Morgan Stanley 2007 Form 10-K (Nov. 30, 3007) ("2007 10-K"), at 178).[10]

Moreover, the Complaint fails to identify *when* Defendants should have perceived that Morgan Stanley faced a dire situation that required them to violate the Plans and discontinue investing in Company stock. See Bear Stearns, 763 F. Supp. 2d at 574 (dismissing claim, despite Bear Stearns' actual collapse, where court was "unable to find a time when . . . Defendants should have divested the Plan of Bear Stearns stock"); Lehman I, 683 F. Supp. 2d at 302 (allegations that there were "clear warning signs" and that defendants "knew or should have known" company's "true financial state" are insufficient, notwithstanding that "a corporate collapse was 'imminent' at some point prior in time" to bankruptcy filing). Plaintiffs assert that Morgan Stanley stock was an imprudent investment as of August 9, 2006 (¶¶ 1, 5), but the

---

[10] Plaintiffs allege that Morgan Stanley's stock price dropped approximately 60% between June 2007 and July 2008, when the Complaint was filed. (¶ 12.) However, "'[m]ere stock fluctuations, even those that trend downhill significantly, are insufficient'" to overcome the presumption that an investment in company stock is prudent. Gray, 662 F.3d at 140 (quoting Wright v. Or. Metallurgical Corp., 360 F.3d 1090, 1099 (9th Cir. 2004)). The Gray Court specifically noted that claims have been dismissed under Moench despite alleged stock drops of similar or much greater magnitude. See id. at 137-38 (referencing cases with stock drops as large as 80%); see also Kuper, 66 F.3d at 1451 (80% drop); Bank of Am., 756 F. Supp. 2d at 354 (83% drop); Bear Stearns, 763 F. Supp. 2d at 573-74 (97% drop); In re Am. Express Co. ERISA Litig., 762 F. Supp. 2d 614, 628 (S.D.N.Y. 2010) (78% drop); In re SLM Corp. ERISA Litig., No. 08-4334, 2010 WL 3910566, at *9 (S.D.N.Y. Sept. 24, 2010) (85% drop); Fisher v. JP Morgan Chase & Co., 703 F. Supp. 2d 374, 384-85 (S.D.N.Y. 2010) (70% drop); Wachovia, 2010 WL 3081359, at *14 (87% drop); Smith v. Delta Air Lines, Inc. 422 F. Supp. 2d 1310, 1314, 1331 (N.D. Ga. 2006) (92% drop); In re McKesson HBOC, Inc. ERISA Litig., 391 F. Supp. 2d 812, 838 (N.D. Cal. 2005) (75% drop).

Complaint allegations provide no basis to question the presumptive prudence of Defendants' conduct at that time, or any particular time thereafter.  To the contrary, it alleges that, *nearly a year later*, in June 2007, Morgan's Stanley's stock price allegedly rose to an all-time high of $90.95 (¶ 164), and Morgan Stanley reported record earnings for the first two quarters of 2007 (¶¶ 154, 165).  Indeed, Plaintiffs' claims in this case are incompatible with their position taken in opposing Defendants' motion to dismiss in <u>Coulter</u>, where Plaintiffs argue that Morgan Stanley only faced a "dire situation" *after* Lehman Brothers' collapse in mid-September 2008 (<u>Coulter</u> Opp. 3, 23, <u>Coulter</u> Dkt. No. 21), well after the period covered by this Action, which ends in July 2008.[11]

Finally, at the same time that Morgan Stanley announced its write-down due to proprietary subprime trading losses in the fourth quarter of 2007, China Investment Corporation – the Chinese sovereign wealth fund – made a $5.5 billion capital investment in the Company. (Ex. C, Morgan Stanley Form 8-K (Dec. 19, 2007).)  The contemporaneous investment in Morgan Stanley by a sophisticated investor refutes Plaintiffs' claim that Morgan Stanley was facing such "dire circumstances" that no reasonable fiduciary could consider themselves bound

