UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE MORGAN STANLEY ERISA
LITIGATION

THIS DOCUMENT RELATES TO:

ALL ACTIONS

MASTER FILE NO.:

07 Civ. 11285 (DAB)

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Attorneys for Defendants*

TABLE OF CONTENTS
_____

PAGE

TABLE OF AUTHORITIES……………………………………………………………...ii

I.      THE COMPLAINT FAILS TO STATE AN IMPRUDENCE CLAIM…………………..1

        A.      Company Contributions Are Not Fiduciary Acts…………………………………1

        B.      The Form of the Company Contributions Was Immaterial………………………4

        C.      Defendants Were Not Fiduciaries with Regard to Company Contributions………5

        D.      Plaintiffs Have Failed to Plead Abuse of Discretion……………………………...6

II.     THE COMPLAINT FAILS TO STATE A DISCLOSURE CLAIM……………………..7

III.    THE COMPLAINT FAILS TO STATE CLAIMS FOR CONFLICT
        OF INTEREST, FAILURE TO MONITOR OR CO-FIDUCIARY LIABILITY………..8

CONCLUSION…………………………………………………………………………...10

TABLE OF AUTHORITIES

CASES

PAGE

Akers v. Palmer, 71 F.3d 226 (6th Cir. 1995)...................................................................3-4

Gay v. Medi-Ray, Inc., No. 01 Civ. 8497 (LMS), 2002 WL 34186938
   (S.D.N.Y. July 26, 2002) ............................................................................................ 3

Gearren v. McGraw-Hill Cos., 660 F.3d 605 (2d Cir. 2011)............................................. passim

Gray v. Citigroup, Inc., 662 F.3d 128 (2d Cir. 2011) .......................................................passim

Hughes Aircraft Co. v. Jacobson, 525 U.S. 432 (1999)...................................................1-2

Hunter v. Caliber Sys., Inc., 220 F.3d 702 (6th Cir. 2000)............................................... 2

In re Am. Express Co. ERISA Litig., 762 F. Supp. 2d 614 (S.D.N.Y. 2010) ................................ 9

In re Bank of Am. Corp. Secs., Derivative & ERISA Litig.,
   756 F. Supp. 2d 330 (S.D.N.Y. 2010)................................................................... 8

In re Citigroup ERISA Litig., No. 07 Civ. 9790, 2009 WL 2762798
   (S.D.N.Y. Aug. 31, 2009), aff'd sub nom., Gray v. Citigroup, Inc.,
   662 F.3d 128 (2d Cir. 2011)........................................................................ 6

In re McKesson HBOC, Inc. ERISA Litig., 391 F. Supp. 2d 812
   (N.D. Cal. 2005)..................................................................................... 5

In re RNC Litig., No. 04-5068 (SRC), 2006 WL 753149 (D.N.J. Mar. 21, 2006)......................... 3

In re Sprint Corporation ERISA Litig., 388 F. Supp. 2d 1207 (D. Kan. 2004)............................. 8

In re Wachovia Corp. ERISA Litig., No. 03:09cv262, 2010 WL 3081359
   (W.D.N.C. Aug. 6, 2010)......................................................................... 2

Lockheed Corp. v. Spink, 517 U.S. 882 (1996)...................................................... 2

Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995)................................................... 7

Moore v. Reynolds Metals Co. Ret. Program, 740 F.2d 454 (6th Cir. 1984)................................ 3

Despite purportedly narrowing the case, Plaintiffs continue to assert five claims against Defendants – each of which must be dismissed under the Second Circuit's holdings in Gray v. Citigroup, Inc., 662 F.3d 128 (2d Cir. 2011), and Gearren v. McGraw-Hill Cos., 660 F.3d 605 (2d Cir. 2011). Plaintiffs' central claim is that Defendant Mack, Morgan Stanley's Chief Executive Officer at the time, breached a fiduciary duty by directing that Morgan Stanley's Company Contributions be made in stock. As a matter of law, however, a sponsor's decisions about what to contribute to an ERISA plan are not fiduciary acts. Moreover, even if they were, Plaintiffs fail to rebut the presumption adopted by the Second Circuit in Gray that any investment by an ESOP or EIAP in company stock is prudent. See 662 F.3d at 138; see also Gearren, 660 F.3d at 610. Plaintiffs instead ignore those holdings and argue that Morgan Stanley's contributions are governed by the prudent man standard, even though the Second Circuit rejected precisely that argument in Gray. See 662 F.3d at 138-39.

