UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X

IN RE MORGAN STANLEY ERISA LITIGATION      07 Civ. 11285 (DAB)
                                           MEMORANDUM & ORDER

--------------------------------------X
DEBORAH A. BATTS, United States District Judge.


        This consolidated class action is brought by participants in

the Morgan Stanley 401(k) Plan ("401(k) Plan") and the Morgan

Stanley Employee Stock Ownership Plan ("ESOP") (collectively, the

"Plans") against Defendants Morgan Stanley ("Morgan Stanley" or

the "Company"), Morgan Stanley & Co., Inc. ("MS & Co."), Karen

Jamesley, Morgan Stanley's Global Director of Human Resources

("Jamesley"), John Mack, the Chairman of Morgan Stanley's Board

of Directors and Morgan Stanley's Chief Executive Officer

("Mack"), and members of MS & Co.'s Board of Directors (the "MS &

Co. Board") (collectively, the "Defendants").

        Plaintiffs allege Defendants violated their fiduciary duties

under the Employee Retirement Income Security Act of 1974

("ERISA") from November 30, 2006 through July 25, 2008 (the

"Class Period").[1]  In particular, Plaintiffs allege that (1)

Defendants failed to manage prudently and loyally the Plans'

------------------------

        [1] In their Opposition, Plaintiffs narrowed the Class Period.
(Pls.' Opp'n 3.)

assets, (2) Morgan Stanley and Jamesley failed to provide

complete and accurate information, (3) Mack breached his duty to

avoid conflicts of interest, (4) MS & Co. and the MS & Co. Board

failed to monitor adequately other fiduciaries and to provide

them with accurate information, and (5) Defendants have

co-fiduciary liability.[2]

On March 26, 2012, Defendants filed a Renewed Motion to

Dismiss the Consolidated Amended Class Action Complaint pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   For

the reasons that follow, Defendants Renewed Motion to Dismiss is

GRANTED in its entirety.

---

[2] On March 30, 2012, the Court denied Plaintiffs' request to
consolidate this case with Coulter v. Morgan Stanley & Co. Inc.,
11 Civ. 1849.  At that time Parties already had fully submitted a
Motion to Dismiss in Coulter.  Acknowledging that Plaintiffs'
also requested leave to withdraw claims against Defendants, the
Court granted Plaintiffs leave to withdraw claims, ordering,
"Plaintiffs shall identify the claims and paragraphs of the
operative Complaint in this matter which they wish to withdraw
when filing their Opposition to the Motion to Dismiss, if any."
(Dkt. # 96.) In their Opposition, Plaintiffs submitted Exhibit A,
a redlined version of their Consolidated Amended Class Action
Complaint, which withdrew all claims against the Investment
Committee.  (Pls.' Opp'n 2-3; Ex. A, at 8-11.) Plaintiffs also
withdrew certain Defendants from their second, third, and fourth
causes of action.  (Pls.' Opp'n 20-24; Ex. A, at 88-96.) However,
Exhibit A and their Opposition were contradictory with respect to
the first cause of action.  Exhibit A withdrew all Defendants,
save Mack, yet the Opposition asserted that all Defendants
breached the duty of prudence.  (Compare Pls.' Opp'n 12-19 with
Ex. A, at 86-88.) Out of an abundance of caution, the Court will
read the contradiction to mean that Plaintiffs wish to allege
that all Defendants breached their duty of prudence.

I.   BACKGROUND

A.   Procedural History

Five complaints related to the Plans were filed between December 14, 2007 and February 6, 2008.  In re Morgan Stanley ERISA Litig., 696 F. Supp. 2d 345, 349-50 (S.D.N.Y. 2009) ("Morgan Stanley").  On February 11, 2008, the actions were consolidated pursuant to Federal Rule of Civil Procedure 42(a). Id. at 350.  Plaintiffs filed a Consolidated Amended Class Action Complaint ("Complaint") on July 28, 2008.  Id.  Defendants filed a Motion to Dismiss on September 26, 2008, which Judge Robert W. Sweet denied on December 9, 2009.  Id. at 349.