[11] Aside from Judge Sweet's denial of the initial motion to dismiss in this action, all but two ERISA cases filed in this Circuit based on the financial crises in 2007 and 2008 have been dismissed, and those two cases are either no longer good law or are distinguishable.  In Veera v. Ambac Plan Administrative Committee, 769 F. Supp. 2d 223, 230 n.2 (S.D.N.Y. 2011) (observing in dicta that the alleged facts would likely have overcome the Moench presumption as Ambac's stock price fell 99%), the Court declined to apply the Moench presumption at the pleading stage, which is now contrary to the established law in this Circuit.  In the other, In re AIG, Inc. ERISA Litig. II, No. 08 Civ. 5722 (LTS) (KNF), 2011 WL 1226459 (S.D.N.Y. Mar. 31, 2011), Judge Swain found that, unlike in the present case, the plan language did not unambiguously require that AIG offer company stock, see id. at *6, and there was a federal criminal investigation relating to the allegations in the complaint, id. at *7.  This Court has even rejected similar imprudence claims against fiduciaries of the Bear Stearns and Lehman ERISA plans, notwithstanding that those organizations (unlike Morgan Stearns) ultimately collapsed or had to be rescued.  See In re Lehman Bros. Sec. & ERISA Litig., No. 09-MD-02017, 2011 WL 4632885, at *2, *5 (S.D.N.Y. Oct. 5, 2011) (rejecting allegations that Bear Stearns' failure, and the fact that "Lehman was the most highly leveraged of the remaining large investment banks," "ought to have alerted Lehman that it would suffer the same fate [as Bear Stearns]"; while such events are "no doubt . . . cause for concern . . . cause for concern is not a dire situation") [hereinafter Lehman II]; Bear Stearns, 763 F. Supp. 2d at 555-60, 574-75 (dismissing allegations that, based on long list of "warning signs" regarding the subprime housing decline, defendants should have known that Bear Stearns would ultimately need to be rescued).

to continue following the Plans' requirements. See Lehman II, 2011 WL 4632885, at *5 n.42 (noting, in dismissing claims, that notwithstanding "Lehman's struggles, the risks of mortgage lending and Bear Stearns's failure," a Korean bank "offered to buy Lehman at 1.5 times book value" just a month before its bankruptcy).[12]

C.   Company Contributions Were Not Fiduciary Acts

In addition to claiming that Defendants acted imprudently by not preventing continued Plan investment in Company stock, Plaintiffs assert that Defendants breached a fiduciary duty of prudence by allegedly deciding to make Company Contributions to the Plans in the form of Company stock rather than cash.[13] (¶¶ 6, 77.)

As Defendants have shown in Coulter, decisions regarding the form of company contributions to ERISA plans are not fiduciary acts. See In re Wachovia Corp. ERISA Litig., No. 3:09cv262, 2010 WL 3081359, at *11 (W.D.N.C. Aug. 6, 2010). In Wachovia, the plaintiffs alleged that Wachovia had discretion "to determine *what portion, if any, of [matching contributions and discretionary non-matching] contributions would be made in Wachovia stock.*" Id. (emphasis added). The Court rejected plaintiffs' argument that such contribution decisions implicate fiduciary duties under ERISA. Id.; see also In re RNC Litig., No. 04-5068 (SRC), 2006 WL 753149, at *6 n.4 (D.N.J. Mar. 21, 2006) (decisions whether to make profit sharing contributions and whether to change a matching percentage are "functions of amending

---

[12] Plaintiffs' claim that Defendants were imprudent because they failed to perform due diligence with respect to Morgan Stanley before including its stock in the Plans (¶ 267) must also fail because the Complaint does not adequately allege that the investment was in fact imprudent. See Gray, 662 F.3d at 141 (dismissing allegations of failure to investigate where plaintiffs had failed to allege facts that would overcome the presumption that company stock was prudent investment).