Plaintiffs' arguments in support of their disclosure claim cannot avoid the Second Circuit's clear holdings that ERISA does not require companies to disclose non-public information. The remaining claims for conflict of interest, co-fiduciary liability, and failure to monitor also must be dismissed, because Plaintiffs have not pled any primary breach of ERISA.

## I.      THE COMPLAINT FAILS TO STATE AN IMPRUDENCE CLAIM

### A.      Company Contributions Are Not Fiduciary Acts

Plaintiffs' claim based on Morgan Stanley's decision (acting through its CEO, Mr. Mack) to fund Company Contributions with stock fails because such decisions about how to fund a plan – when, how much, and in what way – are not fiduciary acts under ERISA. These are aspects of settling a trust, not of managing its assets as a fiduciary. For this reason, courts have correctly recognized that establishing, funding, amending and terminating an ERISA plan are not governed by ERISA's fiduciary rules. See Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 443

(1999); Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996); Hunter v. Caliber Sys., Inc., 220

F.3d 702, 718 (6th Cir. 2000).  These are aspects of bestowing benefits on plan participants,

which ERISA does not require companies to do.  Rather, ERISA requires that, once such benefits

have been bestowed, persons entrusted with safeguarding them do so prudently, with investments

in company stock being presumptively prudent.  Gray, 662 F.3d at 138.  Mr. Mack's decisions

that Morgan Stanley would make contributions in Company stock – *i.e.*, would bestow a benefit

on the Plans in the form of stock – are simply not fiduciary acts governed by ERISA's duty of

prudence.

Plaintiffs fail to distinguish In re Wachovia Corp. ERISA Litig., No. 03:09cv262, 2010

WL 3081359 (W.D.N.C. Aug. 6, 2010).  The decision in Wachovia was not only about the

amount of the company's contribution (Opp. 17), but also about *whether to contribute Wachovia*

*stock,* see 2010 WL 3081359, at *11.  The fact that the defendants in Wachovia had discretion,

as a business matter, to decide whether to contribute company stock did not cause them to be

fiduciaries of plan participants when making that decision.  See id.  The Sixth Circuit reached a

similar conclusion in Hunter v. Caliber Systems that the defendants' decision whether to transfer

"cash, securities or other properties" to a 401(k) plan was not a fiduciary decision governed by

ERISA duties of prudence, but rather was "purely a business decision."  220 F.3d at 219-20.

"[T]he mere fact that [the defendants] exercised some form of discretion," the court explained,

"is an insufficient basis for transforming a non-fiduciary act into a fiduciary act."  Id. at 720.

The same is true here.  That Mr. Mack could choose, as a business matter, to contribute either

stock or cash does not mean that, in making that choice on behalf of Morgan Stanley, he was also

acting as a fiduciary of the Plan's participants.  Indeed, the notion that Mr. Mack was a fiduciary

of *both* Morgan Stanley *and* the Plan when making that choice is nonsensical.