Parties commenced discovery.  On January 25, 2011, Magistrate Judge Andrew J. Peck limited discovery to the period before the Complaint was filed in July 2008.  Accordingly, the Class Period in the instant case begins on November 30, 2006 and ends on July 25, 2008.  (Pls.' Opp'n 3.) In response, on March 16, 2011, Plaintiffs commenced a related action, Coulter v. Morgan Stanley & Co. Inc., 11 Civ. 1849, which asserts the same claims but covers the period from January 2, 2008 through September 30, 2008.

Before the completion of discovery, the Second Circuit decided In re Citigroup ERISA Litigation, 662 F.3d 128 (2d Cir.

2011) ("Citigroup") and Gearren v. McGraw Hill Cos., 660 F.3d 605
(2d Cir. 2011), which Defendants assert compel a dismissal of
this action.  In light of Citigroup and Gearrean, on January 25,
2012, Defendants requested leave to file a Renewed Motion to
Dismiss.  The Court granted Defendants' request and stayed
discovery pending the resolution of the Motion.  Plaintiffs filed
their Motion on March 26, 3012.

    B.   Factual Allegations

The Court presumes familiarity with the allegations made in
Plaintiffs' Complaint.  In his Order, Judge Sweet meticulously
explained the factual background, including the Parties, the
401(k) Plan, the ESOP, and Plaintiffs' allegations.  Morgan
Stanley, 696 F. Supp. 2d at 350-53.  The facts alleged in the
Complaint are assumed true for purposes of the Renewed Motion to
Dismiss before the Court.


II.  DISCUSSION

    A.   Legal Standards

        1.   Rule 12(b)(6) Motion to Dismiss

For a complaint to survive dismissal under Federal Rules of
Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a plaintiff must
plead "enough facts to state a claim to relief that is plausible
on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility," the Supreme Court

explained,

> [W]hen the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged.  The
> plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it "stops
> short of the line between possibility and plausibility
> of 'entitlement to relief.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550

U.S. at 556-57).  "[A] plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a

cause of action will not do."  Twombly, 550 U.S. at 555 (internal

quotation marks omitted).  "[I]n keeping with these principles,"

the Supreme Court stated,

> A court considering a motion to dismiss can choose to
> begin by identifying pleadings that, because they are
> no more than conclusions, are not entitled to the
> assumption of truth.  While legal conclusions can
> provide the framework of a complaint, they must be
> supported by factual allegations.  When there are
> well-pleaded factual allegations, a court should assume
> their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 678.

In ruling on a Rule 12(b)(6) motion, a court may consider

the complaint as well as "any written instrument attached to the

complaint, statements or documents incorporated into the

complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  The court may also consider "well publicized stock prices."  Ganino v. Citizens Utils. Co., 228 F.3d 154, 167 n. 8 (2d Cir. 2000).

           2.   ERISA Claims for Breaches of Fiduciary Duties

     ERISA "'protect[s] beneficiaries of employee benefit plans' . . . , by imposing fiduciary duties of prudence and loyalty on plan fiduciaries." Citigroup, 662 F.3d at 135 (quoting Slupinski v. First Unum Life Ins. Co., 554 F.3d 38, 47 (2d Cir. 2009)). With respect to the duty of prudence, ERISA requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).  With respect to the duty of loyalty, fiduciaries must act "solely in the interest of the participants and beneficiaries."  29 U.S.C. § 1104(a)(1).

     A participant in retirement plan may bring a civil action against a person for breaching ERISA fiduciary duties.  29 U.S.C. § 1132(a)(2); 29 U .S.C. § 1109(a).  However, "[a] person is only

subject to these fiduciary duties 'to the extent' that the person, among other things, 'exercises any discretionary authority or discretionary control respecting management of such plan' or 'has any discretionary authority or discretionary responsibility in the administration of such plan.'"  <u>Citigroup</u>, 662 F.3d at 135 (quoting 29 U.S.C. § 1002(21)(A)).  Because "a person may be an ERISA fiduciary with respect to certain matters but not others," <u>Harris Trust & Savings Bank v. John Hancock Mutual Life Insurance Co.</u>, 302 F.3d 18, 28 (2d Cir. 2002), "in suits alleging breach of fiduciary duty, the 'threshold question' is whether the defendants were acting as fiduciaries 'when taking the actions subject to complaint.'"  <u>Citigroup</u>, 662 F.3d at 135 (quoting <u>Pegram v. Herdrich</u>, 530 U.S. 211, 226 (2000)).