[13] Although the Complaint asserts that Morgan Stanley and MS&Co participated in decisions regarding Company Contributions (¶¶ 46(c), 50(c)), the Complaint alleges that these decisions were made by Mr. Mack and the Executive Committee of the MS&Co Board (¶¶ 49(c), 50(c)). As discussed above (see supra p. 9-10), ERISA duties are personal and cannot be attributed on the basis of agency or *respondeat superior* principles.

or contributing to the Plan" and "do not implicate ERISA's fiduciary duties"); Hunter v. Caliber

Sys. Inc., 220 F.3d 702, 719-20 (6th Cir. 2000) (decision to transfer stock rather than cash to

401(k) plan "did not implicate fiduciary concerns because it did not involve investment of plan

assets or plan administration" and was therefore "a settlor function rather than a fiduciary

function"); Gay v. Medi-Ray, Inc., No. 01 Civ. 8497 (LMS), 2002 WL 34186938, *6 (S.D.N.Y.

July 26, 2002) (determination of amount of contribution to plan did not implicate a fiduciary

duty because amount contributed was a discretionary, not prescribed, amount).  Accordingly,

none of these Defendants could have breached a fiduciary duty in participating in such decisions.

See Pegram v. Herdrich, 530 U.S. 211, 226 (2000).

Moreover, even if a funding decision could somehow be viewed as a fiduciary act, the

Complaint fails to allege facts suggesting that it would have been imprudent to contribute

Company stock.  As Defendants explained in Coulter, even if made in cash, any Company

matching and profit-sharing contributions were required to be invested by the Plans in Company

stock.  The form of the initial contribution is thus immaterial.  The governing SPD explains that

Company Contributions are made in three ways: a Company Match, Profit Sharing Contributions

and Retirement Contributions.  A Company Match is invested in Company stock even if made in

cash.  As the SPD provides, such a Company Match may be "made in cash *and invested in the*

*[MSSF]* or may be made in shares of [Company] stock contributed directly to the ESOP."

(Ex. G, 2007 SPD at 6.)  A Profit Sharing Contribution is allotted "in the form of interests in the

MSSF" (id.), which invests only in Company stock (Ex. E, 401(k) Plan § 8(b)(i)).  Finally,

Retirement Contributions are not alleged to have ever been invested in Company stock.

II.   THE COMPLAINT FAILS TO STATE A DISCLOSURE CLAIM

   A. ERISA Imposes No Obligation to Provide the Information
      That Plaintiffs Allege Was Not Disclosed

The Second Circuit squarely rejected the assertion that a fiduciary's duty of loyalty under

ERISA includes "an obligation to provide plan participants and beneficiaries of the Plans with

complete and accurate information . . . regarding investment options . . . including investment in

the stock of the participant's employer" (¶ 289). See Gray, 662 F.3d at 142 ("We reject

[plaintiffs'] first theory of liability" – that defendants "'fail[ed]' to provide complete and accurate

information regarding . . . Citigroup'" – "because fiduciaries have no duty to provide Plan

participants with non-public information that could pertain to the expected performance of Plan

investment options."); Gearren, 660 F.3d at 610 ("[P]laintiffs cannot state a claim for relief based

on defendants' failure to disclose to participants information regarding . . . McGraw-Hill's

financial strength."). Plaintiffs' Second Cause of Action must be dismissed, because ERISA

does not require disclosure of information about a company's alleged "exposure to the risks

associated with the subprime market." Gray, 662 F.3d at 143. See also id. (where defendants

had warned that "the Stock Fund was an undiversified investment subject to volatility . . . .

[D]efendants had no duty to communicate a forecast as to when this volatility would manifest

itself in a sharp decline in stock price").