Plaintiffs concede, as they must, that a decision whether to make any contribution at all is not a fiduciary act under ERISA. (Opp. 17.) They likewise concede that decisions about the amount of a contribution, or whether to change a matching percentage, are not governed by ERISA. (Id.) Yet Plaintiffs illogically insist that the purely voluntary, non-fiduciary choice whether to make a contribution is transformed into a fiduciary act if the contributor elects to contribute *stock* rather than cash. That contention is unsupported by anything in ERISA or any backdrop principle of fiduciary relationships. Plaintiffs identify no basis for distinguishing the funding decisions in the cases relied upon by Defendants from Mr. Mack's election to make contributions in Company stock. In In re RNC Litigation, the court held that decisions regarding whether to make profit sharing contributions and to change the company's matching percentage were "functions of amending or contributing to the Plan" which "do not implicate ERISA's fiduciary duties." No. 04-5068 (SRC), 2006 WL 753149, at *6 n.4 (D.N.J. Mar. 21, 2006). See also Gay v. Medi-Ray, Inc., No. 01 Civ. 8497 (LMS), 2002 WL 34186938, at *6 (S.D.N.Y. July 26, 2002) ("[T]he determination of contribution amounts to the Plan does not implicate a fiduciary duty."); Akers v. Palmer, 71 F.3d 226, 230 (6th Cir. 1995) (holding that ERISA did not empower courts to "decide which benefits employers must confer upon their employees") (citing Moore v. Reynolds Metals Co. Ret. Program, 740 F.2d 454, 456 (6th Cir. 1984)).

As the Sixth Circuit observed in Akers, "an employer has no affirmative duty to create a benefit plan for its employees." 71 F.3d at 230. "Neither Congress nor the courts are involved in either the decision to establish a plan or in the decision concerning which benefits a plan should provide." Moore, 740 F.2d at 456. ERISA does not require that a plan be *funded* prudently, which is what Plaintiffs appear to be arguing. Indeed, the very concept of "prudent funding" makes no sense. As the Sixth Circuit explained in Akers, 71 F.3d at 230, "*only* actions

3

respecting the *administration* or *management* of plan 'assets' are subject to fiduciary standards"

(emphasis in original).  Thus, only after Morgan Stanley contributed assets to its plans did

fiduciary duties attach – to the persons entrusted by the Plan documents with the administration

and management of those assets, and with investments in Company stock being presumptively

prudent.

> B.      The Form of the Company Contributions Was Immaterial

Plaintiffs' claim fails for the additional reason that, even if Mr. Mack had decided (as

they contend he should have) to contribute cash, the Plan was required to invest that cash in

Company stock.  Mr. Mack's decision to contribute stock thus made no difference, and thus

cannot have been imprudent.  Plaintiffs assert that the Plan documents are "ambiguous" on this

point (Opp. 18), but that claim is refuted by the plain text of the Plan and SPD.  They clearly

state that Company Contributions, even if made in cash, must be invested in Company stock.

(Defs.' Mem. 5-6.)  The SPD provides that "[t]he Company Match is allocated to the ESOP and

may be *made in cash and invested in the [MSSF]* or may be made in shares of [Company] stock

contributed directly to the [MSSF]."  (Ex. G,[1] 2007 SPD, at 6 (emphasis added).)  Either way,

the Company Contribution is invested in the MSSF.  And the MSSF, in turn, must be invested in

Morgan Stanley stock.  (Id.)

Nor did section 7.04(d)(i) of the ESOP did provide the Plan Administrator with a

mechanism to prevent cash contributions from being invested in Company stock, as Plaintiffs

argue (Opp. 19).  Section 7.04 governs what *participants* can do with assets in their accounts (Ex.

F, ESOP art. 7.04), and section 7.04(d)(i) simply allows the Plan Administrator to restrict

---

[1] "Ex. __" refer to exhibits to the Declaration of Robert F. Wise, Jr., Esq., dated March 26, 2012, which was filed with Defendants' Motion to Dismiss.