        B.    Whether Plaintiffs Adequately Pled an Imprudence Claim

Plaintiffs allege Defendants failed to manage prudently the Plans' assets and that Mack failed to fund prudently  Company contributions.  (Compl. ¶¶ 276-86; Ex. A, at 86-88.) Defendants claim, in light of the Second Circuit's holdings in <u>Citigroup</u> and <u>Gearren</u>, they are entitled to the <u>Moench</u> presumption that investing the Plans' assets in Company stock is prudent; and, since Morgan Stanley was not in dire circumstances, Plaintiffs cannot overcome that presumption of prudence.  The Court agrees.

7

1.    Whether Defendants Acted in a Fiduciary Capacity
with Respect to Plan Investments

Jamesley is a named fiduciary for the 401(k) Plan and the ESOP.  As Plan Administrator for the 401(k) Plan, Jamesley had the authority to impose processes, conditions, or limitations on the selection of investments by the 401(k) Plan participants. See Citigroup, 662 F.3d at 136; Wise Decl. Ex. E, 401(k) Plan § 8(d)(i) ("401(k) Plan").  As Plan Administrator for the ESOP, Jamesley is expressly given similar fiduciary responsibilities. (Wise Decl. Ex. F, ESOP § 9.02(b)-(c) ("ESOP").)

Relying on Citigroup, Defendants argue that Morgan Stanley, MS & Co., the MS & Co. Board, and Mack were not fiduciaries with respect to Plaintiffs' imprudence claim because they lacked any fiduciary duties to add or eliminate investment funds and lacked the authority to veto investment options.  (Defs.' Mot. Dismiss 10.)  Judge Sweet previously held that they were de facto fiduciaries of the Plans because Morgan Stanley, MS & Co., the MS & Co. Board, and Mack had the authority to determine whether to make contributions in either cash or Company stock.  Morgan Stanley, 696 F. Supp. 2d at 356-57; 401(k) Plan § 6(f); ESOP § 3.01(a).  Citigroup does not change the validity of that

8

holding.[3]  See In re Fannie Mae ERISA Litig., No. 09 Civ. 1350,
2012 WL 5198463, at *2 (S.D.N.Y. Oct. 22, 2012) (holding
defendants were fiduciaries because they "had discretion to
determine the extent of [the company's] annual contribution to
the Plan, and whether the contribution would be made in . . .
stock or cash").  Accordingly, with respect to Company
contributions, Plaintiffs have pled sufficiently the fiduciary
status of Morgan Stanley, MS & Co., the MS & Co. Board, and Mack.

            2.    The Moench Presumption

        The Second Circuit recently adopted the Moench presumption
"of compliance with ERISA when an ESOP [or an EIAP] fiduciary
invests assets in the employer's stock."  Citigroup, 662 F.3d at
137, 138 (citing Moench v. Robertson, 62 F.3d 553 (3rd Cir.
1995)).  After examining a plan's terms and if the terms require
or strongly favor investing in employer stock, a court applies
the presumption.  Citigroup, 662 F.3d at 140; In re

_____

        [3] The Court also sees no reason to alter two other
determinations with respect to Morgan Stanley and MS & Co.'s
fiduciary status.  Morgan Stanley, 696 F. Supp. 2d at 355-56.
The fact that the Plans' named fiduciary is Morgan Stanley's
Global Director of Human Resources does not make Morgan Stanley a
named fiduciary.  Nor are Morgan Stanley or MS & Co. fiduciaries
based on agency theory or respondeat superior.  In re Bank of Am.
Corp. Secs., Derivative, and ERISA Litig., 756 F. Supp. 2d 330,
346-47 (S.D.N.Y. 2010) (noting that, while there is split circuit
authority on whether respondeat superior provides a viable theory
of recovery in ERISA, "several district courts in this circuit
have declined to apply" it).

GlaxoSmithKline ERISA Litig., No. 11-2289, 2012 WL 3798260, at *1
(2d Cir. Sept. 4, 2012).  A court then "review[s the] defendants'
decision to continue to allow Plan participants to invest in
employer stock, in accordance with the [plan's] terms, for an
abuse of discretion."  Gearren, 660 F.3d at 610 (citing Moench,
62 F.3d at 571); Citigroup, 662 F.3d at 138.