As the Second Circuit explained, ERISA's reporting and disclosure requirements

contained in 29 U.S.C. §§ 1021-1031 are "comprehensive." Gray, 662 F.3d at 142 (quotations

and citation omitted). These provisions "require[] plan administrators to 'describ[e] the

importance of diversifying the investment of retirement account assets,' and to inform

participants 'of the risk that holding more than 20 percent of a portfolio in the security of one

entity (such as employer securities) may not be adequately diversified." Id. (citations omitted)

17

(emphasis in <u>Gray</u>).  The "more general duty of loyalty" imposed by section 404(a) of ERISA does not extend to "a duty to provide participants with nonpublic information pertaining to specific investment options."  <u>Id.</u> at 143.  Plaintiffs do not allege that Defendants failed to comply with any of the express disclosure requirements of 29 U.S.C. §§ 1021-1031.  Nor could they, because Plan participants were warned that the risks of investing in the MSSF were "Very High" and that "[u]ndiversified funds" have "greater risk" because they are invested "in a single company."  (Ex. H, 401(k) Plan Fund Summary Guide, at 7.)

## B.   Morgan Stanley's Corporate Disclosures Were Not ERISA Communications

Even if the Complaint plausibly alleged that Defendants' corporate disclosures were actually misleading – which it does not (<u>see</u> <u>infra</u> pp. 19-21) – none of the statements Plaintiffs challenge was made by any Defendant in the capacity of a Plan fiduciary and therefore cannot be the basis for an ERISA claim.

As described above, a "threshold question" in any ERISA breach-of-fiduciary-duty case is whether the defendant was "acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." <u>Pegram</u>, 530 U.S. at 226.  Filing a statement with the SEC is *not* an ERISA fiduciary function. <u>Gearren</u>, 660 F.3d at 611 ("[D]efendants who signed or prepared the SEC filings were acting in a corporate, rather than ERISA fiduciary, capacity when they did so."); <u>In re WorldCom, Inc.</u>, 263 F. Supp. 2d 745, 766 (S.D.N.Y. 2003) (preparers of SEC filings "do not violate ERISA if the filings contain misrepresentations").  Nor do SEC filings become fiduciary communications under ERISA merely because they "were incorporated by reference in the SPD." <u>In re Am. Express Co. ERISA Litig.</u>, 762 F. Supp. 2d 614, 629-30 (S.D.N.Y. 2010) (dismissing for failure to allege defendants acted as fiduciaries); <u>see also</u> <u>Fisher</u>, 703 F. Supp. 2d at 385, 388 (same); <u>Gearren v. McGraw-Hill Cos., Inc.</u>, 690 F.

18

Supp. 2d 254, 272-73 (S.D.N.Y. 2010) (same).[14]  Instead, to plead that statements were made in a fiduciary capacity, the plaintiff must show that the defendants "'intentionally connected' their statements . . . to Plan benefits." In re Citigroup ERISA Litig., No. 07 Civ. 9790, 2009 WL 2762708, at *23 n.9 (S.D.N.Y. Aug. 31, 2009) (quoting Varity Corp. v. Howe, 516 U.S. 489, 504 (1996)).

Plaintiffs have not alleged that any challenged statement was an ERISA communication. With one exception – the 2007 SPD's indisputably accurate statement that the Plans were tax-favored retirement plans (¶ 61) – each communication specified in the Complaint was made in an SEC filing or to the general public (see ¶¶ 71, 155, 158, 166-67, 170, 172, 219, 224, 225, 227-31, 233-38).  The Complaint contains no allegation that any statement about the financial condition of Morgan Stanley was ever connected to Plan benefits.  Plaintiffs' allegations "do not suggest the kind of intentional connection the Supreme Court relied on to find a fiduciary relationship in Varity," and thus cannot state an ERISA disclosure claim.  Gray, 662 F.3d at 144 n.5.

In any event, Plaintiffs have failed to raise a plausible inference of any material misrepresentation or omission.  Plaintiffs allege that Morgan Stanley did not disclose its exposure to subprime losses (see ¶¶ 163, 184, 201, 220, 248, 252, 263), but that allegation is contradicted by the express risk disclosures in its public filings, which warned of market risk, including specifically risk related to mortgage-related investments (Ex. B, 2007 10-K at 14, 15).  Plaintiffs' allegations that Morgan Stanley misled the markets about its risk-management ability (see ¶¶ 170-73) are belied by the Company's disclosures that its hedging strategies and risk-