*participants'* "election and use of Company Stock." (Id. art 7.04(d)(i).)  It has no bearing on

how Company Contributions are made.  Nor would section 7.04(d)(i) enable the Plan

Administrator to prevent a cash contribution from being invested in the MSSF, as the Plan

requires, because the Plan Administrator's authority to make rules governing participants'

"election and use of Company stock" is not authority to override the Plan's requirement that the

MSSF be invested in Company stock.  Such a change would require an amendment, which is a

power reserved under the Plan to Morgan Stanley.  And as shown above, see supra p. 3,

decisions whether or not to amend the Plan are fiduciary acts and thus cannot possibly be a basis

for Plaintiffs' claims.[2]

> C.   Defendants Were Not Fiduciaries with Regard
>       to Company Contributions

Plaintiffs' imprudence claim against Morgan Stanley, MS&Co and its Board and Ms.

Jamesley must be dismissed for the additional and independent reason that none of these

Defendants allegedly had any responsibility for the decision to make Company Contributions in

stock.  See Gray, 662 F.3d at 135-36 ("threshold question" is "whether the defendants were

acting as fiduciaries when taking the action subject to complaint") (citation and internal

quotation omitted).

There is no allegation that Ms. Jamesley played any role in the decision to fund Company

Contributions with stock.  (See ¶ 48.)  She accordingly was not an alleged fiduciary for "the

---

[2] Plaintiffs cite to In re McKesson HBOC, Inc. ERISA Litigation, 391 F. Supp. 2d 812 (N.D. Cal. 2005), in support of their argument that the decision to make Company Contributions in stock rather than cash is a fiduciary one.  (Opp. 15-16.)  However, the McKesson court, in determining this was a fiduciary function, relied on the fact that "[t]he Plan . . . contemplates that some time may pass between when McKesson HBOC contributes cash and converts it into stock."  391 F. Supp. 2d at 841 n.29.  No such delay is contemplated by the Plans here.  Moreover, the McKesson decision – like Judge Sweet's similar ruling in Morgan Stanley – is an outlier that is clearly out of step with the overwhelming weight of authority which holds that funding decisions are settlement functions, not fiduciary functions, and are not subject to ERISA's fiduciary obligations.  (See supra pp. 1-3.)

action subject to complaint." See Gray, 662 F.3d at 135 (citation and internal quotation omitted). That she was Plan Administrator with specified fiduciary duties under the Plan documents makes her a fiduciary only for those specified duties, not for all purposes.[3]

Plaintiffs allege that Morgan Stanley was a named fiduciary because it "acted through" Ms. Jamesley. (Opp. 9-10.)  That allegation fails, because Ms. Jamesley was not herself a fiduciary with respect to the decision to contribute stock, but also because this Court has repeatedly refused to deem employers fiduciaries on the basis of *respondeat superior* or agency theories. (See Defs. Mem. 10.)

Plaintiffs allege that MS&Co and the MS&Co Board were "de facto" fiduciaries because they "provid[ed] Mack with the authority and means to fund Company Contributions."  (Opp. 9-10; see ¶¶ 50-52.)  Even assuming that these allegations were accurate (and they are not), there is no allegation that MS&Co and the MS&Co Board retained any authority for the decision, and thus they were not fiduciaries. See Gray, 662 F.3d at 136 (defendants were not fiduciaries with respect to delegated responsibilities where plaintiffs did not allege that defendants had retained any duties or maintained any control over the relevant decisions).

D.      Plaintiffs Have Failed to Plead Abuse of Discretion

According to the Second Circuit, any plan investment in company stock is presumptively prudent, regardless of the degree of discretion given to Plan fiduciaries over investments. Gray, 662 F.3d at 136; Gearren, 660 F.3d at 610.  The Second Circuit has specifically rejected Plaintiffs' argument (Opp. 12-16) that decisions to invest in company stock should be analyzed under a prudent man standard. Gray, 662 F.3d at 138.  Therefore, even if Plaintiffs were correct

---

[3] See In re Citigroup ERISA Litig., No. 07 Civ. 9790, 2009 WL 2762798, at *7 (S.D.N.Y. Aug. 31, 2009), aff'd sub nom., Gray v. Citigroup, Inc., 662 F.3d 128 (2d Cir. 2011) (an individual is an ERISA fiduciary only to the extent that "the individual ha[s] discretion over the plan function in question") (citation omitted).