The Moench presumption "protect[s] fiduciaries from
liability where 'there is room for reasonable fiduciaries to
disagree as to whether they are bound to divest from company
stock.'"  Citigroup, 662 F.3d at 140.  Nonetheless, "judicial
scrutiny should increase with the degree of discretion a plan
gives its fiduciaries to invest."  Citigroup, 662 F.3d at 138
(citation omitted).  Therefore, once a court examines the plan's
terms and determines those terms "require or strongly favor
investment of company stock, . . .  only circumstances placing
the employer in a dire situation that was objectively
unforeseeable by the settlor could require fiduciaries to
override the plan terms" and divest an EIAP or ESOP of employer
stock.  In re GlaxoSmithKline, 2012 WL 3798260, at *1 (quoting
Citigroup, 662 F.3d at 140) (alterations omitted); Gearren, 660
F.3d at 610.

3.   Whether the <u>Moench</u> Presumption Applies to the
     Plans

Defendants assert that the Plans mandated or strongly favored investment in Company stock.   (Wise Decl. Ex. G, Summary Plans Description, at 6 ("SPD"); 401(k) Plan § 8(b)(ii)(A); ESOP § 4.01(a).) Although the Plans allow for instances in which the fiduciaries may choose not to invest in Company stock, those terms closely mirror those in <u>Citigroup</u>.[4]   The court in <u>Citigroup</u> determined the fiduciary had little discretion even though the plan "authorized the holding of 'cash and short-term investments' . . . to facilitate the 'orderly purchase' of more company stock." <u>Citigroup</u>, 662 F.3d at 139.  <u>See</u> <u>Slaymon v. SLM Corp.</u>, No. 10-4061, 2012 WL 6684564, at *1 (2d Cir. Dec. 26, 2012) (upholding the application of the <u>Moench</u> presumption even

_____

[4] The 401(k) Plan explains: "The Morgan Stanley Stock Fund ["MSSF"] shall be invested and reinvested exclusively in Morgan Stanley Stock, except that pending investments in Morgan Stanley Stock, amounts held in the [MSSF] may be invested and reinvested temporarily in interest-bearing, short-term investments . . . as the Trustee deems suitable . . . .   The [MSSF] may be liquidated, removed or closed as an Investment Fund only by amendment to the Plan."  <u>Compare</u> 401(k) Plan § 8(b)(ii)(A) <u>with</u> <u>In re Citigroup ERISA Litig.</u>, No. 07 Civ. 9790, 2009 WL 2762708, at *4 (S.D.N.Y. Aug. 31, 2009).  Similarly, the ESOP explains: "Employer Contributions . . . shall be invested in shares of Company Stock. Consistent with the Plan's status as an employee stock ownership . . . , the Trustee may keep such amounts of cash, securities or other property as it . . .  shall deem necessary or advisable as part of the Trust Fund, all within the limitations specified in the trust agreement."  (ESOP § 4.01(a).)

when the plans stated that "investments in the Stock Fund shall consist primarily of shares of [company s]tock"); see also In re GlaxoSmithKline, 2012 WL 3798260, at *2.  Similarly, the Plans offer Defendants little discretion.  Furthermore, participants' default investment option with the Plans is investment in Company stock.  See In re GlaxoSmithKline, 2012 WL 3798260, at *2.

Plaintiffs argue the Moench presumption is inapplicable because, even though cash contributions to the ESOP could eventually be invested in Company stock, Morgan Stanley, MS & Co., the MS & Co. Board, and Mack had the discretionary authority to decide whether to make Company contributions in cash or stock. (Pls.' Opp'n 19.) The abuse of discretion standard still applies. See In re Fannie Mae, 2012 WL 5198463, at *2-3 (applying the Moench presumption where defendants had the option to contribute cash or company stock).  And, even if Company contributions were made in cash, the Plan Administrator had no authority to avoid investment in Company stock.[5]  (SPD, at 6 ("The Company Match is allocated to the ESOP and may be made in cash and invested in the

_____

[5] Plaintiffs argue that, had Company contributions been made in cash, the Plan Administrator could have held the cash without investing in Company stock.  (Pls.' Opp'n 19.) However, the ESOP provides no such discretionary authority, instead merely allows the Plan Administrator to suspend, delay, or limit a participant's transfers into or out of Company stock if it is necessary or advisable.  (ESOP § 7.04(d)(i).) It does not prevent a cash contribution from being invested in the MSSF, as required by the ESOP.  (See id. § 4.01; see also SPD, at 6.)