---

[11] See also Kirschbaum v. Reliant Energy, 526 F.3d 243, 257 (5th Cir. 2008); Benitez v. Humana, Inc., No. 3:08CV-211-H, 2009 WL 3166651, at *10 n.6 (W.D. Ky. Sept. 30, 2009) ("[T]he preparation of SEC filings is not a fiduciary act for purposes of ERISA, even if the SEC filings are incorporated by reference into ERISA documents.").

management techniques "may not be fully effective in mitigating [its] risk exposure in all market environments or against all types of risk" (Ex. B, 2007 10-K at 20).[15]  Nor does the Complaint identify any specific financial disclosure that was false as a result of supposedly flawed accounting policies.

That Morgan Stanley's public filings were not misleading is also apparent from Plaintiffs' failure to show that there was any material drop in the price of its stock when the purportedly withheld information was eventually disclosed. Allegations that Morgan Stanley's stock price declined at times during the relevant period (e.g., ¶ 12) and that "the gravity of the situation weighed on the stock" (¶ 210) fall short of showing that any loss was caused a failure to disclose information earlier – i.e., that the purported nondisclosures somehow "inflated" Morgan Stanley's stock price. It is not enough for Plaintiffs simply to recite the stock price on various dates (¶¶ 198, 216, 243, 250); they must show a decline in response to a particular disclosure. In another ERISA case that was similarly a "securities fraud case masquerading as an ERISA case," the district court properly concluded that "[l]oss causation is an element of the claim, and the

---

[15] Morgan Stanley's risk disclosures expressly warned investors about market risk, including risks to investments in mortgage-backed securities, and the possibility that hedging strategies might not be fully effective:

"Our results of operations may be materially affected by market fluctuations and by economic and other factors. The amount, duration and range of our market risk exposures have been increasing over the past several years, and may continue to do so. Our results of operations may be materially affected by market fluctuations due to economic factors." (Ex. B, 2007 10-K at 14; Ex. A, Morgan Stanley 2006 Form 10-K (Nov. 30, 2006) ("2006 10-K").)

"We also securitize and trade in a wide range of commercial and residential real estate and real estate-related whole loans, mortgages and other real estate and commercial assets and products, including residential and commercial mortgage-backed securities. These businesses could be adversely affected by a downturn in the real estate sector." (Ex. B, 2007 10-K at 15; Ex. A, 2006 10-K at 17.)

"[O]ur hedging strategies and other risk management techniques may not be fully effective in mitigating our risk exposure in all market environments or against all types of risk . . . . Some of our methods of managing risk are based upon our use of observed historical market behavior. As a result, these methods may not predict future risk exposures, which could be significantly greater than the historical measures indicate." (Ex. B, 2007 10-K at 20; Ex. A, 2006 10-K at 22.)

Plaintiff should be required to allege facts that show it." In re Coca-Cola Enters. Inc., ERISA Litig., No. 1:06-CV-0953 (TWT), 2007 WL 1810211, at *8 (N.D. Ga. June 20, 2007). The lack of any allegations here that would support a theory of loss causation supplies a further ground for dismissal.

### C. No Defendant Breached a Fiduciary Duty to Communicate with Plan Participants

Plaintiffs' Second Cause of Action also fails because the Complaint lacks any allegation either that any Defendant responsible for the challenged communications was a Plan fiduciary for purposes of providing information to Plan participants, or that the single Defendant who *was* a Plan fiduciary for these purposes plausibly breached any fiduciary duty.