that the Plans here did not require investment in Company stock (Opp. 13), the presumption of prudence applies. <u>Gearren</u>, 660 F.3d at 610.[4]

Plaintiffs do not attempt to argue that it was an abuse of discretion to invest in Company stock when the Company Contributions were made. They have alleged no facts that would rebut the presumption that Company stock was a prudent investment in January 2007 and January 2008 when the stock was contributed. And indeed, in <u>Coulter</u> they conceded that Morgan Stanley did not face "dire circumstances" before mid-September 2008, well after the end of the Class Period in this case.[5]

II.   THE COMPLAINT FAILS TO STATE A DISCLOSURE CLAIM

Plaintiffs have narrowed their disclosure claim, which they now nonsensically purport to assert only as to "the Company Contributions funded with Company Stock for the 2006 and 2007 Plan years." (Opp. 20.) Yet, Plaintiffs fail to link any alleged misstatements or omissions to these contributions, nor do they even limit their disclosure claim to statements made at the time of the decisions. In fact, Plaintiffs make no real effort to defend their disclosure claim.

In <u>Gray</u>, the Second Circuit held that "fiduciaries have no duty to provide Plan participants with non-public information that could pertain to the expected performance of Plan investment options." <u>Gray</u>, 662 F.3d at 142; <u>see also</u> <u>Gearren</u>, 660 F.3d at 610. Plaintiffs' continued reliance on Judge Sweet's <u>Morgan Stanley</u> decision and older decisions from other

---

[4] <u>See also</u> <u>Moench v. Robertson</u>, 62 F.3d 553, 567, 571-72 (3d Cir. 1995) (presumption applies where plans do *not* absolutely require investment in company stock); <u>id.</u> at 558-59, 571 ("[T]he fiduciary is not absolutely required to invest in employer securities").

[5] The claim that Defendants did not conduct due diligence before including Morgan Stanley stock in the Plans (¶ 267) fails because the Complaint does not state an imprudence claim. <u>See</u> <u>Gray</u>, 662 F.3d at 140-41 (no failure-to-investigate claim where plaintiffs failed to state a claim that investment was imprudent).

7

circuit courts (Opp. 21-22) only underscores the invalidity of their disclosure claim under current Second Circuit law.

Plaintiffs contend that the SPD was "intentionally connected to misleading public disclosures" in Morgan Stanley's SEC filings. (Opp. 21.) Yet this precise argument was rejected in <u>Gray</u>, for the reason that the persons responsible for the allegedly misleading SEC filings "were not Plan administrators and were not responsible for communicating with Plan participants." 662 F.3d at 144. The same is true here.[6]

Whether or not Morgan Stanley was "responsible" for its SEC filings (Opp. 22), it had no duty under the Plans to provide information to Plan participants. The Plans assigned that function to Ms. Jamesley, the Plan Administrator, and as discussed above, (<u>see</u> <u>supra</u> p. 6), Morgan Stanley did not become a Plan fiduciary merely by employing Ms. Jamesley. Nor can any knowledge or inquiry notice possessed by Morgan Stanley be imputed to Ms. Jamesley. <u>See</u> <u>Gearren</u>, 660 F.3d at 611; <u>In re Bank of Am. Corp. Secs., Derivative & ERISA Litig.</u>, 756 F. Supp. 2d 330, 358-59 (S.D.N.Y. 2010).

Finally, Plaintiffs' assertion that the adequacy of the Plan's risk disclosures is a fact-intensive inquiry (Opp. 20-21) again ignores <u>Gray</u>, which dismissed disclosure claims on the basis of warnings that closely resemble those here. <u>See</u> 662 F.3d at 143.