[MSSF] or may be made in shares of Morgan Stanley common stock contributed directly to the [MSSF].").)  Even though there were limited instances in which the Plans' fiduciaries could choose not to invest in Company stock, the Plans strongly favored such investments; Defendants' actions thereby are entitled to a presumption of prudence.  See Taveras v. UBS AG, No. 12-1661, 2013 U.S. App. LEXIS 4061, at *23-25 (2d Cir. Feb. 27,2013); see also Fisher v. JP Morgan Chase & Co., 469 F. App'x 57, 59-60 (2d Cir. 2012).

      4.    Applying the Moench Presumption

      Plaintiffs' factual allegations of imprudence closely resemble the factual allegations in Citigroup.  Compare Citigroup, 662 F.3d at 140-41 (alleging plaintiffs made subprime mortgage investments and hid those investments from participants, thereby causing the inflated stock price to drop significantly when the market became aware of the subprime investments) and Fisher, 469 F. App'x at 59 with Morgan Stanley, 696 F. Supp. 2d at 352-53.  Defendants assert Plaintiffs do not overcome the presumption of prudence because there are no allegations of when, or even that, Morgan Stanley was in dire circumstances.  (Defs.' Mot. Dismiss 12-13.)

      In Citigroup, the court found no dire situation existed because, even if the defendants could have foreseen the company,

13

would "lose tens of billions dollars," the company had a "market capitalization of almost $200 billion"; therefore, the losses would not have "compelled" the defendants to find the company was in a dire situation.  Citigroup, 662 F.3d at 141.  Similarly, after various write-downs in 2007, on December 19, 2007, Morgan Stanley reported another one, bringing the total write-downs related to mortgages to $9.4 billion.  (Compl. ¶ 218.) Since Morgan Stanley's market capitalization was $85 billion at the beginning of 2007, $9.4 billion in write-downs during 2007 would not compel Defendants to find the Company was in a dire situation.  See Citigroup, 662 F.3d at 140-41; see also GlaxoSmithKline, 2012 WL 3798260, at *2; Wise Decl., Ex. M.

        Additionally, "[a]lthough proof of the employer's impending collapse may not be required to establish liability, 'mere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the presumption.'"  Citigroup, 662 F.3d at 140 (quoting Wright v. Or. Metallurgical Corp., 360 F.3d 1090, 1099 (9th Cir. 2004)); Gearren, 660 F.3d at 610.  Plaintiffs allege Morgan Stanley's share price fell from $85 to $35 from early 2007 to the end of the Class Period, approximately a 60% drop.  (Compl. ¶12.) Similar stock declines have been insufficient to trump the Moench presumption.  Citigroup, 662 F.3d at 141 (50% drop); Gearren, 660

14

F.3d at 609-10 (64% drop); <u>Fisher</u>, 469 F. App'x at 59 (55% drop);

<u>In re Am. Exp. Co. ERISA Litig.</u>, 762 F. Supp. 2d 614, 628

(S.D.N.Y. 2010) (78% drop); <u>In re Bank of Am. Corp.</u>, 756 F. Supp.

2d at 354 (83% drop).

Despite net revenues being down during some of the Class

Period, that is not sufficient to demonstrate Morgan Stanley was

in dire circumstances.  <u>See</u> <u>Fisher</u>, 469 Fed. App'x at 59-60;  <u>see</u>

<u>also</u> <u>In re Am. Exp.</u>, 762 F. Supp. 2d at 628 ("[T]he company

continued to have earnings and income and the stock price has

subsequently rebounded significantly.").  Morgan Stanley even

posted a profit during the first and second quarter 2008, and it

paid dividends for the first three quarters of 2007.[6]  <u>In re</u>

<u>GlaxoSmithKline</u>, 2012 WL 3798260, at *2; Compl. ¶¶ 154, 165, 240,

245, 249.  Furthermore, despite dropping to $35 per share, Morgan

Stanley's stock "still retained significant value . . . [and it]

remained a viable company."  <u>Fisher</u>, 469 Fed. App'x at 59; <u>In re</u>

<u>Bear Stearns Cos., Inc. Secs., Derivative, & ERISA Litig.</u>, 763 F.