An individual acts as a fiduciary with respect to an ERISA plan only to the extent that "the individual ha[s] discretion over the plan function in question." Citigroup, 2009 WL 2762708, at *7 (citing Pegram, 530 U.S. at 225-26). Plaintiffs here allege in a conclusory manner that "Plan-related communications" were "the fiduciary responsibility of all Defendants" (¶ 288), and that "Morgan Stanley" was "responsible for preparing and distributing communications to participants regarding the Plans" (¶ 46(b)). Plaintiffs admit, however, that Defendant Karen Jamesley was the sole Plan Administrator (¶¶ 29-30), and the person charged under ERISA with providing Plan participants certain information. See 29 U.S.C. §§ 1021-31. Accordingly, Ms. Jamesley is the only Defendant who could be plausibly alleged to have a fiduciary duty to communicate with Plan participants, and the disclosure claims against all other Defendants must be dismissed. See Gray, 662 F.3d at 143 ("[B]ecause neither Citigroup nor

Prince was a Plan administrator responsible for communicating with Plan participants . . . .
[N]either acted as a Plan fiduciary when making the statements at issue.").[16]

As for Ms. Jamesley, Plaintiffs do not allege that she was responsible for any of the
communications they challenge.  The Complaint does not allege that Ms. Jamesley prepared any
SEC filings or press releases.  Rather, each of these communications is attributed to "Morgan
Stanley." (See, e.g., ¶¶ 170, 172, 200, 207, 224-41.)  Nor do Plaintiffs plead that Ms Jamesley
knew any of the alleged facts omitted from Morgan Stanley's filings, which precludes her
liability.  See Gray, 662 F.3d at 144 (a fiduciary "may only be held liable for misstatements
when 'the fiduciary knows those statements are false or lack a reasonable basis in fact'")
(citation omitted).  In fact, apart from identifying Ms. Jamesley's title at Morgan Stanley and her
role as Plan Administrator and a Plan fiduciary (see ¶¶ 29-30, 48), the Complaint does not even
mention Ms. Jamesley's name.  There is, in short, no plausible basis to believe that Ms. Jamesley
had any responsibility for any purportedly false or inaccurate communications to Plan
participants.[17]  See Gray, 662 F.3d at 144 ("Plaintiffs also do not state a claim for relief based on

---

[16] See also Bear Stearns, 763 F. Supp. 2d at 578 (where "plan agreement established a committee to serve
as plan administrator and left limited fiduciary roles for the company and its directors . . . Bear Stearns and its
directors and executive committee members have limited fiduciary roles which do not include . . . communications
with the Plan Participants regarding the plan[, and t]herefore, statements made by the Company and these persons,
be they SEC filings, press releases, or speeches, are not statements made while 'acting as a fiduciary' for which they
are liable under ERISA") (citation omitted).

[17] Similarly, Plaintiffs fail to allege facts that would suggest Ms. Jamesley – or any other Defendant – had
knowledge that Morgan Stanley was allegedly not complying with FASB rules and GAAP (e.g., ¶¶ 255-62).  Nor do
Plaintiffs allege what effect, if any, the supposed noncompliance had on Morgan Stanley's financial statements or its
risk-management processes.  The conclusory assertions that Morgan Stanley should have anticipated possible losses
and disclosed that information sooner (see ¶¶ 186-87, 197, 201, 220) fail to support any claim that any Defendant
breached any duty under ERISA.

alleged misstatements made by the Administration Committee because they have not adequately alleged that defendants made statements they *knew* to be false").[18]

### III. THE COMPLAINT FAILS TO STATE CLAIMS FOR CONFLICT OF INTEREST, FAILURE TO MONITOR OR CO-FIDUCIARY LIABILITY

Plaintiffs' conflict-of-interest charge (Third Cause of Action) must be dismissed because Plaintiffs have not shown any actual conflict or any connection between the supposed conflict and any alleged harm to the Plan. The allegations that Defendants had "significant" investments in Morgan Stanley stock (¶ 302) and were compensated based on the stock's performance (¶¶ 271-72, 303) are inadequate to plead a conflict of interest. See Gray, 662 F.3d at 145 (affirming dismissal of conflict-of-interest claim in absence of "any specific facts suggesting that defendants' investments in Citigroup stock prompted them to act against the interests of Plan participants," and holding that such a claim cannot be based "solely on the fact that an ERISA fiduciary's compensation was linked to the company's stock"); In re Polaroid ERISA Litig., 362 F. Supp. 2d 461, 479 (S.D.N.Y. 2005) (dismissing claim for conflict of interest where only allegation was that defendants' compensation was stock-based).