III.   THE COMPLAINT FAILS TO STATE CLAIMS FOR CONFLICT OF INTEREST, FAILURE TO MONITOR OR CO-FIDUCIARY LIABILITY

Plaintiffs' duty to monitor claim fails for several reasons. There is no allegation that MS&Co or its Board had any duty to monitor Mr. Mack (<u>see</u> <u>generally</u> ¶¶ 50, 52, 308-13) or

---

[6] Plaintiffs argue based on <u>In re Sprint Corporation ERISA Litigation</u>, 388 F. Supp. 2d 1207, 1227 (D. Kan. 2004), that fiduciaries can be held liable under ERISA for providing plan participants with allegedly misleading SEC filings (Opp. 21 n.12). But in <u>Sprint</u>, the company had both prepared its SEC filings and, as plan administrator, incorporated them into an SPD. <u>Id.</u> at 1226-27. Plaintiffs cite no authority for their position that a plan administrator can breach a duty under ERISA merely by directing participants to allegedly misleading SEC filings.

could appoint or remove him (Opp. 22-24).  Even assuming that the MS&Co Board had

"authorized" Mr. Mack to make Company Contributions in cash (which is inaccurate), such an

authorization does not mean that the MS&Co Board had a duty to monitor.  See Gray, 662 F.3d

at 136.  And moreover, as shown above, Mr. Mack was not acting as a Plan fiduciary in

exercising that authority.  (See supra pp. 1-3).

      In any event, a monitoring claim "cannot stand" where, as here, the complaint fails to

plead a primary breach of any ERISA duty (see Defs. Mem. 24).  See Gray, 662 F. 3d at 145;

Gearren, 660 F.3d at 611.  Nor would any duty to monitor, if it had existed, obligate MS&Co or

its Board to provide Mr. Mack with "adverse information that he did not possess" (Opp. 24).

See, e.g., In re Am. Express Co. ERISA Litig., 762 F. Supp. 2d 614, 629-30 (S.D.N.Y. 2010)

(monitoring defendants have no duty to provide non-public information to plan fiduciaries).

      The conflict of interest claim also must fail, because allegations about Mr. Mack's

investment in Morgan Stanley Stock (¶ 302) and compensation (¶¶ 271-72, 303) are inadequate

to plead a conflict of interest.  See Gray, 662 F. 3d at 145.  Plaintiffs cite no authority for their

argument that Mr. Mack's alleged decisions to contribute stock to the Plans constitute a conflict.

      Finally, having failed to plead a valid primary breach of ERISA, Plaintiffs cannot plead

an essential element of their co-fiduciary claim.  See id. at 145 (monitoring and co-fiduciary

claims "cannot stand if plaintiffs fail to state a claim for relief" as to primary claims).

CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Complaint be

dismissed for failure to state a valid claim.  Given that Plaintiffs have already amended their

Complaint and had ample opportunity to plead their claims, dismissal should be with prejudice.[7]

Dated:   New York, New York
          May 10, 2012

DAVIS POLK & WARDWELL LLP

By:   /s/ Robert F. Wise, Jr.
       Robert F. Wise, Jr.

Robert F. Wise, Jr.
robert.wise@davispolk.com
Charles S. Duggan
charles.duggan@davispolk.com

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Attorneys for Defendants*

---

[7] Although the Court denied Plaintiffs' request to amend their Complaint and directed them to identify the claims that they wish to drop (Dkt. No. 96 (Mar. 30, 2012)), Plaintiffs have actually *added* allegations to the Complaint (e.g., Ex. A1 to Opp., ¶¶ 5, 7, 264, 323) and appear to renew their request to amend (see Opp. 25 n.13). Plaintiffs have already amended their Complaint once, and have also filed a second complaint involving substantially identical claims and parties and covering part of the same period, which they have also already amended.  Indeed, the Second Circuit decided Gray and Gearren *before* the parties had completed briefing Defendants' motion to dismiss the Coulter action, yet Plaintiffs never requested to re-amend either complaint until February 24, 2012.