Supp. 2d 423, 574 (S.D.N.Y. 2011).

Moreover, Morgan Stanley's circumstances during the Class

---

[6] Additionally, during the fourth quarter 2007, the China
Investment Corporation made a $5.5 billion capital investment in
the Company, which is further indication Morgan Stanley was not
in dire circumstances, at least at the end of 2007. <u>See</u> <u>In re</u>
<u>Lehman Bros. Secs. & ERISA Litig.</u>, No. 09 MD 2017, 2011 WL
4632885, *5 n. 42 (S.D.N.Y. Oct. 5, 2011); Wise Decl. Ex. C.

Period were wholly unlike those circumstances which courts have found sufficient to overcome the <u>Moench</u> presumption.   <u>See</u> <u>In re Fannie Mae ERISA Litig.</u>, No. 09 Civ. 1350, 2012 WL 5198463, at *4-5 (S.D.N.Y. Oct. 22, 2012) (determining the defendants knew of a 99% decline in the value of the plan's assets); <u>In re AIG, Inc. ERISA Litig. II</u>, No. 08 Civ. 5722, 2011 WL 1226459, at *7 (S.D.N.Y. Mar. 31, 2011) (determining the defendants knew of various circumstances that warranted further investigation before the stock fell 99%);  <u>Veera v. Ambac Plan Admin. Comm.</u>, 769 F. Supp. 2d 223, 229–30 (S.D.N.Y. 2011) (determining the defendants knew of the dire circumstances due to a 99% price drop and public announcements detailing the company's demise).  Since no dire circumstances existed during the Class Period, Defendants did not breach their duty of prudence either by maintaining investment in Company stock or by Morgan Stanley, MS & Co., the MS & Co. Board, and Mack funding the Plans with Company stock rather than cash.

C.   Whether Plaintiffs Adequately Pled a Disclosure Claim

Plaintiffs claim that Morgan Stanley and Jamesley breached their duty of loyalty by (1) "failing to provide complete and accurate information regarding Morgan Stanley[]" and (2) disseminating "inaccurate, incomplete and materially misleading

16

statements" to participants of the Plans.  (Compl. ¶¶ 287-98; Ex.
A, at 88-91.)

        1.   Duty to Provide Information

     Although ERISA sets forth a "comprehensive set of 'reporting
and disclosure' requirements," Curtiss-Wright Corp. v.
Schoonejongen, 514 U.S. 73, 83 (1995) (citing 29 U.S.C. §§ 1021-
1031), ERISA does not require fiduciaries "to provide
participants with information regarding the expected future
performance of [company] stock."  Citigroup, 662 F.3d at 142.
ERISA does not "create a duty to provide participants with
nonpublic information pertaining to specific investment options."
Citigroup, 662 F.3d at 143; Gearren, 660 F.3d at 610.
Accordingly, Plaintiffs' allegation that Morgan Stanley and
Jamesley breached their duty of loyalty by not communicating the
Company's subprime exposure and the Company's future outlook
fails because they had no duty to communicate such information.
See Gearren, 660 F.3d at 610.

        2.   Alleged Misstatements

     Plaintiffs allege Morgan Stanley and Jamesley communicated
with Plan participants through "SEC filings, annual reports,
press releases and Plan documents . . . , which included and/or
reiterated these statements."  (Compl. ¶ 290.) The SEC filings
were incorporated into the SPDs and Form S-8 registration

statements.  (Compl. ¶ 290.) These communications, Plaintiffs allege, were actionable misstatements.  (Compl. ¶ 292.)

With respect to Morgan Stanley, Plaintiffs' argument fails because the Company was not "a Plan administrator responsible for communicating with Plan participants, [and] therefore [did not] act[] as a Plan fiduciary when making the statements at issue." Citigroup, 662 F.3d at 143-44; Gearren, 660 F.3d at 611 (holding defendants were not liable under ERISA because the alleged misstatements were made while "acting in a corporate, rather than ERISA fiduciary, capacity"); Fisher, 469 Fed. Appx. at 60. Accordingly, Morgan Stanley cannot be held liable under ERISA for those alleged misstatements.