Plaintiffs' assertions that Defendants failed to monitor other fiduciaries (Fourth Cause of Action) and are liable as co-fiduciaries (Fifth Cause of Action) fail to state a claim because, as shown above, the Complaint does not state a claim that any Defendant breached any duty.

---

[18] See also Gearren, 660 F.3d at 611 (affirming dismissal where "Plaintiffs have not provided any specific allegations as to how [defendant] knew or should have known that S & P's rating practices were improper or that, consequently, the SEC filings contained misstatements or omissions"); Am. Express, 762 F. Supp. 2d at 630 (dismissing where complaint "fails to show that the persons who signed the challenged SEC filings were the same persons who had the responsibility for the ERISA disclosures"); Bank of Am., 756 F. Supp. 2d at 358-59 (dismissing where complaint "does not plausibly allege that the members of the Benefits Committee knew, or should have known, of negative information," and there are "no allegations that members of the Benefits Committee were involved in valuing BofA assets, preparing financial statements or evaluating BofA's financial position"); Fisher, 703 F. Supp. 2d at 388 (dismissing where "plaintiffs have failed to allege which defendants, if any, who prepared the purportedly misleading SEC filings were acting as fiduciaries . . . when making those statements").

23

Having failed to plead a valid primary breach of any ERISA duty, Plaintiffs have failed to plead

an essential element of their failure-to-monitor and co-fiduciary claims.  See Gray, 662 F.3d at

145 (monitoring and co-fiduciary claims "cannot stand if plaintiffs fail to state a claim for relief"

as to primary claims); Gearren, 660 F.3d at 611 (same); Bank of Am., 756 F. Supp. 2d at 359

(same).  Nor have Plaintiffs alleged other essential elements of a co-fiduciary claim.[19]

---

[19] Plaintiffs' conclusory allegations that Defendants concealed, enabled and failed to remedy co-fiduciaries' failures (¶¶ 316-26) are insufficient to state a claim for co-fiduciary liability, because no facts are pled that any Defendant engaged in any action to conceal or enable another's breach, or had knowledge of any such breach.  See, e.g., Lee v. Burkhart, 991 F.2d 1004, 1010-11 (2d Cir. 1993) (dismissing co-fiduciary claim that failed to allege actual knowledge of co-fiduciary's breach); Donovan v. Cunningham, 716 F.2d 1455, 1475 (5th Cir. 1983) (to claim co-fiduciary liability, plaintiff must allege actual knowledge of fiduciary's breach); Stein v. Smith, 270 F. Supp. 2d 157, 175 (D. Mass. 2003) (unsupported allegation that defendants knew or should have known of breach is inadequate).

CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Complaint be dismissed for failure to state a valid claim. Given that Plaintiffs have already amended their Complaint and had ample opportunity to plead their claims, dismissal should be with prejudice.[20]

Dated:   New York, New York
         March 26, 2012

DAVIS POLK & WARDWELL LLP

By:   /s/ Robert F. Wise, Jr.
      Robert F. Wise, Jr.

Robert F. Wise, Jr.
robert.wise@davispolk.com
Charles S. Duggan
charles.duggan@davispolk.com

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Attorneys for Defendants*

---

[20] Plaintiffs assert that they are entitled to amend their complaint again due to the supposedly "new pleading standards" for ERISA cases in the Second Circuit. (Ex. K, at 2.) Yet the Second Circuit's decisions in Gray and Gearren did not create a "new" standard for ERISA cases, but rather affirmed the application of the Moench presumption, which had already been widely adopted by District Courts in this Circuit. See Bear Stearns, 763 F. Supp. 2d at 571-72. Here, Plaintiffs have already amended their Complaint once, and also filed a second complaint involving substantially identical claims and parties and covering part of the same period, which they have also already amended. Indeed, the Second Circuit issued its decisions in Gray and Gearren *before* the parties fully briefed Defendants' motion to dismiss the Coulter action, yet Plaintiffs never requested to amended their Coulter complaint before such briefing was completed.

25