Jamesley, as the Plan Administrator for the 401(k) Plan and the ESOP, was responsible for communicating to the Plans' participants. (Compl. ¶¶ 29-30.) Plaintiffs do not allege that Jamesley was responsible for the alleged misstatements but rather that those statements and omissions are actionable because she incorporated them by reference in communications with the Plans' participants.  (Compl. ¶ 290; Pls.' Opp'n 20.) Simply because the SPDs and Form S-8 registration statements incorporated the communications in question does not "give rise to ERISA liability absent allegations supporting the inference that individual Plan administrators made 'intentional or knowing misstatements . . .

18

by incorporating SEC filings into the SPDs.'"  <u>In re</u>
<u>GlaxoSmithKline</u>, 2012 WL 3798260, at *3 (quoting <u>Gearren</u>, 660
F.3d at 611); <u>Slaymon</u>, 2012 WL 6684564, at *2.  Plaintiffs do not
allege Jamesley knew or should have known about "Morgan Stanley's
financial or operational health and future prospects" or that the
SEC filings, annual reports, and press releases did not "provide
complete and accurate information regarding Morgan Stanley's
exposure to the subprime market."  (Compl. ¶¶ 292, 294.)  Since,
as applied to Jamesley, Plaintiffs provide no basis for their
bald conclusions, Plaintiffs have not adequately stated a claim
for relief based on the alleged misstatements.  <u>Citigroup</u>, 662
F.3d at 144-45; <u>Gearren</u>, 660 F.3d at 611; <u>Slaymon</u>, 2012 WL
6685464 at *2.


    D.    Whether Plaintiffs Adequately Pled a Duty to Avoid
           Conflict of Interests Claim

    Plaintiffs claim Mack breached his duty to avoid conflicts
of interest when he decided to fund all Company contributions in
Company stock rather than cash, which was a result of his bias
stemming from his significant personal investments in Company
stock. (Pls.' Opp'n 24; Compl. ¶¶ 49, 299-306; Ex. A, at 92-94.)
Although Judge Sweet found these allegations sufficiently
supported Plaintiffs' claim at the pleading stage, the Second

Circuit since has explained, "[We] refuse[] to hold that a conflict of interest claim can be based solely on the fact that an ERISA fiduciary's compensation was linked to the company's stock." Citigroup, 662 F. 3d at 146 (citing In re Polaroid ERISA Litig., 362 F. Supp. 2d 461, 477 (S.D.N.Y. 2005); In re WorldCom, Inc. ERISA Litig., 263 F. Supp. 2d 745, 768 (S.D.N.Y. 2003)). Accordingly, since Plaintiffs "do not allege any specific facts suggesting that" Mack's investments in Morgan Stanley "prompted [him] to act against the interests of Plan participants," Citigroup, 662 F. 3d at 145, Plaintiffs failed to state a claim for relief on this count.

   E.   Plaintiffs' Remaining Claims of Secondary Liability

      Plaintiffs also claim that (1) MS & Co. and the MS & Co. Board failed to monitor properly other fiduciaries and (2) all Defendants are liable as co-fiduciaries.  (Compl. ¶¶ 307-26; Ex. A, at 94-99.) "[T]hese secondary claims fail if plaintiffs are unable to survive Rule 12(b)(6) as to their primary claims." Gearren, 660 F.3d at 611.  Because, as explained above, Plaintiffs' primary claims fail, they have failed to state a claim under their two theories of secondary liability.

III. CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED.  Plaintiffs may file a second amended complaint that presents adequate allegations of their disclosure claim against Jamesley and their theories of secondary liability.  All other claims are dismissed with prejudice because Plaintiffs are "unable to demonstrate that [they] would be able to amend [their] complaint in a manner which would survive dismissal."  Beachum v. Awisco New York Corp., 459 Fed. App'x 58, 59 (2d Cir. 2012) (quoting Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999).

Any amended complaint shall be filed within 45 days of the date of this Order. Failure to do so shall result in dismissal of this case in its entirety without further Order of the Court. SO ORDERED.


Dated:    New York, New York

          March 28, 2013

                                _____
                                Deborah A. Batts
                           United States District Judge